## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN MCMANUS, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TUFTS MEDICAL CENTER, INC., <br><br> Defendant. | Case No.: 1:25-cv-10008 |

## DEFENDANT TUFTS MEDICAL CENTER, INC.'S
## <u>MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS</u>

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

I.    THE COMPLAINT ................................................................................................ 2

II.   STANDARD OF REVIEW ................................................................................... 3

III.  ARGUMENT ........................................................................................................ 3

    A.    Plaintiff's Claims Fail Because No Protected Health Information Was Disclosed. ...................................................................................... 3

    B.    Plaintiff Fails To State A Claim For Violation Of The ECPA. ................... 5

        1.    Plaintiff Fails To Allege An Unlawful Interception. ...................... 5

        2.    Plaintiff Fails To Allege A Criminal Or Tortious Purpose. ............ 6

        3.    Plaintiff Fails To Allege Any Plausible Interception Of "Contents." ...................................................................................... 9

    C.    Plaintiff Fails To Plead A Claim For Statutory Invasion Of Privacy. ....... 10

    D.    Plaintiff Fails To Plead A Fiduciary Relationship. .................................... 11

    E.    Plaintiff's Negligence Claim Fails For Lack Of Duty, Breach, And Damages. ................................................................................................ 13

        1.    Plaintiff Fails To Plead Facts Showing A Duty of Care And Breach. ......................................................................................... 13

        2.    Plaintiff Fails To Plead Cognizable Damages. .............................. 15

    F.    Plaintiff's Breach Of Confidence Claim Should Be Dismissed. ............... 16

    G.    Plaintiff Contract Claim Fails Due To Lack Of Mutual Assent And Consideration. ........................................................................................ 17

    H.    Plaintiff's Unjust Enrichment Fails For Lack Of Reasonable Expectation Of Compensation. ................................................................ 19

CONCLUSION ............................................................................................................. 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Novant Health, Inc.*,
No. 1:22-CV-697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) .......................................20

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
No. 19-md-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) .................................................19

*American Hosp. Ass'n. v. Becerra*,
No. 4:23-cv-01110-P, 2024 WL 3075865 (N.D. Tex. Jun. 20, 2024) ..........................1, 3, 4, 5

*ARK Nat'l Holdings LLC v. We Campaign LLC*,
No. 21-10893-RGS, 2021 WL 5918682 (D. Mass. Dec. 15, 2021).......................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................................................3

*B.K. v. Eisenhower Medical Center*,
721 F. Supp. 3d 1056 (C.D. Ca. 2024) ..........................................................................................10

*In re Banner Health Data Breach Litig.*,
No. CV-16-02696-PHX-SRB, 2017 WL 6763548 (D. Ariz. Dec. 20, 2017) .........................19

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 554 (2007) ................................................................................................................3, 10

*Branyan v. Southwest. Airlines Co.*,
105 F. Supp. 3d 120 (D. Mass. 2015) ......................................................................................10, 11

*Brookridge Funding Corp. v. Aquamarine, Inc.*,
675 F. Supp. 2d 227 (D. Mass. 2009) ..........................................................................................19

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ..........................................................................................6

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
238 F. Supp. 3d 1359 (S.D. Fla. 2017) ..........................................................................................19

*Cape Cod ASC, LLC v. Bentivegna*,
No. 2008457, 2010 WL 3038824 (Mass. Super. Jul. 1, 2010) .................................................11

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010).................................................................................................................6

*CinTel Fils, Inc. v. Does 1-1,052*,
    853 F. Supp. 2d 545 (D. Md. 2015) ................................................................9

*Clark v. Rowe*,
    428 Mass. 339 (1998) ....................................................................................14

*Conformis, Inc. v. Aetna, Inc.*,
    58 F.4th 517 (1st Cir. 2023) ...........................................................................3

*Connors v. Howard Johnson Co.*,
    30 Mass. App. Ct. 603 (1991) .......................................................................17

*Cook v. GameStop, Inc.*,
    689 F. Supp. 3d 58 (W.D. Pa. 2023) ..............................................................9

*Doe I v. Google, LLC*,
    No. 23-cv-02431-VC, 2024 WL 3490744 (N.D. Ca. Jul. 22, 2024)...........7, 16

*Doe v. Farmers' Union Hospital Association*,
    No. CJ-24-0071 (Okla. Dist. Ct. Beckham Cty. Nov. 20, 2024) .............4, 16

*Doe v. Kaiser Found. Health Plan, Inc.*,
    No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ...............7

*Doe v. Upperline Health, Inc.*,
    No. 1:23-CV-01261-RLY-CSW, 2024 WL 4953503 (S.D. Ind. Sept. 24, 2024)...............4, 16

*Doe v. Village Podiatry Group, LLC*,
    No. 2023CV383709, 2024 WL 5187261 (Ga. Super. Nov. 20, 2024) .............16

*Donovan v. Philip Morris USA, Inc.*,
    455 Mass. 215 (2009) .............................................................................15, 16

*In re DoubleClick Inc. Priv. Litig.*,
    154 F. Supp. 2d 497 (S.D.N.Y. 2001) .........................................................6, 8

*Gardiner v. Walmart, Inc.*,
    No. 20-CV-04618-JSW, 2021 WL 4992539 (N.D. Cal. Jul. 28, 2021)...............16

*In re Google Cookie Placement*,
    806 F.3d 125 (3rd Cir. 2015) ......................................................................8, 9

*In re Google Inc. Gmail Litig.*,
    No. 13-md-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ...............8

*Gravallese v. Massachusetts Parole Bd.*,
    No. CA 945777, 1995 WL 808813 (Mass. Super. Apr. 19, 1995) ................19

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ...................................................................11

*Harvard Apparatus, Inc. v. Cowen*,
   130 F. Supp. 2d 161 (D. Mass. 2001) .....................................................................16

*Hubbard v. Google LLC*,
   No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. Jul. 1, 2024) ...................10

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................................11

*J.R. v. Walgreens Boots Alliance, Inc.*,
   No. 20-1767, 2021 WL 4859603 (4th Cir. Oct. 19, 2021) ....................................18

*Jacome v. Spirit Airlines Inc.*,
   No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. Jun. 17, 2021)............9

*Jordan's Furniture, Inc. v. Carter & Burgess, Inc.*,
   No. 16-P-728, 2017 WL 3393465 (Mass. App. Aug. 8, 2017)...............................14

