**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

**Suffolk, ss.**

| | |
|---|---|
| KAREN MCMANUS,<br><br>For herself and the Class,<br><br>v.<br><br>TUFTS MEDICAL CENTER, INC.,<br><br>Defendant. | **Case No. 1:25-cv-10008-ADB** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

## Table of Contents


I. Introduction ... 1

II. The Facts. ... 2

A. Tufts MC Implemented Tracking Technologies in a Manner that Disclosed Patient Status, the Substance of Patient Communications, and Patient Identities ... 2

B. Tufts MC's Failure to Disclose Tracking Technologies and Their Implications for Patient Privacy. ... 3

C. Plaintiff's Communications Intercepted on the Tufts MC Website. ... 4

III. Argument ... 4

A. Plaintiff States a Claim for Violation of the ECPA. ... 4

1. Plaintiff Adequately Alleges the Crime-Tort Exception to One-Party Consent. ... 5

2. Plaintiff Alleges the Interception of the Contents of Her Communications ... 11

B. Becerra Is Irrelevant to Plaintiff's Massachusetts Claims ... 12

C. Plaintiff States a Claim under the MRPA ... 12

1. Plaintiff's Allegations Regarding Her Own Communications Are Sufficient. ... 13

2. Plaintiff Adequately Alleges Intrusion upon Seclusion. ... 14

3. Plaintiff Adequately Alleges Disclosure of Private Facts. ... 15

D. Plaintiff States a Claim for Breach of Fiduciary Duty ... 16

E. Plaintiff States a Claim for Breach of Confidence ... 17

F. Plaintiff States a Claim for Negligence ... 17

G. Plaintiff Sufficiently Alleges Damages on Her Breach of Fiduciary Duty and Negligence Claims. ... 18

H. Plaintiff States a Claim for Breach of Contract. ... 19

I. Plaintiff States a Claim for Unjust Enrichment ... 20

IV. Conclusion ... 20

# Table of Authorities

Pages

**Cases**

*A.J. v. LMND Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ....................9, 16, 17, 20

*Alberts v. Devine*,
395 Mass. 59 (1985) ....................17

*Alves v. BJ's Wholesale Club, Inc.*,
2023 Mass. Super. LEXIS 59 (Super. Ct. June 21, 2023) ....................13, 15, 16

*Am. Hosp. Ass'n v. Becerra*,
2024 U.S. Dist. LEXIS 108847 (N.D. Tex. June 20, 2024) .................... 5, 7

*Bennett v. Eagle Brook County Store, Inc.*,
408 Mass. 355 (1990) ....................18

*Brahm v. Hosp. Sisters Health Sys.,*
2024 U.S. Dist. LEXIS 114827 (W.D. Wis. June 28, 2024) ....................9, 16, 17

*Bratt v. Int'l Bus. Machines Corp.*,
392 Mass. 508 (1984) ....................15

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....................15

*Castillo v. Costco Wholesale Corp.*,
2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024) ....................10, 11, 12

*Commonwealth v. McCarthy*,
484 Mass. 493 (2020) ....................5

*Cooper v. Mt. Sinai Health Sys., Inc.*,
2024 U.S. Dist. LEXIS 134570 (S.D.N.Y. July 30, 2024) .................... 10, 17

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ....................7

*Doe v. Bon Secours Mercy Health*,
2021 Ohio Misc. LEXIS 3985 (Ct. Com. Pl. Nov. 22, 2021) .................... 14, 20

*Doe v. Bos. Med. Ctr. Corp.*,
2023 Mass. Super. LEXIS 674 (Super. Ct. Sep. 14, 2023) ....................13, 14, 15

*Doe v. Emerson Hosp.*,
2023 Mass. Super. LEXIS 673 (Super. Ct. Nov. 22, 2023) ........ passim

*Doe v. Medstar Health, Inc.*,
2020 Md. Cir. Ct. LEXIS 139 (Cir. Ct. Aug. 5, 2020) ........ 15, 16

*Doe v. Partners Healthcare*,
No. 1984CV01651-BLS1 (Mass. Super. Ct.) ........ 12, 13, 16

*Doe v. Post Acute Med., LLC*,
2025 U.S. Dist. LEXIS 26667 (M.D. Pa. Feb. 14, 2025) ........ 11

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) ........ 13, 16, 20

*Elkin s v. Bartholomew Cnty. Pub. Hosp.*,
2024 Ind. Super. LEXIS 340 (Super. Ct. Dec. 16, 2024) ........ 20

*Gaige v. Exer Holdings Co., LLC*,
2025 U.S. Dist. LEXIS 17146 (C.D. Cal. Jan. 30, 2025) ........ 8

*Garcia v. Columbia Med. Ctr.*,
996 F. Supp. 617 (E.D. Tex. 1998) ........ 18

*Gay v. Garnet Health*,
2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sept. 16, 2024) ........ 11, 19

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ........ 15

*In re BetterHelp, Inc. Data Disclosures Cases*,
2024 U.S. Dist. LEXIS 124321 (N.D. Cal. July 15, 2024) ........ 10

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 15

*In re Google Inc.*,
806 F.3d 125 (3d Cir. 2015) ........ 11, 15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ passim

*In re Meta Pixel Tax Filing Cases.*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........ 14, 19

*Jarrell v. Adena Health Sys.*,
2025 U.S. Dist. LEXIS 6169 (S.D. Ohio Jan. 13, 2015) ........ 6, 10

*Juliano v. Simpson,*
461 Mass. 527 (2012)....................18

*K.L. v. Legacy Health*,
2024 U.S. Dist. LEXIS 206864 (D. Or. Nov. 14, 2024)....................7

*Kelley v. CVS Pharmacy, Inc.*,
23 Mass. L. Rep. 87 (2007)....................5

*Kurowski v. Rush Sys. For Health*,
2024 U.S. Dist. LEXIS 126837 (N.D. Ill. July 18, 2024)....................8, 9, 10

L*amarr v. Goshen Health Sys., Inc.*,
2024 Ind. Super. LEXIS 107 (Super. Ct. Oct. 3, 2024)....................passim

*Lee v. Conagra Brands, Inc.,*
958 F.3d 70 (1st Cir. 2020)....................19

*M.G. v. Therapymatch*,
2024 U.S. Dist. LEXIS 166534 (N.D. Cal. Sept. 16, 2024)....................12

*M.R. v. Salem Health Hosps. & Clinics*,
2024 U.S. Dist. LEXIS 155513 (D. Or. Aug. 28, 2024)....................7, 14

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024)....................10

*Nienaber v. Oberlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....................7

*Peckham v. Bos. Herald, Inc.*,
48 Mass. App. Ct 282 (App. Ct. 1999)....................5

*Polay v. McMahon*,
468 Mass. 379 (2014)....................13, 14, 15

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)....................6, 10, 11, 16

*R.S. v. Prime Healthcare Servs.*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025)....................6, 10, 11

*Roe No. 1 vs. Children's Hosp. Med. Ctr.*,
469 Mass. 710 (2014)....................18

*Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
409 Mass. 514 (1991)....................12

*Spencer v. Roche*,
755 F. Supp. 2d 250 (D. Mass. 2010) ........................................................................................18

*Stein v. Edward-Elmhurst Health,*
2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) ..........................................................9

*Tower v. Hitschhorn*,
397 Mass. 581 (1986) ...............................................................................................................15

*Transamerica Ins. Co. v. KMS Patriots*,
52 Mass. App. Ct. 189 (App. Ct. 2001) .....................................................................................5

*Vita v. New England Baptist Hosp.*,
494 Mass. 824 (2024) ..................................................................................................13, 16, 20

*Yoon v. Meta Platforms, Inc.*,
2024 U.S. Dist. LEXIS 234457 (N.D. Cal. Dec. 30, 2024) ....................................................11

**Statutes**

42 U.S.C. § 1320d ........................................................................................................................7

M.G.L. c. 214 § 1B ............................................................................................................. 13, 14

## I. INTRODUCTION

Tufts Medical Center ("Tufts MC") aided third parties—including Google and Facebook—to secretly eavesdrop on Plaintiff Karen McManus's ("Plaintiff") communications with Tufts MC. Tufts MC injected hidden code for tracking technologies into its website, including Google Analytics and Facebook's Meta Pixel, but did not disclose those technologies to consumers or their significance for patient privacy. The core fact giving rise to Tufts MC's liability is its failure to disclose—the fact that its implementation of third-party eavesdropping on its own website was done secretly, and, in fact, Tufts MC affirmatively misrepresented to consumers its conduct in facilitating eavesdropping.

