**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KAREN MCMANUS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TUFTS MEDICAL CENTER, INC.,<br><br>Defendant. | Case No.: 1:25-cv-10008<br><br>**Leave to File Granted on January 31, 2025** |

**DEFENDANT TUFTS MEDICAL CENTER, INC.'S**
**<u>REPLY IN SUPPORT OF ITS MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................... 1

II. ARGUMENT ........................................................................................... 1

A. Plaintiff Does Not Plausibly Allege That Tufts MC Intended To Commit A Crime Or Tort ........................................................................... 1

B. Plaintiff Does Not Plausibly Allege The Interception Of "Contents" ..................... 9

C. Plaintiff Fails To State A Claim Under The Massachusetts Right To Privacy Act ............................................................................ 11

D. Plaintiff's Breach Of Fiduciary Duty And Breach Of Confidence Claims Should Be Dismissed ............................................................. 15

E. Plaintiff's Negligence Claim Should Be Dismissed ........................................ 16

F. Plaintiff's Breach Of Contract Claim Should Be Dismissed ............................... 17

G. Plaintiff's Unjust Enrichment Claim Should Be Dismissed ................................ 17

III. CONCLUSION ......................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberts v. Devine*,
95 Mass. 59 (Mass 1985) .......... 16

*Alves v. BJ's Wholesale Club*,
No. 22-2509-BLS1, 2023 WL 4456956 (Mass. Super. June 21, 2023) .......... 14

*Analog Techs., Inc. v. Analog Devices, Inc.*,
105 F.4th 13 (1st Cir. 2024) .......... 8

*B.K. v. Eisenhower Medical Center*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 7, 14, 16, 18

*Bates v. State Bar of Az.*,
433 U.S. 350 (1977) .......... 5

*Bigelow v. Virginia*,
421 U.S. 809 (1975) .......... 5

*Boddie v. Am. Broad. Cos., Inc.*,
731 F.2d 333 (6th Cir. 1984) .......... 4

*By-Prod Corp. v. Armen-Berry Co.*,
668 F.2d 956 (7th Cir. 1982) .......... 2

*Caro v. Weintraub*,
618 F.3d 94 (2nd Cir. 2010) .......... 3

*Cohen v. Casper Sleep Inc.*,
No. 17-CV-9325, 2018 WL 3392877 (S.D.N.Y. Jul. 12, 2018) .......... 6

*Commonwealth v. McCue*,
67 Mass. App. Ct. 1113 (2006) .......... 13

*Commonwealth v. Welch*,
487 Mass. 425 (2021) .......... 13

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) .......... 11

*Cousin v. Sharp Healthcare*,
681 F. Supp 3d. 1117 (S.D. Cal. 2023) .......... 14

*Desnick v. Am. Broad. Cos., Inc.*,
44 F.3d 1345 (7th Cir. 1995) ..........2, 5

*Doe I v. Google, LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ..........7

*Doe, et al. v. Adventist Health Care Network*,
No. 22STCV36304 (Cal. Super. Ct. Feb. 14, 2025) ..........7

*Doe v. Amgen Inc.*,
No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024)..........7

*Doe v. Boston Medical Center Corp.*,
No. 2384CV00326-BLS-1, 2023 WL 7105628 (Mass. Super. Sep. 14, 2023) ..........13

*Doe v. Emerson Hospital*,
No. 2277CV01000, 2023 WL 8869624 (Mass Super. Nov. 22, 2023)..........13, 16, 17

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ..........7

*Doe v. Post Acute Med., LLC*,
No. 1:24-CV-547, 2025 WL 511069 (M.D. Pa. Feb. 14, 2025) ..........18

*Doe v. Tenet Healthcare Corporation*,
731 F. Supp. 3d 142 (D. Mass. 2024) ..........12, 13, 16, 17

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)..........5, 6, 7

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..........10

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015)..........3

*Helvering v. Gregory*,
69 F.2d 809 (2d Cir. 1934), *aff'd*, 293 U.S. 465 (1935) ..........3

*In re High Fructose Corn Syrup Antitrust Litig.*,
216 F.3d 621 (7th Cir. 2000) ..........3

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ..........10

*Jarrell v. Adena Health Sys.*,
No. 2:24-CV-00282, 2025 WL 81305 (S.D. Ohio Jan. 13, 2025)..........8

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................................................................6

*Katz-Lacabe v. Oracle America, Inc.*
No. 22-CV-04792-RS, 2024 WL 1471299 (N.D. Cal. Apr. 3, 2024)......................................6

*Kurowski v. Rush Sys. for Health*,
No. 22-CV-5380, 2024 WL 3455020 (N.D. Ill. July 18, 2024)...............................................2

*Leocal v. Ashcroft*,
543 U.S. 1 (2004)...............................................................................................................9

*Lucas v. Fox News Network, LLC*,
248 F.3d 1180 (11th Cir. 2001) ...........................................................................................4

*Med. Lab. Mang't Consultants v. Am. Broad. Cos., Inc.*,
30 F. Supp. 2d 1182 (D. Az. 1998)........................................................................................5