*Josef Gartner USA LP v. Consigli Const. Co., Inc.*,
   No. 10-40072-FDS, 2011 WL 2417137 (D. Mass. Jun. 10, 2011).........................17

*Juliano v. Simpson*,
   461 Mass. 527 (2012) .............................................................................................13

*Kelley v. CVS Pharmacy, Inc.*,
   No. CIV.A. 98-0897-BLS2, 2007 WL 2781163 (Mass. Super. Aug. 24, 2007) ....12

*K.L. v. Legacy Health*,
   No. 3:23-CV-1886-SI, 2024 WL 4794657 (D. Or. Nov. 14, 2024) ...................4, 14

*Koppel v. Moses*,
   No. 20-11479-LTS, 2020 WL 6292871 (D. Mass. Oct. 27, 2020).........................11

*Korper v. Weinstein*,
   57 Mass. App. Ct. 433 (2003).................................................................................12

*A.G. ex rel. Maddox v. v. Elsevier, Inc.*,
   732 F.3d 77 (1st Cir. 2013).....................................................................................15

*Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
   412 F.3d 215 (1st Cir. 2005)...................................................................................17

*In re Mednax Servs. Customer Data Sec. Breach Litig*,
   603 F. Supp. 3d 1183 (S.D. Fla. 2022) ...................................................................18

*Metro. Life Ins. Co. v. Cotter*,
 464 Mass. 623 (2013) .........................................................................................................19

*Morales-Cruz v. Univ. of P.R.*,
 676 F.3d 220 (1st Cir. 2012) ...............................................................................................3

*Mrozinski v. Aspirus, Inc.*,
 No. 23-CV-170 (Wisc. Cir. Ct. Marathon Cty. Apr. 15, 2024) ...........................................7

*Nelson v. Massachusetts Port Auth.*,
 55 Mass. App. Ct. 433 (2002) ............................................................................................13

*In re Nickelodeon Consumer Priv. Litig.*,
 827 F.3d 262 (3d Cir. 2016) ................................................................................................5

*In re Nickelodeon Consumer Priv. Litig.*,
 No. 2443 (SRC), 2014 WL 3012873 (D.N.J. Jul. 2, 2014) ................................................20

*Nienaber v. Overlake Hospital Medical Center*,
 No. 2:23-cv-01159, 2024 WL 2133709 (W.D. Wash. May 13, 2024) ..................................8

*Okash v. Essentia Health*,
 No. 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ..................................................8

*Portier v. NEO Tech. Sols.*,
 No. 3:17-CV-30111-TSH, 2019 WL 7946103 (D. Mass. Dec. 31, 2019),
 *report and recommendation adopted*, No. 3:17-CV-30111, 2020 WL 877035
 (D. Mass. Jan. 30, 2020) ....................................................................................................15

*Renzulli v. Sullivan*,
 No. 22 MISC 000564 (KTS), 2024 WL 1903573 (Mass. Land Ct. Apr. 26,
 2024) ...................................................................................................................................14

*Rodriguez v. Google LLC*,
 No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ..................................8

*Roe No. 1 v. Children's Hosp. Med. Ctr.*,
 469 Mass. 710 (2014) .........................................................................................................13

*Roe v. Amgen Inc.*,
 No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024),
 *reconsideration denied sub nom. Doe v. Amgen, Inc.*, No. 2:23-CV-07448-
 MCS-SSC, 2024 WL 3811251 (C.D. Cal. Aug. 13, 2024) ....................................................7

*SEC v. Tambone*,
 597 F.3d 436 (1st Cir. 2010) ...............................................................................................3

*Shaoguang Li v. Off. of Transcription Servs.*,
    No. 16-P-152, 2016 WL 6609796 (Mass. App. Ct. Nov. 8, 2016)........................................17

*Spencer v. Roche*,
    755 F. Supp. 2d 250 (D. Mass. 2010), *aff'd*, 659 F.3d 142 (1st Cir. 2011)............................13

*Steinberg v. CVS Caremark Corp.*,
    899 F. Supp. 2d 331 (E.D. Pa. 2012) ....................................................................................16

*Sussman v. Am. Broad. Companies, Inc.*,
    186 F.3d 1200 (9th Cir. 1999) ..........................................................................................6, 8

*Sweeney v. DeLuca*,
    No. 042338, 2006 WL 936688 (Mass. Super. Mar. 16, 2006) ..............................................19

*T.D. v. Piedmont HealthCare, Inc.*,
    No. 1:23-cv-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024)...............................15

*Sun W. Mortg. Co., Inc. v. Matos Flores*,
    No. CV 15-1082 (GAG), 2016 WL 1030074 (D.P.R. Mar. 10, 2016) .....................................6

*Doe v. Tenet Healthcare Corp.*
    731 F. Supp. 3d 142 (D. Mass. 2024) ....................................................................................4

*Tyler v. Michaels Stores, Inc.*,
    840 F. Supp. 2d 438 (D. Mass. 2012) ....................................................................................20

*United States v. Forrester*,
    512 F.3d 500 (9th Cir. 2008) ................................................................................................10

*United States v. McHugh*,
    57 F. Supp. 3d 95 (D. Mass. 2014) .........................................................................................6

*Vacca v. Bringham & Women's Hosp., Inc.*,
    156 N.E.3d 800 (Mass. App. Ct. 2020) .................................................................................18

*Webb v. Injured Workers Pharmacy, LLC*,
    No. 22-CV-10797, 2023 WL 5938606 (D. Mass. Sept. 12, 2023) ........................................18

*Weekes v. Cohen Cleary P.C.*,
    723 F. Supp. 3d 97 (D. Mass. 2024) ................................................................................17, 18

*Williams v. TMC Health*,
    No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024)..........4, 7, 14, 19

*Wofse v. Horn*,
    523 F. Supp. 3d 122 (D. Mass. 2021) ....................................................................................10

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ...............................................................9

**Statutes**

18 U.S.C. § 2510(8) .................................................................................9

18 U.S.C. § 2511(2)(d) ......................................................................5, 6, 8

G.L. c. 214, § 1B ...................................................................................10

**Rules**

Fed. R. Civ. P. 12(b)(6) ...........................................................................3

**Other Authorities**

1 A.W. Scott & W.F. Fratcher, TRUSTS § 2.4 (4th ed. 1987) .......................11

RESTATEMENT (SECOND) OF TRUSTS § 2 comment b (1959) ......................11

## INTRODUCTION

Plaintiff's case is one of many putative class action complaints filed across the country seeking to punish non-profit health care systems for the use of ordinary and ubiquitous website analytics tools on their public websites. Critically, the complaint does not allege that *any* of Plaintiff's medical records, treatments, test results, doctor's notes, or substantive communications with her doctors or nurses have ever been disclosed by Tufts Medical Center, Inc. ("Tufts MC"), because they have not. Instead, the complaint alleges generally that the collection of data regarding Plaintiff's actions on a *public website* somehow amounts to the disclosure of patient health information in violation of the Health Insurance Portability and Accountability Act ("HIPAA") and various state statutes and causes of action. Plaintiff's allegations have multiple fatal flaws.