Tufts MC's arguments for dismissal each lack merit.

***First***, none of Plaintiff's claims require as an element that Tufts MC violated HIPAA, no less a specific portion of regulatory guidance regarding HIPAA. Accordingly, a federal court decision regarding that guidance does not preclude any of her claims. In any event, Plaintiff adequately alleges a HIPAA violation; Tufts MC's contrary arguments ignore Plaintiff's well-pled allegations.

***Second***, Plaintiff adequately alleges a claim under the federal Electronic Communications Privacy Act ("ECPA"). Plaintiff alleges both a criminal and tortious purpose by alleging Tufts MC's intentional decision to inject hidden code onto its website, enabling third parties to eavesdrop on patient communications, violated both federal and state law. Moreover, Plaintiff adequately alleges that the contents of such online conversations were intercepted by Tufts MC's use of descriptive URLs that, when intercepted, revealed the substance of the intercepted communications and its use of tracking technologies on pages that disclosed Plaintiff's patient status (which is also content under the ECPA).

***Third***, Plaintiff adequately alleges each Massachusetts claim she asserts. Tufts MC's challenges to particular elements of those claims lack merit, as does its challenges to the sufficiency of Plaintiff's allegations regarding her own communications. Plaintiff alleges more than sufficient detail to support her claims that Tufts MC violated Massachusetts law by secretly injecting eavesdropping code on its website.

For the reasons detailed below, the Court should deny the motion to dismiss.

## II. THE FACTS.

### A. *Tufts MC Implemented Tracking Technologies in a Manner that Disclosed Patient Status, the Substance of Patient Communications, and Patient Identities.*

Tufts MC injected hidden code in its website that enabled third parties, including Google, Facebook, LinkedIn, and others, to eavesdrop on communications between Tufts MC and patients, including Plaintiff. ¶¶ 31–62, 96.[1] The code caused consumers' browsers to intercept information about the substance of the communication made through each webpage a patient visited and to disclose that intercepted communication to third parties, all without informing the consumer. *See* ¶¶ 54-58, 63–103. A few months after this lawsuit was filed, Tufts MC removed the tracking technologies from its website.[2]

The substance of communications intercepted included URLs and titles of webpages. URLs serve as addresses for webpages but sometimes also reveal information about the substance of the communication—those URLs are called "descriptive URLs." Tufts MC used such descriptive URLs. For example, URLs for particular medical conditions and departments contained within them the name of the condition or department; therefore, when intercepted, they revealed the substance of the information communicated through the webpage. *See, e.g.*, ¶ 51 ("https://www.tuftsmedicalcenter.org/**patient-care**-services/Departments-and-Services/**Obstetrics-and-Gynecology**/Overview"); ¶¶ 70, 76-77, 83, 85-86, 89-91 95-96, 98-99, 101-02 (emphasis added). The tracking technologies also disclosed the title of each page visited, which further described the substance of the information communicated through the page (such as "Obstetrics and Gynecology in Boston | Tufts Medical Center"). *Id.*

The tracking technologies were also used in a way that revealed Plaintiff's and other users' status as patients, including by permitting Google and Facebook to eavesdrop on appointment requests, bill payments, and medical records requests ¶¶ 78–95. Plaintiff requested medical records through the

---

[1] "¶ __" refers to paragraphs of Plaintiff's Amended Complaint. Plaintiff filed the Amended Complaint in the Massachusetts Superior Court prior to Tufts MC's removal of this case. The state-court e-filing system removes the color from and distorts some graphics in the Amended Complaint. Accordingly, although the amended complaint is attached to Tufts MC's notice of removal (ECF 1-31), Plaintiff attaches as **Exhibit 1** to this motion a higher quality, color version of her Amended Complaint.

[2] ¶ 62. Although Tufts MC rolled out new tracking technologies after it removed the old ones, those tracking technologies have better protections for patient privacy, and as described below, Tufts MC has also modified its privacy policy. This case is limited to the period before Tufts MC removed the tracking technologies described in the complaint. ¶ 144.

website, revealing her status as a Tufts MC patient to Google, Facebook, and other third parties. ¶¶ 12-13, 102, 158. Although Tufts MC trumpets that no tracking technologies "operated *within* Tufts MC's patient portal" (MTD[3] 2) (emphasis added),[4] that carefully crafted statement implies it **did use** the technologies on pages through which patients initially connect to the portal and excluded them only from the portion accessed after logging in. This implication is correct: Tufts MC did use tracking technologies (including Meta Pixel and Google Analytics) on the pages patients use to initiate access to the portal.[5]

The interceptions were designed to enable Google and Facebook to associate the intercepted communications with individuals known to those third parties to facilitate individualized, targeted advertising to those individuals. The information Google and Facebook used to identify individuals included IP addresses, ¶¶ 33, 50, 57, 73, 78; browser fingerprints (unique combinations of browser and computer settings that confirm the identity of an individual), ¶¶ 71, 74-75 & n.5, 79, 127; and personal identifiers assigned by Google or Facebook used to track a particular individual's communications across the Tufts MC Website and other websites ¶¶ 65, 73.

B. *Tufts MC's Failure to Disclose Tracking Technologies and Their Implications for Patient Privacy.*

Plaintiff does not contend that Tufts MC's mere **use** of tracking technologies results in liability under any claim. Instead, the core fact giving rise to liability on all claims is Tufts MC's failure to disclose the tracking technologies and, in fact, its affirmative deception regarding them.

The code for tracking technologies, by design, is invisible to consumers, implemented through hidden code injected by the website owner (Tufts MC) that is not depicted visually in any part of the

---

[3] "MTD" refers to Tufts MC's memorandum in support of its motion to dismiss, ECF 16.

[4] As to pages *within* the portal (accessed after logging in), it is yet unknown to what degree Tufts MC used tracking technologies there during the class period. Unlike publicly accessible pages, pages within a patient portal are not archived through online services such as the Internet Archive's Wayback Machine. Accordingly, Plaintiff cannot determine before discovery to what degree Tufts used tracking technologies "within" the portal. *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 U.S. Dist. LEXIS 178597 (N.D. Ill. Oct. 21 2024) (describing "'chicken and the egg' problem that frequently arises in data-privacy cases, in which plaintiffs often lack knowledge of when or how their data is being used by the defendant's platform and can find out only through discovery.").

[5] Plaintiff's counsel has confirmed that both Google Analytics and Meta Pixel were used during the class period on the pages through which users access the portal. Although Plaintiff's allegations are sufficiently clear on the breadth of tracking technologies (*e.g.,* ¶ 13 (describing "tracking technologies…on nearly every page of the…website")), Plaintiff can readily amend to provide more detail on how tracking technologies were used in connection with those specific pages, if necessary.

website observable to the website user. ¶¶ 53-54, 58, 65. Tufts MC did not disclose that any technology used on the website shared any communications with third parties such as Google or Facebook. Instead, it falsely promised that "[a]ll visitors use the [Tufts MC Website] anonymously," that Tufts does "not collect any identifiable information," and that Tufts "will never sell or rent any identifiable information to third party vendors." ¶¶ 26-28. These promises were false, as Google Analytics and Meta Pixel are designed to identify consumers for targeted, personalized advertising. ¶¶ 2, 27-29, 35-37, 42-43. In late 2023, after this lawsuit was filed, Tufts MC removed these false promises from its privacy policy. ¶ 62.