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024)....................................................................................8

*Meredith v. Gavin*,
446 F.2d 794 (8th Cir. 1971) ...............................................................................................4

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ...................................................................................8

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)..........................................................................18

*Nienaber v. Overlake Hospital Medical Ctr.*,
No. 2:23-CV-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025).............................6, 8

*Payne v. Norwest Corp.*,
911 F. Supp. 1299 (D. Mt. 1995)..........................................................................................4

*Planned Parenthood Fed. of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ..........................................................................................4, 7

*Polay v. McMahon*,
468 Mass 379 (2014) .........................................................................................................11

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d. 876 (C.D. Cal 2024) ..............................................................................8, 15

*R.S. v. Prime Healthcare Servs., Inc.*,
No. 5:24-CV-00330-ODW (SPX), 2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ......................5

*Rodriguez v. Fastmed Urgent Care, P.C.*,
741 F. Supp. 3d 352 (E.D.N.C. 2024)....7

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)....5

*Stein v. Edward-Elmhurst Health*,
No. 23-CV-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025)....2

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999)....3, 4

*Thomas v. Pearl*,
998 F.2d 447 (7th Cir. 1993)....2

*United States v. Councilman*,
418 F.3d 67 (1st Cir. 2005)....9

*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014)....2, 6

*United States v. Vest*,
639 F. Supp. 899 (D. Mass. 1986)....2

*Va. State Bd. of Pharm. v. Va. Citizens Cons. Council, Inc.*,
425 U.S. 748 (1976)....5

*Vita v. New England Baptist Hosp.*,
494 Mass. 824 (2024)....14, 18

*Williams v. TMC Health*,
No. 23-CV-434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024)....6

*Willitts v. Engie N. Am. Inc.*,
No. 20-CV-11255-ADB, 2021 WL 2322833 (D. Mass. June 7, 2021)....16

**Statutes**

18 U.S.C. § 2511....9

## I. INTRODUCTION

Plaintiff's Opposition demonstrates how Plaintiff seeks to greatly expand the scope of the Electronic Communications Privacy Act ("ECPA") beyond the plain language of the statute and criminalize conduct that regularly occurs on the Internet. Plaintiff argues for this Court to adopt an expansive interpretation of the crime-tort exception that would eliminate the requirement that a party act with an intended purpose to commit a crime or tort at the time of the interception that is independent of the interception. Plaintiff's argument is contrary to the statutory text and decisions within this Circuit and would result in the crime-tort exception swallowing the one-party consent rule. It should be rejected and Plaintiff's ECPA claim should be dismissed.

Plaintiff's argument that her personal health information, including her patient status, has been disclosed without her consent is also not supported by the actual allegations in her Amended Complaint. The lack of such allegations are fatal to her tort and contract claims. As addressed further below, Plaintiff's Amended Complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. Plaintiff Does Not Plausibly Allege That Tufts MC Intended To Commit A Crime Or Tort

Plaintiff does not dispute that unless the crime-tort exception applies, her ECPA claim against Tufts Medical Center ("Tufts MC") fails as a matter of law and must be dismissed. Plaintiff argues that she need not allege facts that Tufts MC acted with an intentional purpose to commit a crime or tort. Opp. at 9. She contends that the mere fact that Tufts MC deployed and used third-party analytics on its public website, which she claims resulted in a purported HIPAA violation and an invasion of Plaintiff's privacy is sufficient to invoke the crime-tort exception. *Id*. Plaintiff's argument is not supported by either the plain language of the statute or decisions within this Circuit.

As this Court has held, to trigger ECPA's crime-tort exception Plaintiff must allege either "(1) that the *primary motivation*, or (2) that a *determinative factor* in the *actor's motivation* for intercepting the conversation was to commit a criminal, tortious, or other injurious act." *United States v. Vest*, 639 F. Supp. 899, 904 (D. Mass. 1986) (emphasis added). This Court has also held that the crime-tort exception is "to be construed narrowly," and the finding of an "[a]n impermissible purpose" has been "confined to situations where the recording party intended to harm the recorded party, either through blackmail, threats or public embarrassment." *United States v. McHugh*, 57 F. Supp. 3d 95, 100 (D. Mass. 2014) (citations omitted).

Ignoring these decisions, Plaintiff primarily relies on two decisions from the U.S. District Court for the Northern District of Illinois in support of its argument that the only purpose required under the statute must be to commit an act alone, and the purpose for taking the act is irrelevant, so long as the act itself is purposeful. Opp. at 9 (quoting *Stein v. Edward-Elmhurst Health*, No. 23-CV-14515, 2025 WL 580556, at *5–6 (N.D. Ill. Feb. 21, 2025) and *Kurowski v. Rush Sys. for Health*, No. 22-CV-5380, 2024 WL 3455020, at *4 (N.D. Ill. July 18, 2024)). The analysis in the *Stein* and *Kurowski* decisions, however, is contrary to Seventh Circuit precedent as well as decisions within this Circuit, which require an actual criminal or tortious purpose for the exception to apply—initially described by the appellate court as an "intent to harm." *See By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 960 (7th Cir. 1982) ("We think it is the use of the interception ***with intent to harm*** rather than the fact of interception that is critical to liability, and there was no use of the interception here.") (emphasis added); *Thomas v. Pearl*, 998 F.2d 447, 451 (7th Cir. 1993) (interpreting exception, holding "[t]his means Thomas must show that Pearl either intended to break the law or commit a tort against him in order to prove a violation of the federal statute"); *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995) (refusing to apply the