First, Plaintiff's complaint consists of nothing more than formulaic recitations of the elements of the asserted causes of action and fails to allege any plausible facts supporting any claim for relief. She fails to provide any individual allegations regarding specific actions she took on the website, any medical information she contends was transmitted, or any specific harm to her as a result of the alleged generic transmissions.

Second, the information that Plaintiff contends was transmitted to third parties when someone used Tufts MC's public website shows nothing more than the particular page that a user was viewing on a public website and which, as a matter of law, does not contain HIPAA protected information. Indeed, a federal court vacated the Office of Civil Rights ("OCR") Guidance relied on by Plaintiff and held that the information at issue here—searches on public websites—does not constitute individually identifiable health information ("IIHI") protected by HIPAA. *See American Hosp. Ass'n. v. Becerra*, No. 4:23-cv-01110-P, 2024 WL 3075865 (N.D. Tex. Jun. 20, 2024) ("*Becerra*"). As such, Plaintiff's claims, all of which are conditioned on the purported disclosure of IIHI, are insufficiently pled and thus should be dismissed with prejudice.

## I.    THE COMPLAINT

Defendant Tufts MC operates a hospital and full-service medical center in Boston that offers inpatient and outpatient care to residents in Boston and its surrounding communities. *See* Amended Complaint ("Am. Compl.") ¶ 17. Tufts MC has a public website, https://www.tuftsmedicalcenter.org/, that allows anyone, patients and non-patients alike, to search its website for information regarding Tufts MC's services, physicians, and treatments. *Id.* ¶ 18. Tufts MC also has a secure patient portal, that users can access after entering log-in credentials. *Id.* ¶ 19(e). Critically, Plaintiff makes no allegations that any analytics software operated within Tufts MC's patient portal. *Id.* ¶ 45 (alleging only that Tufts MC "injected hidden code into the Tufts Medical Center Website"); ¶ 47 (same). Plaintiff makes conclusory allegations that information transmitted regarding a user's browsing on Tufts MC's *public* webpage amounts to the transmission of personal health information ("PHI") and individually identifiably health information ("IIHI")[1] to third parties. *See e.g.*, *id.* ¶ 1.

Allegations regarding Plaintiff herself are limited to the fact that she is a Tufts MC patient and that she used the public website to obtain information about doctors and search for information regarding particular medical procedures. *Id.* ¶ 12. Plaintiff alleges that her review of her actual medical records occurred on the secure patient portal—not on the public website. *Id.* There are no allegations regarding any specific action Plaintiff actually took on the website, when those actions occurred, or what Plaintiff viewed on the website. Plaintiff does not allege any specific facts regarding any actual information of hers she contends was transmitted to third parties.

---

[1]  In the Amended Complaint, Plaintiff referred to IIHI and PHI collectively as "Private Information." *See* Am. Compl. ¶ 1.

## II.    STANDARD OF REVIEW

Tufts MC moves to dismiss this Amended Complaint for a failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). The complaint must be "plausible on its face" and must suggest "more than a sheer possibility that a defendant has acted unlawfully." *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023) (citations omitted). "To implement the plausibility standard, an inquiring court first must separate wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

## III.    ARGUMENT

### A.    Plaintiff's Claims Fail Because No Protected Health Information Was Disclosed.

All of Plaintiff's claims rest on the fundamentally flawed assumption that the information allegedly disclosed to third parties is protected health information under HIPAA, citing to a December 2022 Department of Health and Human Services ("HHS") Bulletin.[2] Am. Compl. ¶¶ 117–121. Plaintiff's reliance on this OCR bulletin is misplaced since the relevant portions of that bulletin were vacated by the *Becerra* decision. *See Becerra*, 2024 WL 3075865, at \*17. The *Becerra* Court explained that an individual's browsing of a public website fails as a matter of law to relate to the health or condition of an individual under the HIPAA Privacy Rule. The court found

---

[2] Plaintiff also claims the actions violated the FTC Act, but never identifies which provision of the FTC Act was allegedly violated, nor provides any fact in support of this conclusory claim. Therefore, it should be disregarded. *See Morales-Cruz*, 676 F.3d at 224.

that information that is merely "indicative" of PHI, such as browsing activity on a healthcare public website, is not sufficient to meet the definition of IIHI. *See id.* at *12.

The court explained that without knowing the subjective intent of the user for their visit to the public website, which could include searching regarding their own condition, a family member's condition, for a book report, for litigation, or for entirely other reasons, the metadata resulting from that visit "could never identify that individual's PHI. Simply put, **Identity** (Person A) + **Query** (Condition B) ≠ **IIHI** (Person A has Condition B)." *Id.* at *14 (emphasis in original). Other courts have similarly found that data related to a user browsing a health care entities' public website does not reveal medical information protected under HIPAA.[3] *See K.L. v. Legacy Health*, No. 3:23-CV-1886-SI, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) (finding "generic search queries" created during public website browsing are not PHI); Exhibit 1, *Doe v. Farmers' Union Hospital Association*, No. CJ-24-0071 (Okla. Dist. Ct. Beckham Cty. Nov. 20, 2024) (same); *Williams v. TMC Health*, No. CV-23-00434-TUC-SHR, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024) (finding data collection regarding searches on a health care website or patient portal clicks "do[] not *necessarily* implicate HIPAA.") (emphasis in original); *Doe v. Upperline Health, Inc.*, No. 1:23-CV-01261-RLY-CSW, 2024 WL 4953503, at *3 (S.D. Ind. Sept. 24, 2024) ("There is nothing about that browsing activity that relates specifically to *her* health or relationship with [the healthcare entity].") (emphasis in original). Plaintiff's allegations amount to nothing more