C. *Plaintiff's Communications Intercepted on the Tufts MC Website.*

Plaintiff is a resident of Massachusetts and a Tufts MC patient. ¶ 12. She regularly uses the Tufts MC Website to obtain information about doctors, search for information on medical procedures, and obtain and review medical records. *Id.* The pages on the Tufts MC Website that Plaintiff visits are the same pages on which Tufts MC used the tracking technologies, and the substance of her communications was intercepted in the same manner as the examples Plaintiff presents in her complaint. ¶¶ 13, 82-87, 94-99, 100-02 (trackers used on practically all pages include medical searches, find-a-doctor searches, and medical records requests). As a result of how Tufts MC configured its website, including its use of descriptive URLs and its use of tracking technologies on pages designed specifically for patients, Tufts MC disclosed to Google, Facebook, and other third parties (i) Plaintiff's status as a Tufts MC patient; (ii) the identity of her doctors; (iii) information about her medical procedures; and (iv) her identity, confirmed through her IP address, browser fingerprint, and persistent identifiers used by Google and Facebook. ¶¶ 12-13, 82-87, 100-02. Plaintiff neither knew of nor consented to the interceptions or disclosures. ¶ 14.

## III. ARGUMENT

A. *Plaintiff States a Claim for Violation of the ECPA.*

Tufts MC violated the ECPA by enabling third parties, including Google and Facebook, to eavesdrop on healthcare consumers' communications with Tufts MC through the Tufts MC website, without consumers' knowledge or consent. Tufts MC makes two arguments for dismissal of the ECPA

claim—first, that it was a party to the communications and therefore may assert a one-party consent defense (and that the crime-tort exception to that defense does not apply); and second, that the interceptions did not involve the "contents" of any communication. Both arguments lack merit.

1. Plaintiff Adequately Alleges the Crime-Tort Exception to One-Party Consent.

a. Plaintiff Identifies Several Legal Bases for the Crime-Tort Exception.

As Defendant recognizes, although the ECPA provides a defense if **either party** to a communication consents to its interception (and Tufts MC consented here by placing the technologies on its website), the ECPA imposes a **two-party** consent requirement (thus, requiring the consent of **both** Tufts MC **and** Plaintiff) if a communication "is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any state." 18 U.S.C. § 2511(2)(d). Tufts MC's argument assumes Plaintiff's claims turn upon proof of a violation of a December 2022 Department of Health and Human Services Bulletin ("HHS Bulletin"). MTD 3. Tufts MC argues such proof fails because "portions" of that Bulletin were vacated in *Am. Hosp. Ass'n v. Becerra*, 2024 U.S. Dist. LEXIS 108847 (N.D. Tex. June 20, 2024). Tufts MC's argument is wrong for several reasons.

***First***, Plaintiff does not rely solely on HIPAA to invoke the crime-tort exception. She also alleges Tufts MC acted with tortious intent based upon Massachusetts statutory and common law torts for which she asserts claims. ¶¶ 162-63, ¶¶ 173-91, 201-12.[6] Tufts MC ignores those claims in its discussion of the crime-tort exception, but those claims provide independent bases for applying the crime-tort exception. The torts include intrusion upon seclusion and disclosure of private facts (torts codified by the Massachusetts Right to Privacy Act, ("MRPA")),[7] breach of fiduciary duty, and breach of confidence.

[6] ¶¶ 162-63 ("The party exception…does not permit a party…to escape liability if the communication is intercepted for the purpose of committing any tortious or criminal act…. Tufts Medical Center intentionally intercepted the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State—namely, violation of HIPAA and the FTC Act, **as well as the other causes of action set forth in this complaint**.") (emphasis added); ¶¶ 173-212 (Massachusetts statutory and common law tort claims).

[7] The MRPA codifies common law torts and thus provides remedies for the "tort [for] invasion of privacy." *Transamerica Ins. Co. v. KMS Patriots*, 52 Mass. App. Ct. 189, 195-96 (App. Ct. 2001); *Kelley v. CVS Pharmacy, Inc.*, 23 Mass. L. Rep. 87 (2007) (MRPA creates "statutory tort of invasion of privacy"); *Peckham v. Bos. Herald, Inc.*, 48 Mass. App. Ct 282, 283 (App. Ct. 1999) (MRPA creates a "tort claim of public disclosure of private facts"); *Commonwealth v. McCarthy*, 484 Mass. 493, 510 & n.18 (2020) (MRPA "creates a cause of action for tort liability").

Although the precise elements of those torts vary, the tortious purpose Plaintiff alleges for each is the same—the intentional disclosure to third parties of communications in contradiction to Tufts MC's own published policies and consumers' reasonable expectations of privacy. None of those claims require a HIPAA violation as an element of the claim; indeed, they are not specific to the healthcare industry. Tufts MC offers no reason those claims should be construed to cover only circumstances in which a business violates HIPAA or the HHS Bulletin; to the contrary, as argued below, **every** Massachusetts court to have considered those claims in cases relating to tracking technologies has **affirmed** such claims without reference to HIPAA, even where healthcare wasn't involved. *See* §§ III-C, D, E, *infra*.

Plaintiff's well-pled allegations regarding those intentional torts (including the applicable *mens rea* for such torts[8]) satisfy the crime-tort exception for the ECPA's one-party consent rule. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (holding "tort claims may lie against health care providers over their use of the Pixel," and "the crime-tort exception [may] appl[y]" based on such torts); *Jarrell v. Adena Health Sys.*, 2025 U.S. Dist. LEXIS 6169, at *6-13 (S.D. Ohio Jan. 13, 2015) (state law privacy claim satisfies crime-tort exception); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. , 2024) (same). Given these independent bases for pleading tortious intent, the Court need not resolve the scope of HIPAA's obligations to sustain Plaintiff's ECPA claim.

***Second***, even focusing on HIPAA, Tufts MC overstates *Becerra*'s significance. Tufts MC attempts to create the impression *Becerra* opened the door for any and all use of tracking technologies on healthcare provider websites, regardless of how the technologies are implemented, what communications they intercept, or businesses' disclosure to patients. *Becerra* is not so broad. *Becerra* did not vacate HIPPA's statutory provisions—which is what Plaintiff cites in invoking the crime-tort exception in her ECPA count (Plaintiff doesn't even reference the HHS Bulletin in her ECPA count). *See* ¶¶ 162-70. To the

[8] More precisely, the pleading of tortious intent is all that matters under the crime-tort exception under HIPAA; Tufts MC's arguments presented later in its brief on other elements of the claim do not necessarily affect Plaintiff's invocation of the crime-tort exception, so long as tortious **intent** is present. "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *R.S. v. Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338, at *12 (C.D. Cal. Jan. 13, 2025) (quotation omitted).

degree *Becerra*, beyond its holding vacating part of the HHS Bulletin, also construes HIPAA or the Privacy Rule, those constructions do not bind this Court or require this Court to ignore other contrary persuasive authority (discussed in this brief) construing HIPAA and the Privacy Rule more broadly.

As to the HHS Bulletin, *Becerra* didn't vacate it entirety. Instead, *Becerra* vacated only one part relating to a so-called "Proscribed Combination" of an "IP address" and a public webpage "addressing specific health conditions or healthcare providers." It held that those two pieces of information, **standing alone**, are not sufficient to establish a HIPAA violation. 2024 U.S. Dist. LEXIS 108847, at *6-7. Importantly, Plaintiff alleges that the interceptions disclosed more than the "Proscribed Combination."