exception where "[t]he defendants did not order the camera-armed testers into the Desnick Eye Center *in order to commit a crime or a tort*") (emphasis added); *In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 624 (7th Cir. 2000) ("Some states prohibit a person from recording his telephonic or other conversations without the other person's consent, but Title III does not, *unless the person both is not acting under color of state law* ***and has a criminal or tortious purpose***.") (Posner, J.) (emphasis added).

As a textual matter, Plaintiff's proposed interpretation of the statutory text is also incorrect. As the Second Circuit held: "Congress chose the word 'purpose' for a reason." *Caro v. Weintraub*, 618 F.3d 94, 100 (2nd Cir. 2010). "Therefore, the offender must have as her objective a tortious or criminal result." *Id.* "Had Congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications *resulting in* a tortious or criminal act." *Id.* (emphasis in original). "But Congress limited the cause of action to instances where one party to the conversation *deliberately seeks to harm* the other participant through the information intercepted." *Id.* (emphasis added); *compare Helvering v. Gregory*, 69 F.2d 809, 810–11 (2d Cir. 1934) (L. Hand, J.), *aff'd*, 293 U.S. 465 (1935) ("the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes").

The uniform law, from the outset of cases analyzing the exception, is consistent with Tufts MC's position and contrary to Plaintiff's argument. *See, e.g., Caro*, 618 F.3d at 99–100 (2d Cir. 2010); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) ("all authority of which we are aware indicates that the criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition involving tortious or criminal use of the interception's fruits"); *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1203 (9th Cir.

1999) (refusing to apply the exception because "[a]lthough ABC's taping may well have been a tortious invasion of privacy under state law, plaintiffs have produced no probative evidence that ABC had an illegal or tortious purpose when it made the tape"); *Lucas v. Fox News Network, LLC*, 248 F.3d 1180, at *4 (11th Cir. 2001) (refusing to apply where plaintiffs' amended complaint expressly alleged defendant "recorded the session with the intent to broadcast the recording as part of a news report that would cast plaintiffs as members of a cult"); *Boddie v. Am. Broad. Cos., Inc.*, 731 F.2d 333, 337 (6th Cir. 1984) (analyzing legislative history; "The amendment, according to Senator Hart, would prohibit an interception 'when the party acts in a way with intent to injure the other party to the conversation in any other way.'") (quoting 114 Cong. Rec. 14,694 (1968)); *Meredith v. Gavin*, 446 F.2d 794, 798–99 (8th Cir. 1971) (holding exception did not apply where defendant secretly recorded private conversation with plaintiff in connection with worker's compensation proceeding to use at trial; "it seems apparent from the context in which the statute was enacted that the sort of conduct contemplated was an interception by a party to a conversation with an intent to use that interception against the non-consenting party in some harmful way and in a manner in which the offending party had no right to proceed"); *Planned Parenthood Fed. of Am., Inc. v. Newman*, 51 F.4th 1125, 1135–36 (9th Cir. 2022) (holding that "The recording party must also have the independent criminal or tortious purpose at the time the recording was made.") (citing *Sussman*, 186 F.3d at 1203); *Payne v. Norwest Corp.*, 911 F. Supp. 1299, 1304 (D. Mt. 1995), *aff'd in part and rev'd in part*, 113 F.3d 1079 (9th Cir. 1997) ("the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious") (emphasis in original).

Under all accounts, the focus of the tortious or criminal conduct exception analysis is on the purpose: was the defendant's alleged purpose in making the recording unlawful? If the purpose

was lawful, then the exception does not apply, even if the defendant's actions in using the recording might ultimately turn out to violate some other law. *Desnick*, 44 F.3d at 1353; *Med. Lab. Mang't Consultants v. Am. Broad. Cos., Inc.*, 30 F. Supp. 2d 1182, 1205 (D. Az. 1998) ("Even if Defendants were found liable for fraud, the question is not whether they are ultimately liable for conduct found to be tortious, but whether, at the time the recording took place, they recorded the conversation with the *express intent of committing a tort*.") (emphasis added).