---

[3] Tufts MC recognizes that the court in *Doe v. Tenet Healthcare Corp.* ("*Tenet*"), allowed similar claims to survive a motion to dismiss. 731 F. Supp. 3d 142, 152 (D. Mass. 2024). However, the court did not substantively assess the Massachusetts Wiretap Act claim and it did not assess an ECPA claim as it was not brought in that case. Furthermore, the decision in *Tenet* pre-dated the decision in *Becerra* that found as a matter of law that public browsing data is *not* protected health information under HIPAA. Numerous federal courts agree with *Becerra* on this point, as cited above. Tufts MC respectfully submits that the *Becerra* decision more appropriately contextualizes the information at issue in this case and warrants dismissal of all of Plaintiff's claims.

than this precise scenario: a user browsing Tufts MC's public website, which by itself reveals nothing regarding the user's personal medical information. Therefore, *Becerra* and other courts' findings that the information at issue does not qualify as IIHI proves fatal for all of Plaintiff's causes of action.

###### B.    Plaintiff Fails To State A Claim For Violation Of The ECPA.

To state a claim under the ECPA, a plaintiff must plead facts showing that a defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (citations omitted). Plaintiff cannot satisfy either the first, second, or third elements of her ECPA claim.

###### 1.    Plaintiff Fails To Allege An Unlawful Interception.

The ECPA is a one-party consent statute. *See* 18 U.S.C. § 2511(2)(d) (The ECPA does not make it unlawful for someone to "intercept … electronic communication where such person is a party to the communication."). A party to a communication cannot "intercept" a communication directed to it and cannot be held liable for "eavesdropping" upon itself. *In re Nickelodeon*, 827 F.3d at 275 (dismissing ECPA claim because defendant "was either a party to all communications with the Plaintiff's computers or was permitted to communicate with the Plaintiff's computers by… a party to all such communications."). Plaintiff's alleges Tufts MC was the intended recipient of, and thus a party to, the alleged communications. For example, Plaintiff alleges that the information disclosed was "communications between [Tufts MC] and healthcare consumers." Am. Compl. ¶ 13; *see also id.* ¶¶ 1, 27, 46, 59, 73, 77, 154–56. Tufts MC was the intended recipient of all of the Plaintiff's alleged communications, and therefore is exempt from liability.

### 2.    Plaintiff Fails To Allege A Criminal Or Tortious Purpose.

Plaintiff attempts to overcome this fatal fact by alleging that the crime-tort exception to the party rule applies. To invoke the crime-tort exception, Plaintiff must plausibly allege that Tufts MC: (i) *intended* to commit an (ii) *independent* crime or tort (iii) *at the time* of the alleged interception. *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010); *see also* 18 U.S.C. § 2511(2)(d). Plaintiff's amended allegations fail to satisfy any of these elements because (1) Tufts MC did not have an intent that was tortious or criminal as demonstrated by Plaintiff's own pleadings and (2) the alleged interception itself is insufficient to invoke this exception.

In order to invoke the exception, Plaintiff must allege facts that Tufts MC's *purpose* in deploying the technology was to violate Plaintiff's alleged rights, not just that the actions taken happened to be illegal. *See In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001) ("[A] culpable mind does not accompany every tortious act."); *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("[T]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception-its intended use-was criminal or tortious.") (emphasis in original). Under this exception, plaintiff must allege that either the "***primary motivation*** or a ***determining factor*** in [the defendant's] actions has been to injure plaintiffs tortiously." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (quotation and citation omitted) (emphasis added); *see also Sun W. Mortg. Co., Inc. v. Matos Flores*, No. CV 15-1082 (GAG), 2016 WL 1030074, at *5 (D.P.R. Mar. 10, 2016) ("Allegations that [Defendant] 'intercepted the confidential information with a tortious intent' and that he 'intends to benefit economically from the confidential information he intercepted' are insufficient to satisfy the pleading requirements."); *United States v. McHugh*, 57 F. Supp. 3d 95, 100 (D. Mass. 2014) (finding the exception "is properly confined to situations where the recording party intended to harm the recorded party, either through blackmail, threats or public embarrassment.").

Plaintiff alleges no facts that Tufts MC acted with a primary motivation of tortiously or criminally injuring the Plaintiff. Indeed, Plaintiff's own allegations refute any suggestion that Tufts MC, a non-profit health system, had a *motive* that was tortious or criminal in its use of the third-party technology on its website. As alleged by Plaintiff, people use Tufts MC's website in order to "obtain information about the services [Tufts MC] provides[.]" *See* Am. Compl. ¶¶ 18–19. Plaintiff further alleges that the analytics tools at issue allow website owners, such as Tufts MC, "to improve the website." *Id.* ¶ 42. Finally, Plaintiff alleges that Tufts MC used the analytics tools "for [its] own commercial purposes" and for valuable services such as "website analytics and targeted advertising." *See id.* ¶¶ 4, 28, 208. None of these purposes are criminal or tortious.

Even if Tufts MC's sole motive for utilizing the technology was for profit, which it was not, financial motives are not sufficient to prove an intent to tortiously injure Plaintiff or commit a crime. *See TMC Health*, 2024 WL 4364150, at *5 (rejecting crime tort exception where complaint alleged health care entity used technology for website analytics and to increase profits through targeted advertising); Exhibit 2, *Mrozinski v. Aspirus, Inc.*, No. 23-CV-170 at 9–10 (Wisc. Cir. Ct. Marathon Cty. Apr. 15, 2024) (same); *Roe v. Amgen Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024), *reconsideration denied sub nom. Doe v. Amgen, Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 3811251 (C.D. Cal. Aug. 13, 2024) (same); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (finding the "apparent purpose" of hospital system collecting information via third party software was "for market research and consumer analysis solely for the benefit of [the hospital] in better reaching and serving its patients."); *Doe I v. Google, LLC*, No. 23-cv-02431-VC, 2024 WL 3490744, at *11 n. 4 (N.D. Ca. Jul. 22, 2024) (dismissing ECPA claim because Google's purpose in offering its advertising and analytics products "has plainly not been to

perpetuate torts on millions of Internet users, but to make money") (collecting cases); *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726, at *6, n.8 (N.D. Cal. May 21, 2021) (same); *In re Google Inc. Gmail Litig.*, No. 13-md-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (same); *In re DoubleClick*, 154 F. Supp. 2d at 519 (same).