HIPAA's express terms provide that it applies where "(1) the PHI relates to the individual's 'past, present, or future physical or mental health or condition,' their receipt of healthcare, and/or their payment for healthcare; and (2) the PHI 'identifies' the individual or could reasonably 'be used to identify' them." *Id.* at 36 (quoting 42 U.S.C. § 1320d(6)). As to the first prong, Plaintiff alleges more than pages regarding medical conditions. She also alleges Tufts MC disclosed her patient status to Google and Facebook by surreptitiously using tracking technologies on pages through which she obtained medical records. In a landmark decision against Facebook concerning Meta Pixel that construed HIPAA's statutory terms directly, the court held that "patient status is protected health information" under HIPAA, and therefore, intercepted webpage communications "which show[] patient-status constitute protected health information." *Meta Pixel Healthcare*, 647 F. Supp. 3d at 792. The court held further that interceptions through Meta Pixel showing that "a user is about to log in to a healthcare provider's website" reveal "patient status." *Id.* [9] Plaintiff's allegations here regarding the disclosure of her patient status satisfy the first prong.

---

[9] Tufts MC's own authorities confirm that public webpages reflecting patient status reveal private health information. *Nienaber v. Oberlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1081-82 (W.D. Wash. 2024) ("As other courts within this Circuit have acknowledged, the transmission of information submitted to a *private patient portal*—such as a user clicking on the 'log in' button on that webpage—reveals patient status, which in and of itself is protected health information."); *K.L. v. Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *11 (D. Or. Nov. 14, 2024) (affirming same rule); *see also Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1124 (S.D. Cal. 2023) ("navigating to…a healthcare provider's patient portal differs from…general internet browsing…because it conveys a user's patient status"). Public pages other than patient portal logins may similarly disclose patient status. *M.R. v. Salem Health Hosps. & Clinics*, 2024 U.S. Dist. LEXIS 155513, at *10-11, 16-17 (D. Or. Aug. 28, 2024) (interceptions disclosing "status as a patient" through "financial assistance form" supported HIPAA violation).

As to the second prong ("could reasonably be used to identify" the patient), Plaintiff does not rely solely on an IP address but also browser fingerprints (which alone can confirm identity with 99.24% accuracy) and persistent identifiers used by Facebook and Google, and how the combination of those identifiers permits Google and Facebook to affirmatively identify individuals. ¶¶ 33, 50, 57, 65, 71, 73-75 & n.5, 78-79, 127. That is the precise function of the tracking technologies' use of multiple forms of identifying information; the combination permits Google and Facebook to confirm identity with sufficient certainty to serve individualized advertising based on the known individual's intercepted communications. *See, e.g., Kurowski v. Rush Sys. For Health*, 2024 U.S. Dist. LEXIS 126837, at *17-19 (N.D. Ill. July 18, 2024) (disclosure of IP addresses, together with browser fingerprints, and other identifiers combined with substantive health information, including patient status, violates HIPAA).

Consistent with the limited reach of *Becerra*, courts find HIPAA violations without reference to the HHS Bulletin and its "Proscribed Combination"; indeed, very few ECPA cases even discuss *Becerra* after its issuance (Tufts MC does not cite any). For example, the court in *Kurowski,* although not discussing *Becerra* directly, "expressly declined to defer to [the HHS] bulletin," thus avoiding the defendant's argument that the Bulletin was issued after that plaintiff's communications on the website. 2024 U.S. Dist. LEXIS 126837, at *19. Even without considering the HHS Bulletin, the court found that the type of information intercepted (which, like here, went beyond the Proscribed Combination in that it included "status as a…patient" and identifiers other than IP address) violated HIPAA. *Id.* at *17-20.

Likewise, in *Gaige v. Exer Holdings Co., LLC*, 2025 U.S. Dist. LEXIS 17146 (C.D. Cal. Jan. 30, 2025), the court squarely considered *Becerra* and held it does **not** preclude invoking HIPAA under the ECPA's crime-tort exception, reasoning, similar to *Kurowski*, that "Plaintiff's claims are not premised on a violation of HHS guidance, but rather are based on violations of various statutes and common law…. Thus, the HHS guidance being vacated does not affect the merits of Plaintiff's allegations." *Id.* at *10. It also noted the plaintiff alleged identification not only via IP addresses but also "other specific user information that permitted identification," including the same identifiers as here. *Id.* at *11-12.

In short, *Becerra* effects no blanket rule that tracking technologies are now permissible under HIPAA. It certainly does not preclude Plaintiff's reliance on state law torts, which, as described below, provide broader protection than HIPAA.

b. Plaintiff Alleges Criminal and Tortious Purpose.

Tufts MC argues that Plaintiff fails to allege a criminal or tortious "motivation." Tufts MC blurs the lines on what precisely the ECPA requires. Tufts MC suggests a defendant must act with a specific intent or purpose to violate the law—lawbreaking for lawbreaking's sake. The ECPA requires no such thing. "A party does not have to say, in effect, 'I want to commit a crime,' or 'today is a great day to commit a tort.' The text points to the 'purpose of committing any criminal or tortious act.' …. The purpose must be to commit an act, and that act must be criminal or tortious." *Stein v. Edward-Elmhurst Health,* 2025 U.S. Dist. LEXIS 31273, at *14 (N.D. Ill. Feb. 21, 2025). Put another way, "the phrase 'for the purpose of' does not require that a party act with knowledge that its intended use of the intercepted communication is illegal," that is, a "heightened willfulness requirement"; instead, the ECPA simply requires the "*mens rea*…of the underlying torts or crimes." *Kurowski,* 2024 U.S. Dist. LEXIS 126837, at *12-13.[10] Here, that means Tufts MC must have "actively chose[n] to employ the tracking technology on certain pages of its website that were likely to contain" personal information. *Id.* at 14. Plaintiff readily meets that requirement—she alleges specifically how Tufts MC has the power to decide what tracking technologies it uses on its website and chose to implement them secretly. ¶¶ 54-57, 62-64.

The fact that Tufts MC also had a financial motive does not immunize it from liability. "Many crimes and torts are motivated by a desire to make money, and it 'defies common sense that a clearly harmful act could escape liability as long as it was done for profit.'" *Kurowski*, 2024 U.S. Dist. LEXIS

[10] *Brahm v. Hosp. Sisters Health Sys.,* 2024 U.S. Dist. LEXIS 114827, at *13-16 (W.D. Wis. June 28, 2024) (crime-tort exception satisfied where "plaintiff alleges that defendants intercepted patients' electronic communications *for the purpose* of making disclosures that violated HIPAA") (emphasis added); *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *14 ("intent to disclose [the] information" sufficient for exception); *A.J. v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480, at *3-4 (N.D. Cal. Oct. 25, 2024) (affirming ECPA claim based on purpose of disclosing communications in violation of HIPAA). Tufts MC cites several cases (MTD 6) that contain language that arguably blurs lines in similar ways to Tufts MC's motion, but those cases contain minimal analysis reflecting no clear intent from those courts to impose a heightened willfulness requirement. Similarly, language in certain cases suggesting a defendant must act with malice to inflict injury as an end in itself is likewise inconsistent with the relatively modest express terms of ECPA, which requires "criminal or tortious" purpose, not malice or psychopathy.