Plaintiff also mischaracterizes Tufts MC's argument stating that it contends having a financial motive automatically means that the exception cannot apply. Opp. at 9. Plainly, recordings made for the purposes of blackmail and extortion can have a financial purpose and would fall within the scope of the exception. *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001) (analyzing legislative history). However, unlike blackmail and extortion, not all financial purposes are also criminal and tortious. As most relevant here, marketing as a purpose may include a financial motive, but it is not a criminal or tortious purpose. Far from being criminal or tortious, the United States Supreme Court has held that the basic right to engage in commercial speech is protected by the First Amendment to the United States Constitution. *See Bigelow v. Virginia*, 421 U.S. 809, 825 (1975); *Va. State Bd. of Pharm. v. Va. Citizens Cons. Council, Inc.*, 425 U.S. 748, 765 (1976); *Bates v. State Bar of Az.*, 433 U.S. 350, 376–77 (1977); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("the creation and dissemination of information are speech within the meaning of the First Amendment").[1]

[1]In *R.S. v. Prime Healthcare Servs.*, cited by Plaintiff, the court similarly misconstrued the import of a primarily financial purpose. The court pointed to the example of blackmail to support its conclusion that financial motives cannot immunize an intercepting defendant, noting that blackmail typically involves a financial motive. *R.S. v. Prime Healthcare Servs., Inc.*, No. 5:24-CV-00330-ODW (SPX), 2025 WL 103488, at *7 (C.D. Cal. Jan. 13, 2025). In that example, however, it is the defendant's purpose to commit the separate crime of blackmail that supplies the necessary intent, which is lacking here.

For the crime-tort exception to apply, Plaintiff must—but does not—plausibly allege that Tufts MC, a not-for-profit health system, installed Meta and Google technologies on its public website for the distinct purpose of violating HIPAA or perpetrating a tort, like invasion of privacy or breach of confidentiality—*i.e.*, that Tufts MC's deployed these technologies because it "intended to harm" its patients and other visitors to its website. *See McHugh*, 57 F. Supp. 3d at 100. Instead, they allege only that Tufts MC used these technologies, which are commonplace in both the healthcare industry and on websites generally, to "market its services and increase profits." Am. Compl. ¶ 178.

When the crime-tort exception analysis is properly focused on the defendant's alleged purpose in making the alleged interception, and not on whether the defendant's alleged conduct resulted in any purported crime or tort, the more persuasive authority holds that a purpose to engage in digital marketing is not criminal or tortious as a matter of law. *See Nienaber v. Overlake Hospital Medical Ctr.*, No. 2:23-CV-01159-TL, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (rejecting allegations that an alleged digital marketing and analytics purpose was sufficient to invoke the exception); *Williams v. TMC Health*, No. 23-CV-434-TUC-SHR, 2024 WL 4364150, at *4–5 (D. Ariz. Sept. 30, 2024) (same); *Julie Roberts, et al. v. Charlotte Mecklenburg Hosp. Authority d/b/a Atrium Health*, Dkt. # 50, Ord., Civ. Act. No. 3:24-cv-00382 (W.D.N.C. Mar. 20, 2025) (same; attached as Exhibit A); *see also In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 518–19; *Katz-Lacabe v. Oracle America, Inc.* No. 22-CV-04792-RS, 2024 WL 1471299, at *3, *5 (N.D. Cal. Apr. 3, 2024) ("The fact data collection or sales might at some later point be deemed tortious does not justify application of the crime-tort exception."); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (same); *Cohen v. Casper Sleep Inc.*, No. 17-CV-9325, 2018 WL 3392877, at **3–4 (S.D.N.Y. Jul. 12, 2018) ("Cohen fails to demonstrate that

Defendants' primary purpose was to commit a tort. Instead, he claims that Defendants' conduct amounted to a tort.") (emphasis in original); *compare Planned Parenthood Fed. of Am.*, 51 F.4th at 1136 n.8 ("fundraising is not a criminal purpose"); *Doe v. Amgen Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024), *reconsideration denied sub nom. Doe v. Amgen, Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 3811251 (C.D. Cal. Aug. 13, 2024) ("While Plaintiffs aver that Defendant's motivations were to improve their marketing and advertising efforts [], the crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally.") (citation omitted)); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (finding the "apparent purpose" of hospital system collecting information via third party software was "for market research and consumer analysis solely for the benefit of [the hospital] in better reaching and serving its patients."); *Rodriguez v. Fastmed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 364 (E.D.N.C. 2024) (dismissing ECPA claim because allegations that "[defendant] intercepted and disclosed [plaintiff's] information to Meta for commercial use or gain [] does not equate to [defendant] intercepting and disclosing [plaintiff's] information 'for the purpose of committing any criminal or tortious act'") (citation omitted); *Doe I v. Google, LLC*, 741 F. Supp. 3d 828, 843 n.4 (N.D. Cal. 2024) (dismissing ECPA claim because Google's purpose in offering its advertising and analytics products "'has plainly not been to perpetuate torts on millions of Internet users, but to make money'") (quoting *Rodriguez*, 741 F. Supp. 3d at 364 n.8); *In re DoubleClick Privacy Litig.*, 154 F. Supp. at 519 (dismissing ECPA claim where defendant's motivations were "licit and commercial" such that as a matter of law, plaintiff failed to allege defendant acted with a tortious purpose); *B.K. v. Eisenhower Medical Center*, 721 F. Supp. 3d 1056, 1065–66 (C.D. Cal. 2024) (no independent crime or tortious purpose alleged).