Second, the act of the alleged interception itself is not sufficient to invoke the criminal or tortious exception. "[A] plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Cookie Placement*, 806 F.3d 125, 145 (3rd Cir. 2015) (emphasis in original, citation omitted). The criminal or tortious acts contemplated by § 2511(2)(d) are "acts ***secondary to the acquisition of the communication*** involving tortious or criminal use of the interception's fruits." *In re Google Cookie Placement*, 806 F.3d at 145 (emphasis added, citations omitted); *see also Sussman*, 186 F.3d at 1202–03 ("Where the purpose [of the interception] is not illegal or tortious, but the means are, the victims must seek redress elsewhere."). Taking Plaintiff's allegations as true at this juncture, the disclosure to Tufts MC occurred during the very act of interception by third parties via the third-party technology. *Id.* The fatal flaw in Plaintiff's argument is that the alleged acts of 'disclosure' and 'interception' are one and the same. *Okash v. Essentia Health*, No. 23-482, 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (holding that because "neither the alleged HIPAA nor privacy violations were independent of the interception, the crime-tort exception does not apply"); *Nienaber v. Overlake Hospital Medical Center*, No. 2:23-cv-01159, 2024 WL 2133709, at *15 (W.D. Wash. May 13, 2024) (finding no sufficient distinction between the recording of communications and the transmission of those communications for the latter to constitute an independent crime). Based on Plaintiff's allegations, the crime-tort exception is inapplicable.

### 3.    Plaintiff Fails To Allege Any Plausible Interception Of "Contents."

Plaintiff's ECPA claim further fails because Plaintiff has not pled facts showing that the "contents" of any communications were disclosed to third parties—the third element of her claim. Under the ECPA, the "contents" of a communication are defined as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). Courts in assessing ECPA claims distinguish between substantive "content" of a communication and mere "record" information. *See In re Google Cookie Placement*, 806 F.3d at 135–39 (addressing the distinctions between content and routing/record information); *see also In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014) (in the ECPA "the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication" such as a name, address, or the identity of a subscriber or customer); *see also CinTel Fils, Inc. v. Does 1-1,052*, 853 F. Supp. 2d 545, 555, n. 5 (D. Md. 2015); *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *4 (Fla. Cir. Ct. Jun. 17, 2021).

The type of data Plaintiff alleges was transmitted when she used the Tufts MC public website does not reflect the substantive content of any intended communication by Plaintiff—it just shows mere record information such as pages viewed on a public website. *See* Am. Compl. at ¶ 156; *see Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023) ("Navigating through a website's multiple pages is not the substance of a communication; it's an action taken to go to a digital location … Any 'substance' that can flow from these movements must be inferred from the observer, and are therefore not communicative."); *see also Zynga,* 750 F.3d at 1107 (a URL could disclose that a person viewed the "page of a gay support group," yet the court still held that such URLs "function[] like an 'address,'" not "contents" of a communication).

9

### C.        Plaintiff Fails To Plead A Claim For Statutory Invasion Of Privacy.

G.L. c. 214, § 1B, provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." Whether based on intrusion upon seclusion or public disclosure of private facts, "a plaintiff must prove that there was 1) a gathering and dissemination of facts of a private nature that 2) resulted in an unreasonable, substantial or serious interference with his privacy." *Branyan v. Southwest. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015). The disclosed facts must be "of a highly personal or intimate nature" and the invasion must be "both unreasonable and substantial or serious." *Id.* (citations omitted); *Wofse v. Horn*, 523 F. Supp. 3d 122, 137 (D. Mass. 2021) (citation omitted).

Here, the Complaint is devoid of any factual allegations regarding what information of the Plaintiff's was allegedly disclosed. In fact, Plaintiff admits that the Amended Complaint "does not describe … the specific pages she visited[.]" *See* Am. Compl. ¶ 81. Plaintiff fails to identify *any* particular communications of hers that she claims were disclosed, and therefore does not allege facts sufficient to plausibly allege above a speculative level that any facts of a "highly personal or intimate nature" were disclosed. *Twombly*, 550 U.S. at 545.

Furthermore, mere public browsing data is not information that is "highly personal or intimate in nature." Allegations regarding analytics technologies collecting public website user data is so ubiquitous that Courts have found that "*a reasonable user should expect as much.*" *See Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *7 (N.D. Cal. Jul. 1, 2024) (emphasis in original); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("[E]-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers[.]"); *B.K. v. Eisenhower Medical Center*, 721 F. Supp. 3d 1056, 1067 (C.D. Ca. 2024) (dismissing privacy claims because disclosure of "routine

medical searches and inquiries" was not "highly offensive"); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (explaining "data collection and disclosure to third parties is not a 'highly offensive' intrusion of privacy.") (collecting cases); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding disclosure of unique device identifier number, personal data, and geolocation information "does not constitute an egregious breach of social norms.") (citations omitted); *Branyan*, 105 F. Supp. 3d at 126 (noting "[a] person's name, home address, and employer are hardly facts of a highly personal or intimate nature"); *Koppel v. Moses*, No. 20-11479-LTS, 2020 WL 6292871, at **8–9 (D. Mass. Oct. 27, 2020) (dismissing invasion of privacy claim where plaintiff had "not alleged the disclosure of any private facts").

Plaintiff fails to allege the disclosure of any highly personal or intimate private facts; therefore, her privacy claim should be dismissed.

### D.    Plaintiff Fails To Plead A Fiduciary Relationship.

Plaintiff fails to plausibly allege the existence of a fiduciary relationship between herself and Tufts MC with regards to her browsing the public website. The elements of a breach of fiduciary duty claim include: (1) existence of a fiduciary duty based upon the relationship of the parties; (2) breach of the fiduciary duty; (3) damages; and (4) a causal connection between breach of fiduciary duty and damages. *Cape Cod ASC, LLC v. Bentivegna*, No. 2008457, 2010 WL 3038824, at *3 (Mass. Super. Jul. 1, 2010) (citation omitted). However, fiduciary relationships have boundaries. The central tenet of a fiduciary relationship is the "duty on the part of the fiduciary to act for the benefit of the other party to the relation as to matters ***within the scope of the relation***." 1 A.W. Scott & W.F. Fratcher, TRUSTS § 2.4 (4th ed. 1987) (emphasis added); *see* RESTATEMENT (SECOND) OF TRUSTS § 2 comment b (1959) (same).