126837, at *16 (quoting *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 28 (D. Minn. 2024)). "[N]othing in [the ECPA] requires that a party act with the *sole*[11] purpose of committing the underlying crime or tort"; accordingly, secretly deploying tracking technologies to improve "profit margins…does not mean [the defendant] didn't also 'consciously desire' to make unauthorized disclosures" of patient communications. *Id.; Cooper v. Mt. Sinai Health Sys., Inc.*, 2024 U.S. Dist. LEXIS 134570, at *26 (S.D.N.Y. July 30, 2024) ("Mount Sinai's broad theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong.").[12]

Finally, Tufts MC is also wrong to argue that Plaintiff fails to allege a tortious or criminal purpose independent of the interception. Plaintiff alleges that Tufts MC injected the tracking technologies onto its website (the act giving rise to ECPA liability) for the purpose of disclosing the contents of the intercepted communication and facilitating their subsequent improper use by third parties, which violates HIPAA and statutory and common law torts. ¶¶ 6-7, 23, 125, 127, 156, 161, 177-79, 187-90, 207-10. The main cases Tufts MC cites for this argument (MTD 14) were against the party receiving the interception (Google), and in such cases, that receipt itself was the act that gave rise to criminal or tort liability; there was no allegation of disclosure to a third party other than the defendant. In contrast, situations, such as here, where a business (i) injects tracking technologies for (ii) the purpose of a tortious disclosure to third parties, the better-reasoned cases hold that tortious disclosure of the intercepted communications supports the crime-tort exception. *Jarrell*, 2025 U.S. Dist. LEXIS 6169, at *8-9 (a common law privacy claim "constitutes an independent tort…that…arises not from the mere *interception* of [communications] but from *disclosure* of that…material to third parties," and observing, "tortfeasors under the ECPA would

---

[11] Tufts MC's citation to cases involving a "sole motive" of "profit" (MTD 7) ignore that a profit motive can coincide with a criminal or tortious purpose. That is what Plaintiff alleges here—although she acknowledges Tufts MC's financial motives, she alleges that motive was part of a criminal and tortious purpose. To the degree cases hold that a party acting with a financial motive is exempt from the crime-tort exception, those authorities are not persuasive for the reasons set forth in the authorities cited in the accompanying text and preceding footnote—that crimes and torts are often committed for financial motives.

[12] *R.S.*, 2025 U.S. Dist. LEXIS 6338, at 18-19 ("The Court joins those courts that have held a monetary purpose does not insulate a party from liability under the ECPA."); *In re BetterHelp, Inc. Data Disclosures Cases*, 2024 U.S. Dist. LEXIS 124321, at *15 (N.D. Cal. July 15, 2024) ("trying to make money" consistent with criminal purpose relating to HIPAA); *Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197, at *18-19 (W.D. Wash. Nov. 14, 2024) (same); *R.C.,* 733 F. Supp. 3d at 901 ("[E]ven where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims").

enjoy a bizarre defense to liability as a reward for their efficiency"); *Gay v. Garnet Health*, 2024 U.S. Dist. LEXIS 168515, at *8 (S.D.N.Y. Sept. 16, 2024) (in carefully reasoned decision, holding "[t]he Complaint sufficiently alleges an independent action secondary to the interception," the "use[]" of "the content of [the] communications [to] Facebook [and] Google") (collecting and analyzing authorities).[13]

In short, Plaintiff's allegations of tortious purpose are sufficient.

2. Plaintiff Alleges the Interception of the Contents of Her Communications

Tufts MC argues Plaintiff alleges any interceptions did not reveal the "contents" of any communication because no "substance" of communications was revealed. MTD 9. This is a case-specific argument that depends on the facts alleged. Here, Plaintiff details in her complaint how Tufts MC configured its website to use descriptive URLs, which reveal the substance of the information a consumer requests and Tufts MC provides in response, and also to disclose webpage titles, which further reveal the substance of particular webpages. *See* §§ II-A, *supra.* Although Tufts MC attempts to create the impression that URLs can never disclose "contents," such a simplistic, "categorical assessment that [URLs] *never* 'concern[] the substance, purport, or meaning' of a communication misses the mark" because "[o]ften, a location identifier [i.e., a URL]…comprises part of a communication's substance." *In re Google Inc.*, 806 F.3d 125, 136 (3d Cir. 2015). Where descriptive URLs are used, "the categories of content and non-content [record information] overlap and are not mutually exclusive." *Doe v. Post Acute Med., LLC*, 2025 U.S. Dist. LEXIS 26667, at *13 (M.D. Pa. Feb. 14, 2025); *Meta Pixel Healthcare*, 647 F. Supp. 3d at 796 ("descriptive URLs" are "'contents'").[14] Plaintiff's allegations regarding decriptive URLs and webpage titles are sufficient on their own to satisfy the "contents" element.

[13] *See also R.S.*, 2025 U.S. Dist. LEXIS 6338, at *16 ("R.S. does not allege that Prime Healthcare's interception *itself* violated HIPAA…. Instead, R.S. asserts that the violation stems from Prime Healthcare's Intentional *disclosure* of the collected Private Information, which constitutes a 'further impropriety' independent and separate from Prime Healthcare's *interception*."). Plaintiff recognizes Tufts MC cites two cases construing an "independent act" requirement to dismiss claims against hospitals (MTD 8). Those cases do not grapple with allegations of disclosure and subsequent use that Plaintiff presents here, and, respectfully, distort the statutory language, which contains express requirement in the statute that the interceptions be simultaneously part of a tortious scheme but somehow also distinct from it—a standard that is practically unmeetable.

[14] *See also Castillo* 2024 U.S. Dist. LEXIS 207197, at *15 (URLs disclosing "underlying health conditions" count as "contents"); *M.G. v. Therapymatch*, 2024 U.S. Dist. LEXIS 166534, at *12 (N.D. Cal. Sept. 16, 2024) (same); *R.C.*, 733 F. Supp. 3d at 902 ("descriptive URLs" are contents); *Yoon v. Meta Platforms, Inc.*, 2024 U.S. Dist. LEXIS 234457, at *13-15 (N.D. Cal. Dec. 30, 2024) (same).

In any event, Plaintiff also alleges interceptions that revealed her patient status—in particular, her request for medical records and access to the patient portal. *See* §§ II-A, C & n.4. Intercepted communications that reveal patient status are also "contents" under the ECPA. *Meta Pixel Healthcare*, 647 F. Supp. 3d at 795-96 ("log-in buttons" count as "contents" because they reveal patient status); *M.G.*, 2024 U.S. Dist. LEXIS 166534, at *12 ("log-in buttons" revealing patient status are "contents"); *Castillo,* 2024 U.S. Dist. LEXIS 207197, at *15 (URLs revealing "patient status" are "contents").

B. *Becerra Is Irrelevant to Plaintiff's Massachusetts Claims*

Tufts MC argues that "[a]ll of Plaintiff's claims rest on the fundamentally flawed assumption that the information allegedly disclosed to third parties is protected health information under HIPAA." MTD 3. This is simply not so. Plaintiff's claims for negligence and breach of confidence reference HIPAA only as **one of several** bases for a duty underlying those claims. ¶¶ 197, 203. The scope of HIPAA is, therefore, not dispositive of those claims. Plaintiff's other claims do not reference HIPAA and in no way hinge upon its violation; indeed, as explained below, Massachusetts courts define the contours of those claims without reference to HIPAA. Tufts MC cites **no** authority holding that any Massachusetts claim must be limited to HIPAA violations. *Becerra* has no role in resolving the scope of Massachusetts law. *Doe v. Partners Healthcare Sys.*, No. 1984CV01651-BLS1 (Mass. Super. Ct. Nov. 20, 2020) at 39 (motion to dismiss decision and transcript attached as **Exhibit 2**) (Judge Davis, construing Massachusetts law: "I agree with you that I think HIPAA is a bit of a red herring in this proceeding and in these arguments…. I'm not persuaded that HIPAA really has much of a role to play in the analysis that I have to undertake.").[15]

C. *Plaintiff States a Claim under the MRPA*

The MRPA, M.G.L. c. 214 § 1B, codifies and broadens certain common law privacy torts. *See Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 409 Mass. 514, 519 (1991) (describing how "the Legislature appears to have framed the statute in broad terms so that the courts can develop the law

---

[15] Plaintiff's occasional use of the defined term "Private Information" as a shorthand to summarize the types of communications intercepted did not tie each claim to HIPAA, as reflected in the claims for which invoke HIPAA non-exclusively as one of several sources of obligation (including the ECPA, negligence, and breach of confidence).

thereunder on a case-by-case basis"). Plaintiff makes clear in her complaint that she invokes two alternative theories of tort liability under the MRPA—(i) intrusion upon seclusion and (ii) public disclosure of private facts, ¶¶ 175-79, two torts well-known at common law that the Massachusetts Supreme Judicial Court ("SJC") has expressly held are incorporated within the MRPA's "broad" terms, *Polay v. McMahon*, 468 Mass. 379, 382-84 (2014).