Other decisions relied upon by Plaintiff ignore that for the exception to apply the interception must be made for the purpose of committing a tortious or criminal act that is *independent* of the intentional act of recording or the interception itself, which is absent here. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d. 876, 901–02 (C.D. Cal 2024) (relying on *In re Meta Pixel Healthcare Litig.*); *Jarrell v. Adena Health Sys.*, No. 2:24-CV-00282, 2025 WL 81305, at *4 (S.D. Ohio Jan. 13, 2025) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927 (D. Minn. 2024). Indeed, the U.S. District Court for the Western District of Washington found a number of those decisions to be unpersuasive because they fail to "evaluate the distinction between the interception and transmission of data," and ruled that the crime-tort exception did not apply under similar allegations. *Nienaber.*, 2025 WL 692097, at *13 (decisions cited by plaintiff fail to "evaluate the distinction between the interception and transmission of data.") (collecting cases).

The contrary decisions cited by Plaintiff are not grounded in the language of ECPA and cannot be reconciled with the First Circuit's interpretation of its provisions and requirement that the exception be narrowly construed. The decisions further fail to consider the canon that courts should avoid statutory interpretations that produce absurd results if an alternative interpretation "consistent with legislative purpose [is] available." *Analog Techs., Inc. v. Analog Devices, Inc.*, 105 F.4th 13, 19 (1st Cir. 2024) (citations omitted). Imposing ECPA liability where a defendant does not have the requisite purpose, or conflating purpose with the ultimate result, creates the absurd situation of obviating the crime-tort exception's intent requirement and making felons out of numerous not-for profit healthcare systems. *See also* Amicus Brief filed by the Chamber of Commerce in *Doe v. Lawrence General Hospital*, Case No. 1:25-cv-10081-NMG, U.S. District

Court for District of Massachusetts, attached as Exhibit B. The canon against absurdity exists for cases like this one.

The rule of lenity also supports Tufts MC's interpretation of the statute. The rule of lenity requires that a "grievous ambiguity in a penal statute [be] resolved in the defendant's favor." *United States v. Councilman*, 418 F.3d 67, 83 (1st Cir. 2005). The rule of lenity also pertains to civil claims arising out of statutes with criminal applications. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."). Because ECPA carries both civil and criminal penalties, 18 U.S.C. § 2511(4)(a), should the Court determine that the clause "intercepted for the purpose of committing any criminal or tortious act" presents a grievous ambiguity, it should resolve that ambiguity in Tufts MC's favor and conclude that there must be an intentional purpose at the time of interception to commit a crime or tort and the alleged interception must be separate from the criminal or tortious act.

Plaintiff's failure to plead that at the time it deployed the Meta and Google analytics technologies it did so for the purpose of committing a crime or tort that was independent from the alleged interceptions of Plaintiff's communications requires Plaintiff's ECPA claim to be dismissed.

**B. Plaintiff Does Not Plausibly Allege The Interception Of "Contents"**

Plaintiff's ECPA claim separately fails as a matter of law because she has not plausibly alleged that the "contents" of any electronic communications was intercepted as required to state a viable claim. Without citation to any specific allegation in the Amended Complaint, Plaintiff in her Opposition claims that she alleged the interception of communications "that revealed her patient status—in particular her request for medical records and access to the patient portal." Opp. at 12. Plaintiff's argument, however, is not supported by a review of the Amended Complaint. In

the 228-paragraph Amended Complaint, the only allegations about Plaintiff are set forth in a single paragraph—paragraph 12. In that paragraph, Plaintiff alleges that she "obtain[ed] and review[ed] her medical records through the website's *patient portal*." Am. Compl ¶ 12 (emphasis provided). And there is no allegation, as Plaintiff acknowledges in her Opposition, that any information from within the patient portal was ever transmitted to Meta or Google. The only other allegations in the Amended Complaint about medical records are the allegations contained in paragraphs 100, 101 and 102, which includes a screenshot of the page on Tufts MC's public website that provides general information about the alternative ways that a person can make a request for medical records, including on the patient portal or the myTuftsMed app. Am. Compl. ¶ 100. Significantly, Plaintiff does not allege that she ever went to this particular informational page on the public website; nor would she need to in order to review her medical records on the separate patient portal.

Plaintiff alternatively argues that its allegations regarding "descriptive URLs" and webpage titles that it contends could have been transmitted when user's took certain actions on the website are sufficient to satisfy the "contents" element. Plaintiff's argument ignores that courts have distinguished between URLs that reflect mere navigation through a website, which are not protected content, from URLs that reflect a detailed search query made by the website user and may be protected content. *See, e.g., In re Zynga Priv. Litig.,* 750 F.3d 1098, 1108–09 (9th Cir. 2014) (URLs that reproduce words from a search engine query could be content, but URLs that reflect a user's navigation from one page to another, even if the page name was for a gay support group, are not content); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020) (URLs reflecting search terms typed into Google's search engine are distinguishable from the URLs at issue *In re Zynga* that resulted from clicking on links within the gaming website and

are not content); *Doe, et al. v. Adventist Health Care Network*, No. 22STCV36304, at 8 (Cal. Super. Ct. Feb. 14, 2025) (denying class certification because determining whether each individual class member's URL included user-inputted search terms or showed mere navigation within a patient portal would predominate over common issues), attached as Exhibit C. Plaintiff has not alleged that she undertook any actions that would have resulted in the transmission of anything more than a URL reflecting pages she viewed within the Tufts MC's public website, which are not protected "contents" under the ECPA. *See id.; see also Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023) ("Navigating through a website's multiple pages is not the substance of a communication; it's an action taken to go to a digital location.").