Plaintiff alleges that the fiduciary relationship between her and Tufts MC is a physician/patient relationship. *See* Am. Compl. ¶ 185. However, even taking that allegation as true,

Massachusetts courts have recognized limits to such fiduciary relationships. Fiduciaries are only held to a higher standard "as to matters within the scope of the fiduciary relationship," and even in a physician-patient relationship, "the scope of the fiduciary duty is defined by the incidents and undertakings of the defendant *as a physician*." *Korper v. Weinstein,* 57 Mass. App. Ct. 433, 437–38 (2003) (emphasis added). The *Korper* court found that a plaintiff's complaints against her doctor based on their romantic relationship, instead of his provision of physician services to her as a patient, were outside the scope of their fiduciary relationship. *Id.* at 436–38. The court "decline[d] the plaintiff's invitation to expand the scope of the fiduciary duty a doctor owes a patient to include conduct beyond the context of medical treatment[.]" *Id.* at 438 n. 11.

As in *Korper*, the context of the Plaintiff's relationship with Tufts MC when she used the public website is outside the scope of the alleged physician/patient fiduciary relationship. Public website browsing history data are not medical records and do not contain IIHI as protected by HIPAA. *See supra* §III.A. There is no physician providing medical advice or treatment – it is an informational public website that the Plaintiff is browsing. The disclosure of data such as names, addresses, dates of birth and the mere fact that a patient has been prescribed medication is not "so private, standing alone, as to constitute a breach of a…duty of confidentiality" to a healthcare customer. *See Kelley v. CVS Pharmacy, Inc.*, No. CIV.A. 98-0897-BLS2, 2007 WL 2781163, at *6 (Mass. Super. Aug. 24, 2007) Both patients and non-patients alike may browse the public website. As such, it would be inconsistent to afford higher fiduciary duty protections to some visitors to the public website—namely patients—and not other members of the pubic when Tufts MC does not know who any of the browsers to its public website are nor the context for their visit to the website. Plaintiff's allegations fall outside the scope of any alleged patient/physician relationship, and Plaintiff failed to plausibly allege the breach of a fiduciary relationship between her and Tufts MC.

Plaintiff's breach of fiduciary claim fails for the additional reason that her alleged damages fail as a matter of law as described in § III(E)(2).

**E.     Plaintiff's Negligence Claim Fails For Lack Of Duty, Breach, And Damages.**

In order to state a viable claim for negligence under Massachusetts law, Plaintiff must allege facts establishing: "(1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." *Nelson v. Massachusetts Port Auth.*, 55 Mass. App. Ct. 433, 435 (2002) (citation omitted).

**1.     Plaintiff Fails To Plead Facts Showing A Duty of Care And Breach.**

Plaintiff pleads multiple sources for Tufts MC's alleged duty to protect Plaintiff's public website browsing data, including that the duty originates from statute, including HIPAA and Massachusetts privacy laws, as well as a result of the "special relationship" formed between Tufts MC and its patients. *See* Am. Compl. ¶¶ 196–97. None of these allegations are sufficient to show any duty on behalf of Tufts MC to protect public browsing data or any breach of that duty.

First, Plaintiff's allegations that Tufts MC's duty originates from statute must be dismissed because Massachusetts does not recognize negligence per se causes of action. *See Roe No. 1 v. Children's Hosp. Med. Ctr.*, 469 Mass. 710, 719 (2014) ("As an initial matter, and as the judge correctly noted, the mere existence of a statute or regulation does not automatically give rise to a legal duty for the purpose of a negligence action.") (citation omitted); *see also Juliano v. Simpson*, 461 Mass. 527, 532 (2012). Moreover, as Plaintiff admits, HIPAA does not provide for a private cause of action and cannot support Plaintiff's negligence claim. *See* Am. Compl. ¶ 132; *Spencer v. Roche*, 755 F. Supp. 2d 250, 271 (D. Mass. 2010), *aff'd*, 659 F.3d 142 (1st Cir. 2011).

Plaintiff's allegations that Tufts MC's duty originates from a "special relationship" between health care provider and patients are merely duplicative of her claim that Tufts MC owes duties to the plaintiff as a result of their fiduciary relationship and should be dismissed. *Compare* Am.

Compl. ¶ 186 *with id.* ¶ 196; *see Clark v. Rowe*, 428 Mass. 339, 345 (1998) (trial court dismissed breach of fiduciary duty claim as duplicative of a malpractice claim); *Jordan's Furniture, Inc. v. Carter & Burgess, Inc.*, No. 16-P-728, 2017 WL 3393465, at *3 (Mass. App. Aug. 8, 2017) (finding no error in trial judge dismissing contract claims as duplicative of negligence claim because they were all "based on the same core facts."); *Renzulli v. Sullivan*, No. 22 MISC 000564 (KTS), 2024 WL 1903573, at *10 (Mass. Land Ct. Apr. 26, 2024) (explaining negligence counterclaim was "duplicative of the breach of fiduciary duty claim[.]"). Even if it was not duplicative, it would fail for the reasons stated in § III(D).

Finally, Plaintiff does not plausibly allege the breach of any duty. Plaintiff alleges Tufts MC breached its duty by failing to safeguard "Private Information" from disclosure. *See* Am. Compl. ¶ 194. As explained *infra* in § III(A), the public browsing data at issue does not satisfy the statutory definitions under HIPAA.  Therefore, Plaintiff failed to allege facts showing any plausible breach of a duty to protect PHI and IIHI. *See TMC Health*, 2024 WL 4364150, at *7 (dismissing plaintiff's negligence claim because health care entity owed no duty to protect the browsing history of its website visitors from being shared; holding that to interpret, otherwise, "would stretch HIPAA and federal guidance implementing HIPAA to an extent completely divorced from the text."); *see Legacy Health*, 2024 WL 4794657 (dismissing plaintiff's negligence claim regarding the public website, under Oregon law, finding that the plaintiff only sufficiently pled that defendant owed plaintiff a duty with regards to her PHI, which it noted earlier did not include the public website browsing activity at issue).