Applying these alternative tort theories, four Massachusetts Superior Court justices and one federal judge have each concluded that the surreptitious use of tracking technologies states a claim for violation of the MRPA. *Doe v. Emerson Hosp.*, 2023 Mass. Super. LEXIS 673, at *11-12 (Super. Ct. Nov. 22, 2023); *Doe v. Bos. Med. Ctr. Corp.*, 2023 Mass. Super. LEXIS 674, at *11-12 (Super. Ct. Sep. 14, 2023); *Alves v. BJ's Wholesale Club, Inc.*, 2023 Mass. Super. LEXIS 59, at *13-17 (Super. Ct. June 21, 2023); *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 152 (D. Mass. 2024); *Partners Healthcare*, Ex. B at 44 (plaintiff "states a viable claim for invasion of the right of privacy" under MRPA based on same allegations as those here). The SJC has also "emphasize[d]" in a case similar to this one "that the Legislature has provided…statutory and common-law protections…directly applicable to misrepresentations or misuse of private medical information" that are likely "cognizable" under the facts alleged here, including the MRPA. *Vita v. New England Baptist Hosp.*, 494 Mass. 824, 849-50 (2024). **<u>There is no contrary authority</u>**. Tufts MC strangely avoids these decisions, citing instead Massachusetts decisions that bear no similarity to the type of electronic eavesdropping present here.

1. <u>Plaintiff's Allegations Regarding Her Own Communications Are Sufficient.</u>

Tufts MC cursorily argues (MTD 10) the Complaint is "devoid of any factual allegations regarding what information of the Plaintiff's was allegedly disclosed"—an argument it makes only as to Plaintiff's MRPA claim. Plaintiff, however, specifically alleges that her communications regarding particular doctors and medical procedures and her requests for medical records (which revealed her status as a Tufts MC patient) were disclosed, and she explains through examples what aspects of those communications the tracking technologies intercepted and disclosed. ¶¶ 12-13, 82-87, 94-99, 100-02.

If Tufts MC means to argue that Plaintiff must, to be a plaintiff, disclose in her complaint her precise medical conditions and procedures she has obtained, that is wrong. *In re Meta Pixel Tax Filing Cases*., 724 F. Supp. 3d 987, 1004 (N.D. Cal. 2024) ("Plaintiffs do not need to plead the specific and presumably highly sensitive contents of the communications they say were intercepted in order to plausibly allege that interception occurred"); *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12 (rejecting similar argument that complaint "reveals little about the information that Plaintiff entered on its website" in connection with MRPA claim) (citing *Bos. Med. Ctr.*, 2023 Mass. Super. LEXIS 674). Plaintiff provides sufficient detail to provide Tufts MC notice of the claims against it.[16]

2. Plaintiff Adequately Alleges Intrusion upon Seclusion.

As to intrusion upon seclusion, Tufts MC disregards controlling precedent. The SJC has confirmed that allegations of "electronic surveillance" state an MRPA claim; whether such surveillance violates the statute "presents a question of fact." *Polay*, 468 Mass. at 382-84 (2014).

Ignoring on-point Massachusetts authority, Tufts MC relies upon out-of-state cases construing the common law tort for intrusion upon seclusion. Tufts MC's principal argument is that "public browsing data" is beyond the MRPA's scope. There is no such black-and-white rule even under the common law,[17] but even if there were, the MRPA is broader and applies even where "an individual's conduct is observable by the public" if the "electronic surveillance" is contrary to an individual's "reasonable expectation of privacy." *Id.* at 384. Every Massachusetts court to apply *Polay* to website tracking technologies has found that *Polay* supports a claim on the same facts alleged here. *Bos. Med. Ctr.*,

[16] If the Court believes Plaintiff should disclose more now, rather than in discovery, Plaintiff would consider amending to provide whatever further detail the Court requires. This is not a question of Plaintiff's ability to plead facts but instead a matter of weighing Plaintiff's privacy against the need to give Tufts MC sufficient notice under Rule 8 of the claims against it.

[17] *See, e.g., M.R.*, 2024 U.S. Dist. LEXIS 155513, at *16-17 (affirming intrusion claim based on tracking technologies used on public parts of healthcare provider website); *Doe v. Bon Secours Mercy Health*, 2021 Ohio Misc. LEXIS 3985, at *12 (Ct. Com. Pl. Nov. 22, 2021) (same); L*amarr v. Goshen Health Sys., Inc.*, 2024 Ind. Super. LEXIS 107, at *16-17 (Super. Ct. Oct. 3, 2024) (same). The cases Tufts MC cites dismissing claims for intrusion upon seclusion have limited relevance given, as noted in the accompanying text, Massachusetts courts have construed the MRPA to be broader than the common law, as confirmed further by comparing the language of the cases Tufts MC cites to the MRPA itself. *Compare* M.G.L. c. 214 § 1B ("unreasonable, substantial or serious interference with…privacy"); *against* Tufts MC MTD at 10-11 (collecting cases applying "highly offensive" and "egregious breach of social norms" standards) (citations omitted).

2023 Mass. Super. LEXIS 674, at *11-12; *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12; *Alves*, 2023 Mass. Super. LEXIS 59, at *13-17.

Tufts MC also ignores an additional critical aspect of the allegations here—Tufts MC's promises that consumers could visit the website "anonymously," that Tufts does "not collect any identifiable information," and that Tufts "will never sell or rent any identifiable information to third party vendors." ¶¶ 26-28. Such false promises reinforce Plaintiff's claims for intrusion upon seclusion and distinguish this case from those Tufts MC cites (MTD 10-11) that did involve such false promises. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (affirming intrusion upon seclusion claim where "tracking" contradicted "privacy disclosures"); *Google*, 806 F.3d at 150-52 (reversing dismissal of intrusion upon seclusion claim where Google's practices contradicted its own disclosures).[18]

3. Plaintiff Adequately Alleges Disclosure of Private Facts.

As to Plaintiff's claim for public disclosure of private facts (¶¶ 175-78), Tufts MC presents no argument at all other than strangely and incorrectly arguing that intrusion upon seclusion and disclosure of private facts are the same tort.[19] As to this tort, the MRPA is broader than the common law as some states construe the claim because it does not require broad publication; the SJC has held that "publication" even among a limited group of employees within a firm is enough, confirming the MRPA "depart[s]…from the Restatement's concept of the tort" in this respect. *Bratt v. Int'l Bus. Machines Corp.*, 392 Mass. 508, 519 & n.15 (1984); *Tower v. Hitschhorn*, 397 Mass. 581, 586 (1986) ("[T]he success of [an MRPA claim] is not dependent on communication of the personal matters disclosed to the public at large."). Here, the fact that consumers' sensitive communications with healthcare providers, about which

[18] *See also Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 864-65 (C.D. Cal. 2024) (allegations that tracking technologies implemented "surreptitiously" supports finding of invasion of privacy); *Meta Pixel Healthcare*, 647 F. Supp. 3d at 799-800 (defendant's violation of own "policies…tend[s] to support" a "fairly strong" intrusion claim); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1076 (N.D. Cal. 2021) (intrusion claim appropriate where company's "privacy disclosures at the time allegedly failed to acknowledge [the] tracking …[and] suggest[ed] that users' information would not be tracked"); *Doe v. Medstar Health, Inc.*, 2020 Md. Cir. Ct. LEXIS 139, *6 (Cir. Ct. Aug. 5, 2020) (affirming claim where tracking technologies contradicted "express promises of privacy to patients").