### C. Plaintiff Fails To State A Claim Under The Massachusetts Right To Privacy Act

To sustain an invasion of privacy claim under the Massachusetts Right to Privacy Act ("MRPA"), Plaintiff must plausibly allege an invasion that is "both unreasonable and substantial or serious." *Polay v. McMahon*, 468 Mass 379, 382 (2014). While "[g]enerally, whether an intrusion qualifies as unreasonable, as well as either substantial or serious, presents a question of fact," that does not mean such a claim is never subject to dismissal for failure to allege sufficient facts to state such a claim. *Id.* at 383. Plaintiff's complete lack of allegations that anything she did on the Tufts MC public website led to the transmission of any particularly sensitive or personal information require dismissal of her MRPA claim.

Plaintiff attempts to save her claim by asserting that "examples" were provided in the Amended Complaint. Opp. at 13 (citing Am. Compl. ¶¶ 12-13, 82–87, 94–99, 100–02). The cited paragraphs of the complaint, however, contain no such examples of what Plaintiff specifically searched for or what purported information of hers was shared. Plaintiff claims only to have used the Tufts MC website to "(i) obtain information about Tufts Medical Center doctors (including

their credentials and backgrounds); (ii) search for information on particular medical procedures; and (iii) obtain and review her medical records through the website's patient portal." Am Compl. ¶ 12. Category nos. 1 and 2 are conspicuously vague as alleged and do not even claim to be obtaining information related to *Plaintiff's* treating doctors or medical procedures, let alone concern the transmission of PHI or IIHI. Category no. 3 is irrelevant, since it concerns actions taken on Tufts MC's secure patient portal, and no allegations have been made that any analytics software operated within Tufts MC's patient portal. *Id.* ¶ 45 (alleging only that Tufts MC "injected hidden code into the Tufts Medical Center Website"); *id.* ¶ 47 (same). Otherwise, Plaintiff pleads only that "[t]he webpages Plaintiff visited on the Tufts Medical Center website were among the webpages on which Tufts Medical Center embedded code for various tracking technologies, including Meta Pixel and Google Analytics." *Id.* ¶ 13. Plaintiff's other cited paragraphs purporting to show "examples" of Plaintiff's activity describe the browsing of a hypothetical "user," *not* Plaintiff Karen McManus. *See* Am. Compl. ¶¶ 82–87, 94–99, 100–02.

Plaintiff also argues that because some MRPA claims that involved website tracking technologies survived a motion to dismiss, her claim should survive. Opp. at 13. Plaintiff, however, ignores significant factual distinctions that exist in the pleading of those cases that renders them inapposite.

In *Doe v. Tenet Healthcare Corporation*, the plaintiff alleged that she used Tenet's website to "schedule appointments, search for information, and access the patient portal," and after taking those actions she received targeted online advertisements relating to her specific health conditions, including related to weight loss and diabetes. 731 F. Supp. 3d 142, 147–148, 151–152 (D. Mass. 2024). In permitting the MRPA claim to proceed, the court specifically found that the information alleged that the plaintiff had her "identity, patient status, request for medical treatment, health

conditions and treatments, and appointment time and location [] constitutes information of a 'highly personal or intimate nature.'" *Id.* at 151–152.

Similarly, in *Doe v. Boston Medical Center Corp.*, the plaintiff alleged that her logging into the patient portal and actions taken to make an appointment with a BMC urologist for a hernia repair were transmitted to Meta and Google. No. 2384CV00326-BLS-1, 2023 WL 7105628, at *2 (Mass. Super. Sep. 14, 2023). Likewise, in *Doe v. Emerson Hospital*, the plaintiff alleged that information about his specific treatment for a concussion and information about his appointments at Emerson were transmitted to Meta. No. 2277CV01000, 2023 WL 8869624, at *1, *5 (Mass Super. Nov. 22, 2023).

Here, although Plaintiff argues in her Opposition that her patient status was transmitted to Meta in connection with her requests for medical records, as addressed above that argument is not supported by her actual allegations and there is no allegation in the Amended Complaint that she ever took any action on the public website to request her medical records. *See supra* II.B. Moreover, unlike the allegations in *Tenet*, *Boston Medical Center*, and *Emerson*, there are no allegations that any information about the scheduling of her medical appointments, the nature of those medical appointments, including the particular medical conditions, was ever transmitted to any third-party. Indeed, Plaintiff does not allege anything with respect to what she contends was transmitted in connection with her use of the public website, let alone that the information involved was of a highly personal or intimate nature. Massachusetts courts have found no reasonable expectation of privacy in situations that are more sensitive than search of a public website. *See, e.g.*, *Commonwealth v. Welch*, 487 Mass. 425, 433-34 (2021) (busy hospital emergency room was not a location where a suspect had a reasonable expectation of privacy); *Commonwealth v. McCue*, 67 Mass. App. Ct. 1113, at *1–2 (2006) (unpublished) (similar).