As a result, Plaintiff fails to allege a duty on behalf of Tufts MC and any breach as a matter of law, and her negligence claim should be dismissed.

##### 2.    Plaintiff Fails To Plead Cognizable Damages.

Plaintiff's negligence claim also fails because she fails to plead any facts to show how she was actually harmed by the alleged conduct. Plaintiff's complaint includes multiple conclusory allegations of injuries including loss of value of the private information, seeing unwanted targeted advertisements, loss of the benefit of the bargain, erosion of the provider-patient relationship, general and nominal damages, unjust enrichment, and violation of property rights. *See* Am. Compl. ¶¶ 143, 200. She also describes an alleged injury caused by the "continued and ongoing risk of further disclosure of [her] Private Information." *Id.* ¶ 7. Plaintiff must show actual loss as a necessary element of a negligence claim, therefore vague and generic claims alleging violation of property rights are insufficient. *See Portier v. NEO Tech. Sols.*, No. 3:17-CV-30111-TSH, 2019 WL 7946103, at *15 (D. Mass. Dec. 31, 2019), *report and recommendation adopted*, No. 3:17-CV-30111, 2020 WL 877035 (D. Mass. Jan. 30, 2020) (citation omitted). Further, nominal damages are not recoverable under a negligence claim. *See Donovan v. Philip Morris USA, Inc.*, 455 Mass. 215, 222 (2009) ("[T]here can be no invasion of the rights of another unless legal damage is caused, and for that reason nominal damages cannot be recovered.") (citation omitted).

Other than creating a list of alleged damages, Plaintiff provides no factual allegations supporting these proposed damages, and her conclusory assertions should be disregarded. *See A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 81 (1st Cir. 2013) ("When allegations, though disguised as factual, are so threadbare that they omit any meaningful factual content, we will treat them as what they are: naked conclusions.") (citations omitted). Indeed, in assessing similar allegations many courts have found that plaintiffs have no actionable damages for browsing history information that may be transmitted when they search a health care entity's public website and/or click on a button to log in to a patient portal. *See T.D. v. Piedmont HealthCare, Inc.*, No. 1:23-cv-5416-TWT, 2024 WL 3972984, at **3–4 (N.D. Ga. Aug. 28, 2024) ("This is not a case where

Plaintiff's personal information was stolen by criminal hackers with malicious intent… The better view from other courts around the country is that these types of damage claims are not actionable."); Exhibit 1, *Farmers' Union Hospital Ass'n*, No. CJ-24-0071 at 1 (data related to what a person browses on a public website, is not private and is not PHI); *Upperline Health, Inc.*, 2024 WL 4953503, at *3 (searches on public website are not PHI and "Plaintiff does not explain how clicking on a 'patient portal' in the navigation bar involves the use of Private Information."); *Doe v. Village Podiatry Group, LLC*, No. 2023CV383709, 2024 WL 5187261, at *2 (Ga. Super. Nov. 20, 2024) (dismissing similar negligence, breach of fiduciary duty, and breach of implied contract claims based on "speculative or theoretical injuries rather than actual losses or injuries to sustain any of his claims for damages.") (collecting cases); *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 339–40 (E.D. Pa. 2012) (Plaintiff "cannot sustain a finding of injury without a specific showing that the plaintiff has sustained a resulting loss.") (collecting cases).

Finally, any allegations regarding merely the risk of future harm are insufficient as a matter of law. *Donovan*, 455 Mass. at 223 ("A plaintiff is entitled to compensation for all damages that reasonably are to be expected to follow, but not to those that possibly may follow.") (citation omitted).  Courts have also rejected loss of diminution of value of personal information damages theories where, like here, the plaintiff fails to allege "the existence of a market for the personal information and an impairment of the ability to participate in that market." *Gardiner v. Walmart, Inc.*, No. 20-CV-04618-JSW, 2021 WL 4992539, at *3 (N.D. Cal. Jul. 28, 2021); *Doe I*, 2024 WL 3490744, at *7.

**F.     Plaintiff's Breach Of Confidence Claim Should Be Dismissed.**

Defendant is unaware of any Massachusetts court that has recognized an independent cause of action for breach of confidence. Although courts have generally discussed breaches of confidence in the trade secret context, such discussions are inapplicable here. *See e.g., Harvard*

*Apparatus, Inc. v. Cowen*, 130 F. Supp. 2d 161 (D. Mass. 2001); *Connors v. Howard Johnson Co.*, 30 Mass. App. Ct. 603, 607 n. 3 (1991). Massachusetts courts have dismissed breach of confidence claims for failure to state a claim, but none have articulated any basis for the cause of action under Massachusetts law. *See Shaoguang Li v. Off. of Transcription Servs.*, No. 16-P-152, 2016 WL 6609796, at *1 (Mass. App. Ct. Nov. 8, 2016) (describing a breach of confidence claim under California law); *Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 103 (D. Mass. 2024) (same). Even if the cause of action existed, Plaintiff's breach of confidence claim is plainly duplicative of her fiduciary duty claim. As such, Plaintiff's claim should be dismissed with prejudice because Massachusetts does not recognize a breach of confidence cause of action, or, alternatively, because it is duplicative of her breach of fiduciary duty claim.

### G. Plaintiff Contract Claim Fails Due To Lack Of Mutual Assent And Consideration.

Under Massachusetts law, breach of contract and breach of implied contract claims largely have the same elements. *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005). A valid contract requires offer, acceptance, and consideration. *Josef Gartner USA LP v. Consigli Const. Co., Inc.*, No. 10-40072-FDS, 2011 WL 2417137, at *4 (D. Mass. Jun. 10, 2011) (citations omitted). If the parties do not agree on the essential elements of the contract, there can be no contract. *Id.* (affirming dismissal of implied contract claim for a "failure to reach agreement on the basic terms of the contract.").

Plaintiff alleges that she was required to disclose her "Private Information" to Tufts MC "as a condition of receiving healthcare services," and as a result she and Tufts MC had either an explicit or implied contract for the protection of that information. *See* Am. Compl. ¶¶ 214–15. As explained *supra* § III(A), the information at issue in this case is not protected by HIPAA, but

17

instead is merely browsing information. Moreover, there is no requirement that anyone use Tufts MC's freely accessible public website as a condition of receiving healthcare services.