[19] Tufts MC's argument that both torts have the same elements (MTD 10) is not supported by the authority it cites and is contracted by SJC in *Polay*, which confirms the two torts provide distinct theories of liability to support an MRPA claim. 468 Mass. at 382.

they had a reasonable expectation of privacy, were shared with various third-party technology companies that then permitted numerous third-party advertisers to use the intercepted communications for purposes of individualized advertising, comfortably fits within the tort under the MRPA as construed in *Bratt*. *See also Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12 (affirming MRPA claim based on tracking technologies' disclosure of private facts); *Tenet Healthcare*, 731 F. Supp. at 151-52 (same).[20]

Finally, to repeat (*see* § III-B, *supra*), no case holds or even suggests the MRPA provides a claim only if there is a HIPAA violation (or violation of the HHS Bulletin). In fact, *Alves* affirmed such a claim against an ordinary retailer not involved in healthcare (BJ's Wholesale Club), underscoring that the MRPA applies broadly to surreptitious interceptions of communications, particularly where such interceptions are contrary to a company's promises made in its privacy policy. 2023 Mass. Super. LEXIS 59, at *13-17.

D. *Plaintiff States a Claim for Breach of Fiduciary Duty*

Tufts MC's only argument regarding Plaintiff's claim for breach of fiduciary duty is that a patient's interaction on the Tufts MC Website does not sufficiently relate to any fiduciary duty Tufts MC owes to patients. Tufts MC cites **no** factually pertinent authority on this argument. Its primary authority on this issue—*Korper v. Weinstein*, 57 Mass. App. Ct 433 (App. Ct. 2003) is distant from the facts here; the conduct giving rise to purported liability—a patient-physician affair—had no logical connection to the fiduciary relationship. That is not so here, given that the website is designed for use by patients as patients. ¶¶ 18-20. In *Emerson*, the court, applying Massachusetts law, rejected the precise argument Tufts MC makes here—that patient communications on a hospital's website are not sufficiently related to the fiduciary doctor/patient relationship. *Emerson*, 2023 Mass. Super. LEXIS 673, at *5-7. Every other Massachusetts court to have considered a fiduciary duty claim based on the same allegations here (surreptitious use of tracking technologies) and persuasive authority from other jurisdictions has affirmed such a claim.[21]

[20] Even under the more stringent common law rule, courts affirm such claims on similar facts. *Brahm*, 2024 U.S. Dist. LEXIS 114827, at *19-21 (affirming disclosure of private facts claim based on secret use of tracking technologies); *Medstar*, 2020 Md. Cir. Ct. LEXIS 139, at *6 (same); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *17-18 (same); *R.C.*, 733 F. Supp. 3d at 888-95 .

[21] *Tenet Healthcare*, 731 F. Supp. 3d at 149-50; *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *10-12; *Partners Healthcare* (margin order, attached as Ex. B) (affirming breach of fiduciary duty claim); *Vita*, 494 Mass. at 849-50 (fiduciary duty claim "cognizable" for

E. *Plaintiff States a Claim for Breach of Confidence*

Tufts MC's only arguments on Plaintiff's claim for breach of confidence is that it is "unaware of any Massachusetts court" recognizing such a claim and that the claim duplicates her breach of fiduciary duty claim. The SJC has held that "a duty of confidentiality arises from the physician-patient relationship, and that a violation of that duty resulting in damages, gives rise to a cause of action sounding in tort." *Alberts v. Devine*, 395 Mass. 59, 68-69 (1985). Although the SJC described its holding as arising in part from the "fiduciary obligation to hold in trust confidential information," *id.,* the SJC announced a new cause of action, drawing upon several sources, rather than merely purporting to construe existing tort law of breach of fiduciary duty. Plaintiff's allegations support a claim under this rule.[22]

In any event, even if the Court did determine that *Alberts* is merely an application of a claim for breach of fiduciary duty, then *Alberts* further reinforces that Plaintiff states a claim under that tort.

F. *Plaintiff States a Claim for Negligence*

On Plaintiff's negligence claims, Tufts MC ignores the most on-point authority affirming the same claim on substantively the same facts. *Tenet Healthcare*, 731 F. Supp. 3d at 149 (affirming negligence claim for undisclosed use of tracking technologies under Massachusetts law); *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *9 (same); *see also Vita*, 494 Mass. at 849-50 (negligence claim "cognizable" based on undisclosed use of tracking technologies). In any event, its arguments each lack merit.

***Plaintiff Alleges Several Bases for a Duty.*** Plaintiff's allegation correctly states that the contours of the duty Tufts MC owes to healthcare consumers may be informed by statute. Massachusetts courts consider duties imposed by statute, particularly in areas of negligence law in which standards are continuing to develop, even if statutes impose no "per se" liability. *Bennett v. Eagle Brook County Store, Inc.*,

secret use of tracking technologies). For cases affirming such claims under other states' law, *see. e.g, Brahm*, 2024 U.S. Dist. LEXIS 114827, at *17-19 (fiduciary duty breached by eavesdropping through tracking technologies); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *22-24 (same); *Coooper*, 2024 U.S. Dist. LEXIS 134570, at *31-34 (same).

[22] *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *10-12 (affirming breach of confidence claim under Massachusetts law in addition to breach of fiduciary duty claim); *Cooper*, 2024 U.S. Dist. LEXIS 134750, at *32-33 (rejecting argument for dismissal that breach of physician-patient confidentiality claim is necessarily duplicative of breach of fiduciary duty and other common law claims).

408 Mass. 355, 358-59 (1990) (even though "violation of a statute does not by itself establish breach of duty," it does provide "some evidence of the defendant's negligence") (quotations omitted).[23] Statutory obligations may be considered alongside ethical standards (such as those alleged here) to inform the scope of duty. ¶ 196 (AMA ethical rules); *Garcia v. Columbia Med. Ctr.*, 996 F. Supp. 617, 627 (E.D. Tex. 1998) (holding "ethical duties [relating to] the accepted standards of medical care which a reasonable health care provider would follow…relevant to Plaintiffs' negligence and gross negligence claims.").[24]

***Plaintiff Alleges a Breach of Duty.*** Tufts MC's only argument on breach of duty assumes Plaintiff's negligence claim depends upon a HIPAA violation. Plaintiff **does** allege a HIPAA violation (§ III-1-A, *supra*), but in any event, Plaintiff also cites several additional statutory and other sources that may inform the contours of a duty for a negligence claim (including state medical privacy law, *see* ¶ 197). There is no basis to hold Massachusetts negligence law should be limited to HIPAA violations (§ III-B, *supra*), particularly given that Tufts MC disavows HIPAA as a source to define duty.