Plaintiff also mischaracterizes the Supreme Judicial Court's ("SJC's") ruling in *Vita v. New England Baptist Hosp.* Opp. at 13. Significantly, the SJC did not evaluate or render any opinion as to whether the facts as alleged by Vita were sufficient to state a viable MRPA claim. Rather, in *dicta*, it noted that "the Legislature has provided other statutory and common-law causes of action to address allegedly false, misleading, or deceptive activity on the Internet, including statutory and common-law protections more directly applicable to misrepresentations or misuse of *private medical information*," and cited to the *Tenet* decision where the plaintiff specifically alleged facts that her medical conditions, treatments and appointment times and locations were transmitted to Meta in support of its MRPA claim. *Vita v. New England Baptist Hosp.*, 494 Mass. 824, 849 (2024) (emphasis provided).

In *Alves v. BJ's Wholesale Club*, the plaintiff alleged that all of their actions taken on the BJ's website were recorded and shared with a third-party. No. 22-2509-BLS1, 2023 WL 4456956 (Mass. Super. June 21, 2023), at **6–7. The court there specifically noted skepticism that the "allegations are sufficient to state a claim for invasion of privacy. Among other things, plaintiff has failed to allege clearly that BJ's was able to connect his identity to the data collected or that the data collected was particularly personal or sensitive." *Id.* The court, however, permitted the claim to proceed because it determined another claim was surviving the motion dismiss, and he could, therefore, address the viability of the MRPA claim later on a more developed record. *Id.*

Here, given the lack of any allegations that Plaintiff's medical information was ever transmitted to Meta, Plaintiff's claim is more akin to the allegations in *B.K. v. Eisenhower Medical Center* and *Cousin v. Sharp Healthcare*, where the courts dismissed invasion of privacy claims since, at most information, about routine medical searches and inquiries on a public website were transmitted. *B.K.*, 721 F. Supp. 3d at 1067; *Cousin*, 681 F. Supp 3d. 1117, 1123 (S.D. Cal. 2023)

("*Cousin I*"). In assessing the viability of a privacy claim, the nature of the actions taken on the website and the information allegedly disclosed are material. This issue was specifically addressed by the court in *R.C. v. Walgreen Co.*—a decision that Plaintiff relies upon in connection with her ECPA claim. The court distinguished transmissions concerning a person's use of a hospital's public website to "'research ... doctors,' 'look for providers,' and 'search for medical specialists' – all of which is 'general information that is accessible to the public at large' and does not 'relate[] specifically to plaintiff's health" and is not sufficiently private to support a privacy claim from a transmission that reflected a person's purchase of a particular medication to treat a specific health condition, which plausibly conveys personal health information and supports a privacy claim. *R.C.*, 733 F. Supp. 3d at 892–93 (quoting and distinguishing *Cousin I*).

### D. Plaintiff's Breach Of Fiduciary Duty And Breach Of Confidence Claims Should Be Dismissed

Plaintiff's failure to allege sufficient factual allegations similarly dooms her breach of fiduciary duty and confidence claims. Plaintiff alleges nothing particular to herself in the context of her use of the Tufts MC website, and alleges no transmission that pertains to the disclosure of any of her personal health information. Plaintiff's arguments regarding her breach of fiduciary duty and confidence claims further ignore that the constraints of a physician-patient relationship are not boundless and the allegations here are limited to alleged actions that are taken by visitors to Tufts MC's public website without Tufts MC having any knowledge of who those users are. Plaintiff's allegations are limited to examples of hypothetical use of a hospital's public-facing website, which does not plausibly support a fiduciary relationship. Moreover, the relationship between Tufts MC and the users of its public website, including the Plaintiff, is common to all members of the public, and is the antithesis of a fiduciary relationship.

As addressed above, Plaintiff's reliance on the decisions in *Emerson* and *Tenet* are misplaced since the allegations in those matters were more robust and included the alleged transmission of the plaintiffs' specific treatments, appoint times and locations. See *Emerson Hospital*, 2023 WL 8869624, at *3 (allegations included transmission of information about plaintiff's treatment for his concussion at the Cantu Concussion Center); *Tenet Healthcare Corporation*, 731 F. Supp. 3d at 147–148, 151 (plaintiff alleged that her "identity, patient status, request for medical treatment, health conditions and treatments, and appointment time and location" were transmitted). Likewise, the fiduciary obligation addressed in *Alberts v. Devine*, addresses the obligation of a physician "to hold in trust confidential information." 95 Mass. 59, 69 (Mass 1985). However, Plaintiff has not alleged that any communications with any of her physicians were ever disclosed. *See Willitts v. Engie N. Am. Inc.*, No. 20-CV-11255-ADB, 2021 WL 2322833, at *4 (D. Mass. June 7, 2021) (dismissing breach of confidentiality claim based on "no disclosure by a physician"); *see also B.K.*, 721 F. Supp. 3d at 1069 ("Plaintiffs fail to sufficiently allege disclosure. As a result, Plaintiff's breach of confidence claim fails").