Plaintiff fails to plead any facts showing that Tufts MC assented to the protection of Plaintiff's public website browsing data. Contract formation "requires a bargain in which there is manifestation of mutual assent to the exchange." *Vacca v. Bringham & Women's Hosp., Inc.*, 156 N.E.3d 800, 806 (Mass. App. Ct. 2020) (internal citations and quotations omitted). There is a lack of mutual assent where the parties do not discuss the need to safeguard information. *See Weekes*, 723 F. Supp. 3d at 104 (dismissing plaintiff's breach of implied contract claim because there were no allegations "that either party ever discussed the manner of safeguarding the PII or PHI or that plaintiff had a particular concern about disclosing that information.").

The same is true in this case. Plaintiff does not allege that Tufts MC ever agreed to protect Plaintiff's public browsing data, and any mere belief or hope by the Plaintiff that it would be protected is insufficient as a matter of law to create a binding contract between the parties. *See Webb v. Injured Workers Pharmacy, LLC*, No. 22-CV-10797, 2023 WL 5938606, at *3 (D. Mass. Sept. 12, 2023) (finding plaintiff's good faith belief that their PII would be protected as insufficient because there was "no allegation that [Defendant] agreed – explicitly or implicitly – to provide such protection."); *In re Mednax Servs. Customer Data Sec. Breach Litig*, 603 F. Supp. 3d 1183, 1221 (S.D. Fla. 2022) (dismissing claim where "plaintiffs allege[d] no invitation or solicitation by Defendants indicating that Defendants implicitly assented to secure their PHI and PII in exchange for remuneration"); *J.R. v. Walgreens Boots Alliance, Inc.*, No. 20-1767, 2021 WL 4859603, at *5 (4th Cir. Oct. 19, 2021). As such, Plaintiff fails to plead facts sufficient to show assent by Tufts MC to protect her public browsing data.

Plaintiff also fails to plead the existence of any consideration. A purported promise for Tufts MC to protect a patient's IIHI is not valid consideration given that it is a pre-existing legal obligation under HIPAA. *See Gravallese v. Massachusetts Parole Bd.*, No. CA 945777, 1995 WL 808813, at *2 (Mass. Super. Apr. 19, 1995) (a promise to perform a pre-existing duty is not valid consideration); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) ("Because the Defendants are required by law to adhere to HIPAA without receiving any consideration from the Plaintiff or any other patient, these provisions cannot create contractual obligations."); *In re Banner Health Data Breach Litig.*, No. CV-16-02696-PHX-SRB, 2017 WL 6763548, at *4 (D. Ariz. Dec. 20, 2017) (same) (citations omitted); *TMC Health*, 2024 WL 4364150, at *8 (same); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2904, 2021 WL 5937742, at *19 (D.N.J. Dec. 16, 2021) (same).

## H.    Plaintiff's Unjust Enrichment Fails For Lack Of Reasonable Expectation Of Compensation.

Under Massachusetts law, a claim for unjust enrichment includes the following elements: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under circumstances which make such acceptance or retention inequitable." *Sweeney v. DeLuca*, No. 042338, 2006 WL 936688, at *8 (Mass. Super. Mar. 16, 2006) (citation omitted). The fact that the Defendant received any benefit is not enough, the benefit received must be *unjust* which "turns on the reasonable expectations of the parties." *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013) (citations omitted). "Usually, this means that the parties were dealing with each other in such a way, or in such circumstances, that reasonable people would expect payment by the defendant to the plaintiff for some benefit conferred by the plaintiff on the defendant." *Brookridge Funding Corp. v. Aquamarine, Inc.*, 675 F. Supp. 2d 227, 234–35 (D. Mass. 2009).

Plaintiff's unjust enrichment claim fails because she fails to allege that the reasonable expectations of the parties was for Tufts MC to compensate Plaintiff for the collection of her public browsing data. Plaintiff makes no factual allegations that at the time she was browsing the Tufts MC website she expected to receive payment from Tufts MC for her public browsing data. Nor would there be any reasonable expectation of payment in exchange for any use of Plaintiff's data— Plaintiff separately paid Tufts MC for medical services, and there is no reasonable expectation that browsing Tufts MC's free website would somehow result in compensation for the browser. Similar allegations and theories levied against other healthcare providers have been rejected by other courts at the motion to dismiss stage. *See e.g.*, *Allen v. Novant Health, Inc.*, No. 1:22-CV-697, 2023 WL 5486240, at **1, 3 (M.D.N.C. Aug. 24, 2023). Plaintiff's lack of any factual allegations of any reasonable expectation of payment for the alleged provision of data reflecting her browsing activity on Tufts MC's website is fatal to her claim. *In re Nickelodeon Consumer Priv. Lit.*, No. 2443 (SRC), 2014 WL 3012873, at *19 (D.N.J. Jul. 2, 2014) (dismissing unjust enrichment claim regarding allegations that defendants collected information about plaintiff's browsing activities without authorization because there were no allegations that Plaintiff expected or should have expected renumeration); *Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 451 (D. Mass. 2012) (dismissing unjust enrichment claim because plaintiff did not allege that a reasonable person would expect payment for PII); *ARK Nat'l Holdings LLC v. We Campaign LLC*, No. 21-10893-RGS, 2021 WL 5918682, at *5 n.2 (D. Mass. Dec. 15, 2021) (same).

## **CONCLUSION**

For the foregoing reasons, Tufts MC respectfully asks the Court to dismiss the Amended Complaint against it with prejudice.

Dated: February 10, 2025

Respectfully submitted,

*/s/ James H. Rollinson*

James H. Rollinson, Esq. (BBO #649407)
BAKER & HOSTETLER LLP
127 Public Street
Suite 2000
Cleveland, OH 44116
jrollinson@bakerlaw.com
T: (216) 621-0200
F: (216) 626-0740

Paul G. Karlsgodt (pro hac vice to be filed)
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202-2662
pkarlsgodt@bakerlaw.com
T: (303) 764-4013
F: (303) 861-7805

Elizabeth A. Scully (admitted pro hac vice)
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
escully@bakerlaw.com
T: (202) 861-1500
F: (202) 861-1783

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 10, 2025, copies of the foregoing were filed using the

Court's CM/ECF service which will provide service copies to the Plaintiff's counsel of record.


*/s/ James H. Rollinson*
*One of the attorneys for defendant*