G. *Plaintiff Sufficiently Alleges Damages on Her Breach of Fiduciary Duty and Negligence Claims.*

Tufts MC's argument that Plaintiff fails to allege damages (an argument it makes **only** as to Plaintiff's claims for breach of fiduciary duty and negligence, apparently given other forms of relief available for other claims[25]) ignores Plaintiff's detailed allegations and is inconsistent with Massachusetts law. Tufts MC's argument depends on its pretending Plaintiff's summary of damages (¶ 143) are her only relevant allegations, ignoring detailed allegations regarding the significant economic value the intercepted communications have to consumers, Tufts MC, and the third-party eavesdroppers and advertisers that

---

[23] *See also Lamarr*, 2024 Ind. Super. LEXIS 107, at *11-12 (statutory duties under FTC Act and HIPAA can "inform" scope of duty at common law even without negligence *per se*). Tufts MC's authorities are not to the contrary. *Roe No. 1 vs. Children's Hosp. Med. Ctr.*, 469 Mass. 710 (2014), and *Juliano v. Simpson,* 461 Mass. 527 (2012), like *Bennett*, reflect a rule against *per se* liability but confirm statutes are "relevant" to defining the scope of duties that may be vindicated through a claim for negligence. *Spencer v. Roche*, 755 F. Supp. 2d 250 (D. Mass. 2010) appears to involve an attempt to assert a claim directly under HIPAA, rather than using HIPAA as a source to inform a duty for a negligence claim.

[24] Tufts MC's argument that Plaintiff's negligence claim is duplicative of her breach of fiduciary claim ignores that Plaintiff asserts several sources that are relevant to defining the scope of duty actionable in a negligence claim, in contrast to the decisions Tufts MC cites (MTD 13-14), which principally involve professional negligence claims where the sole basis for duty in negligence was the relationship that gave rise to a professional malpractice claim.

[25] *See Bos. Med. Ctr.*, 2023 Mass. Super. LEXIS 674, at *11-12 (actual damages not required element of MRPA claim).

monetize those intercepted communications.[26] That Plaintiff has not yet quantified damages or presented expert testimony on value does not matter. *Lee v. Conagra Brands, Inc.,* 958 F.3d 70, 80-81 (1st Cir. 2020) (plausible, even if general, allegations of benefit-of-the-bargain damages at pleadings stage sufficient). Courts considering similar allegations have affirmed the sufficiency of such allegations. *Emerson*, 2023 Mass. Super. LEXIS 673, *5 (allegations that "private medical information was disclosed to Facebook" and defendant "and Facebook monetized [plaintiff's] personal health information without compensating him" are sufficient at the pleading stage for the same Massachusetts claims as Plaintiff brings here).[27]

H. *Plaintiff States a Claim for Breach of Contract.*

Tufts MC's argument on breach of contract entirely ignores its own privacy policy, through which it deceived consumers about its disclosure of communications to third parties. Notably, in response to the original complaint in this case, Tufts MC argued that those same privacy policies were a legally sufficient disclosure of its practices, and Plaintiff was sufficiently on notice to be bound by them—a judicial admission incompatible with its current "assent" argument.[28] Plaintiff's claims are not based on "mere belief or hope" but on Tufts MC's own statements, in addition to reasonable expectations of privacy given the nature of the information. The **<u>only</u>** Massachusetts authorities to have considered the same claims Plaintiff asserts here on substantively identical facts have affirmed such claims. *Emerson*, 2023

[26] ¶¶ 21-24, 30 (describing value of privacy to consumers); ¶¶ 28, 167, 170 (describing "valuable services" Tufts MC obtained in exchange for permitting Google and Facebook to eavesdrop on patient communications, resulting in increased revenue for Tufts MC); ¶ 34-35 (describing how Meta Pixel contributes to building of individual profiles from which "Facebook derives most of its revenue"); ¶¶ 40-42 (Google Analytics key part of building "detailed profiles on individuals" from which "Google derives a substantial portion of its revenue"); ¶¶ 73, 84- 86, 89-91, 93, 95, 98-99, 101-02 (describing precisely how Google and Facebook extracted commercial value from the information intercepted through the tracking technologies).

[27] *See also Meta Pixel Healthcare*, 2024 U.S. Dist. LEXIS 15391, at *12 (the allegation, even without quantification or expert testimony, that "Meta unjustly profited from the data taken," is sufficient); *Meta Pixel Tax Filing*, 724 F. Supp. 3d at 1019-21 (allegations of "loss of privacy," "diminution in value," and "loss of the benefit of [the] bargain" are sufficient even if not quantified; "[i]f a user shares information with the expectation that it will be protected but the recipient does not actually protect it, then the user has surrendered in that transaction more than she otherwise would have"); *Gay*, 2024 U.S. Dist. LEXIS 168515, at *17-18 (affirming damages allegations similar to those here); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *7-8 (affirming damages allegations for secret use of tracking technologies based on property rights in personal data and corresponding value).

[28] Plaintiff's status as a patient is likely significant on the assent element. Although it is not possible without discovery to confirm whether Tufts MC required Plaintiff to assent to the relevant policies as part of the patient portal sign-up process (because the signup process is not archived on the Wayback Machine), such clickwrap agreements are very common, and discovery will likely show that all parties assented to the privacy policy. No doubt, had the policy contained an arbitration agreement, Tufts MC would be touting the policy as an enforceable agreement.

Mass. Super. LEXIS 673, at *8-9; *Tenet Healthcare*, 731 F. Supp. 3d at 149-50; *see also Vita*, 494 Mass. at 849-50 (implied contract claim "cognizable" based on undisclosed use of tracking technologies).[29]

I. *Plaintiff States a Claim for Unjust Enrichment*

Tufts MC's sole argument on Plaintiff's unjust enrichment claim is Plaintiff's supposed failure to allege reasonable expectations of the parties regarding compensation for the benefit Plaintiff conferred upon Tufts MC. Plaintiff does, in fact, make the precise allegations Tufts MC says are missing, *see* ¶¶ 226-27, and, notably, the several decisions to consider unjust enrichment claims under Massachusetts law relating to the undisclosed use of tracking technologies have affirmed such claims, rejecting the same arguments made here. *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *9-14 (affirming unjust enrichment claim under Massachusetts law, rejecting same argument); *Emerson*, 2023 Mass. Super. LEXIS 673, at *9-11 (rejecting same argument); *Tenet Healthcare*, 731 F. Supp. 3d 142 150-51; *see also Vita*, 494 Mass. at 849-50 (unjust enrichment claim "cognizable" based on undisclosed use of tracking technologies).[30]

## IV. CONCLUSION

The Court should deny Tufts MC's motion to dismiss.

[29] Well-reasoned authorities from other jurisdictions are in accord, particularly where a published privacy policy includes false promises of non-disclosure. *Lamarr*, 2024 Ind. Super. LEXIS 107, at *16-17 (affirming implied contract claim based in part on "failure [of hospital] to comply with [its] privacy policy"); *Bon Secours*, 2021 Ohio Misc. LEXIS 3985, at *13-14; *Elkin s v. Bartholomew Cnty. Pub. Hosp.*, 2024 Ind. Super. LEXIS 340, at *7-8 (Super. Ct. Dec. 16, 2024).

[30] Other states applying similar unjust enrichment cases are in accord. *Brahm*, 2024 U.S. Dist. LEXIS 114827, at *21-23; *Jarrell*, 2025 U.S. Dist. LEXIS 6169, at *21-22 (affirming claim based on allegations that intercepted communications "had cognizable value to Plaintiff, and [a healthcare provider] unjustly reaped that value by disclosing it, without authorization"); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *21-22 (same). A requirement that Plaintiff subjectively expected compensation at the time of her communications makes no sense given her allegations. "Plaintiff did not expect monetary compensation for their data *precisely* because they assumed that the data would not be shared with any third parties. This maintenance of data privacy was a part of the services that Plaintiffs allege that they paid [the provider] for and a claim for unjust enrichment could appropriately be pursued under these allegations." *Elkins*, 2024 Ind. Super. LEXIS 340, at *10.

Dated: March 7, 2025

Respectfully submitted,

*/s/ Patrick J. Vallely*

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: March 7, 2025

*/s/ Patrick J. Vallely*
Patrick J. Vallely