Finally, Plaintiff does not dispute that her breach of confidence claim is wholly duplicative of her breach of fiduciary duty claim.

**E. Plaintiff's Negligence Claim Should Be Dismissed**

Plaintiff's Opposition asserts that the purported duty she is relying upon for her negligence claim is rooted in the physician/patient relationship and a duty to maintain the confidentiality of a patient's personal health information whether it arises from HIPAA, state medical privacy laws, or AMA ethical rules. Opp. at 17–18. However, she ignores that her Amended Complaint is devoid of any allegations that any of Plaintiff's personal health information has ever been transmitted to Meta or Google. As a result, her reliance on *Tenet* is misplaced because, in that matter and unlike here, the plaintiff had specifically alleged facts that her personal health information, including her

particular health conditions, treatments, appointment time and location was transmitted to Meta, and she alleged that these disclosures caused the advertisements she received for diabetes and obesity. *Tenet*, 731 F. Supp. 3d at 147–148. Here, Plaintiff has failed to allege facts that she herself used Tufts MC's website in a manner that any transmitted browsing data could ever be considered the transmission of protected confidential health information.

Given the absence of allegations that Plaintiff's private medical information was disclosed to Meta or Google and that she has been damaged, Plaintiff's negligence claim should be dismissed.

**F. Plaintiff's Breach Of Contract Claim Should Be Dismissed**

Plaintiff's Opposition ignores Tufts MC's argument that there has been a failure to allege consideration for any purported contract to safeguard her personal health information and as with her other claims ignores that she has not alleged that any of her personal health information has ever been transmitted to Meta or Google. Indeed, in *Emerson* the court acknowledged that there was no case law from the Commonwealth clearly on point and there are courts from other jurisdictions that have held that an implied contract is not viable. *Emerson*, 2023 WL 8869624, at *4. Given the lack of Plaintiff's factual allegations and for the reasons addressed in Tufts MC's motion, her breach of contract claim should be dismissed for failure to state a claim.

**G. Plaintiff's Unjust Enrichment Claim Should Be Dismissed**

Plaintiff's reliance on *Emerson* and *Tenet* in support of her unjust enrichment claim is similarly flawed. As addressed above, the court's decisions in those matters turned on the specific detailed facts alleged that the plaintiff's personal health information was transmitted. *Emerson*, 2023 WL 8869624, at *1, *5; *Tenet*, 731 F. Supp. 3d at 150–51. Plaintiff makes no such allegations. Plaintiff further misrepresents the SJC's holding in *Vita*, which did not assess the viability of an unjust enrichment claim nor conclude that an "unjust enrichment claim is "cognizable" based on

undisclosed use of tracking technologies. *Vita*, 494 Mass. at 849–50. Further, based on the lack of factual allegations, there is no plausible basis to consider whether Plaintiff conferred any "benefit" to Tufts MC or whether there was any "value" associated with the purported benefit, which other courts have recognized in dismissing similar claims. *See Doe v. Post Acute Med., LLC*, No. 1:24-CV-547, 2025 WL 511069, at *9 (M.D. Pa. Feb. 14, 2025) (lack of specific facts regarding what information was disclosed, to whom, under what circumstances and whether the information was linked to Doe specifically required dismissal of unjust enrichment claim); *Nienaber v. Overlake Hosp. Med. Ctr*., 733 F. Supp. 3d 1072, 1093–94 (W.D. Wash. 2024) (dismissing unjust enrichment claim for lack of pleading "a concrete detriment for purposes of an unjust enrichment claim"); *B.K.*, 721 F. Supp. 3d at 1070 ("Without specific allegations about the underlying information that was allegedly disclosed, it is unclear to the Court how, if at all, Defendant was unjustly enriched").

## III. CONCLUSION

For the foregoing reasons and those included in Tufts MC's motion, Tufts MC respectfully asks the Court to dismiss the Amended Complaint against it with prejudice.

Dated: March 28, 2025

Respectfully submitted,

*/s/ Elizabeth A. Scully*__________

Elizabeth A. Scully (admitted pro hac vice)
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
escully@bakerlaw.com
T: (202) 861-1500
F: (202) 861-1783

James H. Rollinson, Esq. (BBO #649407)
BAKER & HOSTETLER LLP
127 Public Street
Suite 2000
Cleveland, OH 44116
jrollinson@bakerlaw.com
T: (216) 621-0200
F: (216) 626-0740

Paul G. Karlsgodt (pro hac vice to be filed)
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202-2662
pkarlsgodt@bakerlaw.com
T: (303) 764-4013
F: (303) 861-7805

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 28, 2025, copies of the foregoing were filed using the Court's CM/ECF service which will provide service copies to the Plaintiff's counsel of record.

*<u>/s/ Elizabeth A. Scully</u>*
*One of the attorneys for defendant*