**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KAREN MCMANUS,<br><br>For herself and the Class,<br><br>v.<br><br>TUFTS MEDICAL CENTER, INC.,<br><br>Defendant. | **Case No. 1:25-cv-10008-ADB**<br><br>Leave to file excess pages granted on December 11, 2025 (Doc. No. 31) |

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

# Table of Contents

Page

I. Introduction....1

II. The Facts....2

III. Argument....5

A. Plaintiff States a Claim for Violation of the ECPA....5

1. Plaintiff Adequately Alleges the Crime-Tort Exception to One-Party Consent....5

a. The Court's Prior Decision on the Crime-Tort Exception....5

b. The SAC Adds Allegations Supporting the Crime-Tort Exception....6

c. Tufts Intercepted Communications for the Purpose of Committing Acts Which Violated HIPAA....8

d. Tufts Intercepted Communications for the Purpose of Committing Acts that are Tortious under Massachusetts Law....11

e. The Court Should Again Reject Tufts's Argument for a "Heightened" Intent Requirement....12

f. Plaintiff Alleges Criminal and Tortious Acts Separate from the Violation of the ECPA....14

g. Conclusion on the Crime-Tort Exception....16

2. Plaintiff Alleges the Interception of the Contents of Her Communications....17

B. Plaintiff Adequately Alleges Her State Law Claims....19

1. Plaintiff States a Claim under the MRPA....19

2. Plaintiff States a Claim for Breach of Fiduciary Duty....21

3. Plaintiff States a Claim for Breach of Confidence....23

4. Plaintiff States a Claim for Negligence....23

5. Plaintiff Sufficiently Alleges Damages....24

6. Plaintiff States a Claim for Breach of Contract....25

7. Plaintiff States a Claim for Unjust Enrichment....25

IV. Conclusion....25

## Table of Authorities

Page

**Cases**

*A.J. v. LMND Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ........ passim

*Alberts v. Devine*,
395 Mass. 59 (1985) ........ 23

*Allen v. Midwest Express Care, Inc.,*
2025 U.S. Dist. LEXIS 151237 (N.D. Ill. Aug. 6, 2025) ........ 9

*Alves v. BJ's Wholesale Club, Inc.*,
2023 Mass. Super. LEXIS 59 (Super. Ct. June 21, 2023) ........ 20, 21

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ........ 11

*Baker v. Wilmer Cutler Pickering Hale & Dorr LLP*,
91 Mass. App. Ct. 835 (App. Ct. 2017) ........ 23

*Bennett v. Eagle Brook County Store, Inc.*,
408 Mass. 355 (1990) ........ 24

*Brahm v. Hosp. Sisters Health Sys.*,
2024 U.S. Dist. LEXIS 114827 (W.D. Wis. June 28, 2024) ........ 9, 19, 22, 25

*Bratt v. Int'l Bus. Machines Corp.*,
392 Mass. 508 (1984) ........ 19

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 21

*Castillo v. Costco Wholesale Corp.*,
2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024) ........ passim

*Conformis, Inc. v. Aetna, Inc.*,
58 F.4th 517 (1st Cir. 2023) ........ 8

*Cooper v. Mt. Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ........ 14, 16, 22, 23

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........ 10

*Doe v. Bon Secours Mercy Health*,
2021 Ohio Misc. LEXIS 3985 (Ct. Com. Pl. Nov. 22, 2021) ........................................................ 25

*Doe v. Bos. Med. Ctr. Corp.*,
2023 Mass. Super. LEXIS 674 (Super. Ct. Sep. 14, 2023) ........................................................ 20, 21

*Doe v. Deaconess Ill. Union Cnty. Hosp.. Inc.*,
2025 U.S. Dist. LEXIS 192058 (S.D. Ill. Sept. 29, 2025) ........................................................ 11, 14, 15

*Doe v. Emerson Hosp.*,
2023 Mass. Super. LEXIS 673 (Super. Ct. Nov. 22, 2023) ........................................................ 20, 21, 22, 25

*Doe v. Genesis Health Sys.*,
2025 U.S. Dist. LEXIS 65328 (C.D. Ill. Mar. 18, 2025) ........................................................ 12

*Doe v. Medstar Health, Inc.*,
2020 Md. Cir. Ct. LEXIS 139 (Cir. Ct. Aug. 5, 2020) ........................................................ 19, 21

*Doe v. Partners Healthcare*,
No. 1984CV01651-BLS1 (Mass. Super. Ct.) ........................................................ 20, 23

*Doe v. Post Acute Med., LLC*,
2025 U.S. Dist. LEXIS 26667 (M.D. Pa. Feb. 14, 2025) ........................................................ 18

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) ........................................................ 20, 22, 25

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E. D. Cal. June 9, 2025) ........................................................ 15

*Doe v. Wellstar Health Sys., Inc.*,
2025 U.S. Dist. LEXIS 209327 (N.D. Ga. Aug. 21, 2025) ........................................................ 8, 9, 15, 16

*Elkin s v. Bartholomew Cnty. Pub. Hosp.*,
2024 Ind. Super. LEXIS 340 (Super. Ct. Dec. 16, 2024) ........................................................ 25

*Garcia v. Columbia Med. Ctr.*,
996 F. Supp. 617 (E.D. Tex. 1998) ........................................................ 24

*Gay v. Garnet Health*,
2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sept. 16, 2024) ........................................................ 16, 24

*Goulart v. Cape Cod Healthcare, Inc.*,
2025 U.S. Dist. LEXIS 119435 (D. Mass. June 24, 2025) ........................................................ 13

*Grajales v. P.R. Ports Auth.*,
682 F.3d 40 (1st Cir. 2012) ........................................................ 8

*Hammerling v. Google*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................20

*Hartley v. Univ. of Chi. Med. Ctr.*,
2025 U.S. Dist. LEXIS 194466 (N.D. Ill. Oct. 1, 2025) ....................9, 11, 15

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ....................21

*I.T. v. Choicepoint LLC*,
2025 U.S. Dist. LEXIS 169202 (W.D. Wash. Aug. 29, 2025) ....................9, 11, 15

*In re BetterHelp, Inc. Data Disclosures Cases*,
2024 U.S. Dist. LEXIS 124321 (N.D. Cal. July 15, 2024) ....................14

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................21

*In re Google Inc.*,
806 F.3d 125 (3d Cir. 2015) ....................17, 18, 21

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................20

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................passim

*In re Meta Pixel Healthcare Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) ....................24

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ....................8, 20, 24

*In re Pharmatrak, Inc. Privacy Litig.*,
329 F.3d 9 (1st Cir. 2003) ....................17

*Jarrell v. Adena Health Sys.*,
2025 U.S. Dist. LEXIS 6169 (S.D. Ohio Jan. 13, 2015) ....................12, 15, 25

*Juenger v. Deaconess Health Sys., Inc.*,
2025 U.S. Dist. LEXIS 193628 (S.D. Ill. Sept. 30, 2025) .................... 5, 15

*Juliano v. Simpson,*
461 Mass. 527 (2012) ....................24

*K.L. v. Legacy Health*,
2024 U.S. Dist. LEXIS 206864 (D. Or. Nov. 14, 2024) ....................10

*Kane v. Univ. of Rochester*,
2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024) ........ 10

*Kurowski v. Rush Sys. for Health*,
2023 U.S. Dist. LEXIS 219895 (N.D. Ill. Dec. 11, 2023) ........ 15

*Kurowski v. Rush Sys. for Health*,
2024 U.S. Dist. LEXIS 126837 (N.D. Ill. July 18, 2024) ........ 9, 12, 13, 14

*Lamarr v. Goshen Health Sys., Inc.*,
2024 Ind. Super. LEXIS 107 (Ind. Super. Ct. Oct. 3, 2024) ........ 19, 22, 24, 25

*Lee v. Conagra Brands, Inc.,*
958 F.3d 70 (1st Cir. 2020) ........ 24

*Lugo v. Inova Health Care Servs.*,
2025 U.S. Dist. LEXIS 55590 (E.D. Va. Mar. 25, 2025) ........ 9, 10, 15

*M.G. v. Therapymatch*,
2024 U.S. Dist. LEXIS 166534 (N.D. Cal. Sept. 16, 2024) ........ 17, 18

*M.R. v. Salem Health Hosps. & Clinics*,
2024 U.S. Dist. LEXIS 155513 (D. Or. Aug. 28, 2024) ........ 10

*McCulley v. BannerHealth*,
2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024) ........ 18

*McManus v. Tufts Med. Ctr., Inc.,*
2025 U.S. Dist. LEXIS 191546 (D. Mass. Sep. 29, 2025) ........ passim

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) ........ 14, 16

*Nienaber v. Oberlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ........ 10

*Nix v. O'Malley*,
160 F.3d 343 (6th Cir. 1998) ........ 17

*Polay v. McMahon*,
468 Mass. 379 (2014) ........ 19, 20, 21

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........ 12, 14, 18, 19

*R.S. v. Prime Healthcare Servs.*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025) ........ 9, 14, 15

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ....................14

*Roe No. 1 v. Children's Hosp. Med. Ctr.*,
469 Mass. 710 (2014) ....................24

*Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
409 Mass. 514 (1991) ....................19

*SEC v. Willis*,
787 F. Supp. 58 (S.D.N.Y. 1992) ....................22

*Smith v. Loyola Univ. Med. Ctr.*,
2024 U.S. Dist. LEXIS 119995 (N.D. Ill. July 9, 2024) .................... 16, 18

*Smith v. Rack Room Shoes, Inc.*,
2025 U.S. Dist. LEXIS 149750 (N.D. Cal. Aug. 4, 2025) ....................15

*Spencer v. Roche*,
755 F. Supp. 2d 250 (D. Mass. 2010) ....................24

*Stein v. Edward-Elmhurst Health,*
2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) .................... 1, 6

*Tower v. Hirschhorn*,
397 Mass. 581 (1986) ....................19

*United States v. O'Hagan*,
521 U.S. 642 (1997) ....................22

*Vita v. New England Baptist Hosp.*,
494 Mass. 824 (2024) .................... 19, 20, 22, 25

*Vriezen v. Infinite Health Collaborative, P.A.*,
2025 U.S. Dist. LEXIS 211708 (D. Minn. Sep. 30, 2025) ....................9

*Wiley v. Universal Music Grp., Inc.*,
2025 U.S. Dist. LEXIS 261303 (N.D. Cal. Dec. 17, 2025) ....................21

*Williams v. TMC Health*,
No. 23-cv-00434 (D. Ariz. Aug. 19, 2025) .................... 6, 16

*Yoon v. Meta Platforms, Inc.*,
2024 U.S. Dist. LEXIS 234457 (N.D. Cal. Dec. 30, 2024) ....................18

**Statutes**

18 U.S.C. § 2510 ........................................................................................................17

18 U.S.C. § 2511 ..........................................................................................................5

M.G.L. c. 214 § 1B......................................................................................................19

MPC § 2.02 .................................................................................................................13

**Other Authorities**

*Health Information Privacy*,
U.S. Dep't of Health and Human Services (July 26, 2013)..............................................16

Restat. 3d of Agency, § 8.05 ..........................................................................................22

*Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates,*
U.S. Dep't of Health & Human Services (Dec. 1, 2022) ..................................................9

**Rules**

Fed. R. Civ. P. 8 ...........................................................................................................8

Fed. R. Civ. P. 9 ...........................................................................................................8

**Regulations**

45 C.F.R. § 160.103.......................................................................................................8

45 C.F.R. § 164.508.....................................................................................................16

## I. INTRODUCTION

This case is about a hospital's betrayal of patient privacy for its own commercial gain. Plaintiff and other Tufts Medical Center ("Tufts") patients trusted that their personal health information would be protected. Tufts was legally obligated to do so and expressly assured its patients would keep those confidences. Despite its promises and legal obligations, Tufts installed hidden tracking technologies on its website (the "Tufts Website") that acted as a wiretap, which intercepted communications between patients and Tufts. Tufts then transferred the intercepted communications and personally identifying information of its patients to Meta and Google. Tufts later exploited the intercepted communications for its own marketing purposes, leveraging them to serve advertising on Google and Facebook platforms that targeted Tufts's patients based on the content of their intercepted communications.

On September 29, 2025, this Court granted Tufts's motion to dismiss Plaintiff's Amended Complaint with leave to amend. *McManus v. Tufts Med. Ctr., Inc.,* 2025 U.S. Dist. LEXIS 191546 (D. Mass. Sep. 29, 2025) ("MTD Decision"). In response, Plaintiff filed her Second Amended Complaint ("SAC") (Doc. No. 25). In its motion to dismiss the SAC (Doc. No. 28), Tufts pretends Plaintiff has not amended her complaint. Tufts's motion to dismiss mostly repeats its prior motion, often verbatim, and fails to engage with the substantial new fact allegations in the SAC, which address the issues raised by the Court in its MTD Decision and amply support Plaintiff's claims.

In the SAC, Plaintiff asserts a claim under the federal Electronic Communications Privacy Act ("ECPA"). Tufts invokes the ECPA's one-party consent defense, but that defense does not apply here because Plaintiff plausibly alleges in the SAC that Tufts intercepted communications for the purpose of committing a criminal or tortious act. When this Court addressed the crime-tort exception in its MTD Decision, it observed that for the exception to apply: "The purpose must be to commit an act, and that act must be criminal or tortious. If the purpose is to do X, and if X is a crime or a tort, then the crime-tort exception to the one-party consent rule applies." *McManus,* 2025 U.S. Dist. LEXIS 191546, at *8 n.1 (quoting *Stein v. Edward-Elmhurst Health,* 2025 U.S. Dist. LEXIS 31273, at *14 (N.D. Ill. Feb. 21, 2025)).

In compliance with the MTD Decision, Plaintiff avers in detailed allegations, which Tufts ignores, that Tufts intercepted patient communications for the purpose of committing acts which are criminal and tortious in two ways: First, Tufts knowingly disclosed patient communications to Google and Facebook in violation of the Health Insurance Portability and Accountability Act ("HIPAA"), the Massachusetts Right to Privacy Act ("MRPA"), other Massachusetts tort law, and Tufts's own express promises to patients. Second, Tufts subsequently exploited the intercepted patient communications for commercial and marketing purposes, which, separately, violated federal and state law. Tufts intercepted the contents of Plaintiffs' electronic communications by revealing Plaintiff's status as a Tufts patient, her doctors, and her specific medical conditions and treatments. Tufts's conduct, thus, violated the ECPA.

Tufts's conduct also violated Massachusetts law. Massachusetts courts have unanimously affirmed the claims Plaintiff asserts here arising from the same type of conduct. Tufts's challenges to Plaintiff's state law claims lack merit, and there is no reason for the Court to depart from established authority sustaining such claims.

For the reasons set forth herein, Tufts's motion to dismiss the SAC should be denied.

## II. THE FACTS.

During the Class Period, Plaintiff—a Tufts patient—regularly communicated with Tufts through its website. She accessed the Tufts patient portal to review her medications, obtain test results, get appointment information, and review letters from her physicians regarding her treatments. SAC ¶¶ 16-17 (hereinafter, "¶¶__"). She also obtained information about her doctors and medical procedures. *Id.*

Tufts secretly intercepted and disclosed Plaintiff's patient communications by placing on its website hidden code for advertising tracking technologies, which enable Google, Facebook, and other companies to eavesdrop on Plaintiff's and other Class Members' communications with Tufts. ¶¶ 2-3, 68-81. The tracking technologies act as a "silent third-party watching whatever you're doing." ¶ 45. The tracking technologies link intercepted communications to the real-world identities of individuals to facilitate targeted advertising to those individuals. ¶¶ 36-59.

Facebook and Google's businesses are built on advertising—in particular, highly targeted ads to individuals based on extensive behavioral profiles that Google and Facebook have amassed for practically every person. ¶¶ 37-45, 50-55, 59. Google and Facebook build such profiles by collecting extensive data from various sources, not limited to interactions individuals have with Google and Facebook, but also including interactions with other businesses that use tracking technologies on their websites. *Id.*

The tracking technologies Tufts deployed on its website advance Google and Facebook's efforts to amass data about individuals for targeted advertising. ¶¶ 36-59. Tufts uses them to intercept and disclose to Google and Facebook the substance of Tufts patient communications. *Id.* Tufts deploys the technology to leverage the content of intercepted communications disclosed to Google and Facebook to target Tufts advertising to Tufts patients through Google and Facebook's advertising platforms. Indeed, the primary reason businesses such as Tufts deploy tracking technologies is to maximize the effectiveness of their targeted advertising. ¶¶ 46-48, 56-57, 73, 90, 95-96, 99, 102-04, 106, 108-09, 112, 114, 116, 119, 121-22, 125-26, 128-30, 134, 136-39, 160, 162-66.

Tufts configured its website and the tracking technologies to intercept and disclose to Google and Facebook the substance of highly sensitive patient communications, revealing patients' status as Tufts patients (including communications on the patient portal) (¶¶ 131-39), their appointment requests (¶¶ 110-16), bill payments (¶¶ 123-26), requests for medical records (¶¶ 127-30)), information about their doctors (¶¶ 120-22), specific term searches they entered (¶¶ 117-19), and specifics regarding their medical conditions and treatments about which they requested information (¶¶ 99-109). Plaintiff communicated with Tufts during the Class Period through specific pages on which Tufts deployed tracking technologies that intercepted Plaintiff's communications, including (i) Tufts's patient portal; (ii) Tufts's searchable database of doctors; and (iii) pages through which Plaintiff requested information about specific medical procedures. ¶¶ 16-17. Those interceptions revealed to Facebook and Google Plaintiff's identity and that Plaintiff was a Tufts patient seeking confidential medical care from Tufts, including information about her doctors and specific medical conditions. ¶¶ 100-09, 120-22, 131-39. Tufts subsequently used

Facebook and Google's advertising platforms to target patients, including Plaintiff, with advertisements based on the content of the intercepted communications. ¶¶ 46-48, 56-57, 73, 90, 95-96, 99, 102-04, 106, 108-09, 112, 114, 116, 119, 121-22, 125-26, 128-30, 134, 136-39, 160, 162-66.

Tufts did not disclose to its patients that it intercepted and disclosed to Google and Facebook the contents of patient communications, or that Tufts, Google, and Facebook would later use those intercepted communications to target patients with advertising. ¶¶ 29-35. The tracking technologies are hidden by design, undetectable to ordinary internet users, and Tufts not only failed to disclose such technologies but falsely told patients, through online policies and terms of service, that Tufts "will never share…any identifiable information to third party vendors," *id.*, even though this is precisely what it did through its decision to deploy tracking technologies throughout its website. ¶¶ 60, 68, 80.

At the time of the interceptions, Tufts knew full well of the privacy implications of deploying the tracking technologies throughout its website, including on pages like the patient portal, appointment request page, bill payment page, and medical record request page, the use of which reflected patient status. Indeed, Google and Facebook expressly warned Tufts to obtain user consent for all tracking technologies and to refrain from using them on healthcare webpages. ¶¶ 41-42, 48, 52, 54, 58. Notwithstanding these directions, Tufts deployed the tracking technologies on pages specifically designed for patients without obtaining patient consent. ¶¶ 110-16, 120-39. Indeed, Tufts deployed the tracking technologies for that very purpose: to disclose a patient's status as a Tufts patient and to track that patient's communications on its website, so that Tufts and other parties could target those patients with advertising on Google and Facebook's advertising platforms. ¶¶ 112, 114, 116, 121-22, 125-26, 128-30, 134, 136-39, 159, 163.

Remarkably, Tufts's motion to dismiss does not discuss, let alone address in any argument, the substantial factual allegations Plaintiff has added to her SAC. To bring these new allegations into focus, Plaintiff attaches as Exhibit A to this opposition a redline comparing her SAC to her amended complaint. As argued below, these new factual allegations warrant denial of Tufts's motion to dismiss.

## III. ARGUMENT

### A. *Plaintiff States a Claim for Violation of the ECPA.*

Tufts violated the ECPA by intercepting, disclosing to third parties, and later exploiting patient communications for commercial purposes, including communications revealing individuals' status as Tufts patients and other sensitive information, such as the identity of their doctors and medical conditions. Tufts's two arguments for dismissal of the ECPA claim—that it was a party to the communications and that the interceptions involved no "contents" of any communication—lack merit and ignore significant new allegations added in the SAC.

#### 1. Plaintiff Adequately Alleges the Crime-Tort Exception to One-Party Consent.

##### a. The Court's Prior Decision on the Crime-Tort Exception.

Under Section 2511(1)(a) of the ECPA, it is unlawful for any person to intentionally intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a). Section 2511(2)(d) contains an exception that provides: "It shall not be unlawful under this chapter for a person … to intercept a[n] … electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Thus, "one is normally not liable for intercepting her own communications but may be liable if her conduct satisfies the crime or tort exception." *Juenger v. Deaconess Health Sys., Inc.*, 2025 U.S. Dist. LEXIS 193628, at *24-25 (S.D. Ill. Sept. 30, 2025).

This Court granted Tufts's previous motion to dismiss, reasoning that Plaintiff pled insufficient facts to support the inference that Tufts intercepted communications for the purpose of committing an act that was criminal or tortious. *McManus,* 2025 U.S. Dist. LEXIS 191546, at *8. The Court did not hold that Plaintiff's legal theory was nonviable or that no facts could be alleged supporting the inference. The Court pointed to *Williams v. TMC Health*, in which the court upheld ECPA claims following an

amendment adding allegations that the defendant "was on notice regarding how data containing health information may be disclosed or used [through] tracking technologies." *McManus*, 2025 U.S. Dist. LEXIS 191546, at *8 (quoting *Williams*, No. 23-cv-00434, at 6-7 (D. Ariz. Aug. 19, 2025) (Doc. No. 23-1).

Recognizing that courts have adopted a range of different constructions of the crime-tort exception, this Court rejected more extreme approaches some courts have adopted, which have held that a "commercial gain" is incompatible with the crime-tort exception, or that the intercepting party must intend to commit a crime or tort (as opposed to intend to engage in acts that criminal or tortious). *Id.* at *8, n.1. Instead, the Court held that "[t]he existence of a financial motivation (on the one hand) and a criminal or tortious motivation (on the other hand) are not mutually exclusive. After all, lots of crimes and torts are money-makers." *Id.* The Court also endorsed the standard articulated in *Stein*, which held:

> The text [of § 2511(2)(d)] points to the 'purpose of committing any criminal or tortious act.' Separating the adjectives from the noun might shed a little light. The purpose must be to commit an act, and that act must be criminal or tortious. If the purpose is to do X, and if X is a crime or a tort, then the crime-tort exception to the one-party consent rule applies. A desire to commit a crime qua crime, or a tort qua tort, isn't necessary.

*Id.* (quoting *Stein*, 2025 U.S. Dist. LEXIS 31273, at *14).

The Court permitted Plaintiff to amend. Plaintiff has done so. The amendment fully resolves any shortcoming the Court identified previously.

b. The SAC Adds Allegations Supporting the Crime-Tort Exception.

The SAC adds facts that amply support the crime-tort exception. Plaintiffs' new allegations include the same substantive allegations as added in *TMC Health* (which the *TMC Health* court found sufficient and this Court endorsed), including that Tufts was aware that the tracking technologies would disclose confidential communications for later use in targeted advertising. Plaintiff's allegations go much further, adding voluminous factual support relevant to the crime-tort exception far beyond the allegations found sufficient in *TMC Health*. Plaintiff's new fact allegations include the following:

(i) Allegations showing that the primary function and purpose of tracking technologies is to disclose private communications to third-party marketing companies to enable Tufts's own targeted advertising to its patients on Google and Facebook's platforms based on

the content of the intercepted communications (¶¶ 46-48, 56-57, 73, 90, 95-96, 99, 102-04, 106, 108-09, 112, 114, 116, 119, 121-22, 125-26, 128-30, 134, 136-39, 160, 162-66)[1];

(ii) Allegations showing Tufts was on notice about how data containing health information may be disclosed or used,[2] including how tracking technology vendors notified Tufts that the intercepted communications would be used to facilitate targeted advertising and warned Tufts not to use the technologies on health-related pages, but that Tufts deployed the technologies on patient-specific pages anyway (¶¶ 41-43, 46-48, 52-59)[3];

(iii) Allegations showing that Tufts knew about the restrictions imposed by HIPAA and Massachusetts law, which ensure the privacy and security of an individual's health information, and promised its patients that it adheres to those restrictions and would not allow access to health information by third parties without patient authorization (¶ 210);

(iv) Allegations setting forth in further detail how, despite the warnings from Facebook and Google, and contrary to its privacy policies, Tufts deployed tracking technologies on pages that revealed individuals' status as Tufts patients (¶¶110-15, 120-30, 131-39); and

(v) Allegations showing how disclosures of and subsequent marketing using the intercepted communications are both acts distinct from the interceptions (¶¶ 71, 102-04, 106, 108-09, 112, 114, 116, 119, 121-22, 125-26, 128-30, 134, 136-39, 160, 162-66).[4]

Remarkably, despite the voluminous, material new allegations relevant to the crime-tort exception, in its Memorandum in Support of its Motion to Dismiss ("MTD Mem.") (Doc. No. 29), Tufts pretends the complaint remains unchanged,[5] largely copying its arguments from its prior motion and

[1] Given how the tracking technologies operate, Tufts had reason to share as much information about patient communications with Google and Facebook in order to maximize the effectiveness of Tufts's individually targeted advertisements on Facebook and Google's platforms. ¶¶ 47, 57.

[2] Facebook and Google tell their customers that the purpose of the tracking technologies is to optimize the delivery of ads in order to run more data-driven advertisements. ¶¶ 41-42, 54-55.

[3] Facebook directed Tufts to "provide[] robust and sufficiently prominent notice to users regarding" Meta Pixel, including a "clear and prominent notice on each web page where [Meta Pixel is] used that links to a clear explanation…that third parties, including Meta, may…collect or receive information from [Tufts's] websites…and use that information to…target and deliver ads"—directions Tufts ignored ¶ 48. Google likewise required website owners to fully disclose its tracking technologies—requirements Tufts ignored. ¶ 58. Tufts also ignored directions **not** to use tracking technologies on pages with health information. ¶ 48.

[4] The SAC presents advertisements that show how Tufts exploited patient communications about particular treatments and conditions to target patients with advertising. ¶¶ 56, 102-04.

[5] Tufts's citation (MTD Mem. at 1) to ¶ 4 of the SAC to criticize what it calls "bare assertions" is particularly remarkable, given that paragraph expressly cross-references 57 other paragraphs in which Plaintiff presents detailed factual allegations supporting what Tufts describes as a "bare assertion." The same goes for other arguments Tufts makes —for example, that allegations regarding the disclosure of personal health information on public webpages are "conclusory," citing only ¶ 1, ignoring the dozens of paragraphs which show how personal health information, including patient status, was disclosed. ¶¶ 80-139.

providing little to no discussion of the new allegations. Tufts describes Plaintiff's allegations on the crime-tort exception as "bare assertions" and "conclusory allegations" (MTD Mem. at 1), ignoring the deep, detailed factual support Plaintiff has added relevant to the crime-tort exception.

Plaintiff's new allegations plausibly (and, in fact, strongly) support the inference that Tufts intercepted communications for the purpose of engaging in acts that are, as shown below, both criminal and tortious—namely, the disclosure of sensitive patient communications to technology and advertising companies, and the subsequent exploitation of those communications for commercial and marketing purposes.[6] In other words, Plaintiff in her SAC alleges facts showing that Tufts's "purpose [was] to do X," and "X is a crime or a tort," and therefore "the crime-tort exception to the one-party consent rule applies." *McManus,* 2025 U.S. Dist. LEXIS 191546, at *8 & n.1.

c. Tufts Intercepted Communications for the Purpose of Committing Acts Which Violated HIPAA.

HIPAA protects, among other things, "information…that relates to…the provision of health care to the individual [and] for which there is a reasonable basis to believe can be used to identify the individual." 45 C.F.R. § 160.103. HIPAA prohibits healthcare providers from "knowingly 'disclos[ing] individually identifiable health information to another person'" and "provides additional penalties when a covered entity discloses the information with the intent to use it 'for commercial advantage [or] personal gain.'" *Doe v. Wellstar Health Sys., Inc.*, 2025 U.S. Dist. LEXIS 209327, at *21-22 (N.D. Ga. Aug. 21, 2025); 42 U.S.C. §1320d-6(b)(3). Under HIPAA, "information which connects an individual with a healthcare provider 'is indicative that an individual has received or will receive medical services,'" is protected

[6] Tufts's "purpose" in intercepting communications is a question of its state of mind. Fed. R. Civ. P. 8(a)(2)'s liberal pleading standard applies to all allegations here, including state of mind. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1005 (N.D. Cal. 2024) (applying Rule 8 to ECPA). Rule 8's notice pleading "does not demand a plentitude of factual content" and "[f]or pleading purposes, circumstantial evidence often suffices to clarify a protean issue such as an actor's motive or intent," given "[d]irect evidence" on state of mind is "rare." *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528, 535-36 (1st Cir. 2023) (reversing dismissal where district court imposed too stringent a pleading standard on state of mind); *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 49 (1st Cir. 2012) ("paucity of direct evidence" on state of mind not "fatal," given "smoking gun" proof on state of mind "is rarely available" at pleading stage). Even in cases involving fraud (this is not such a case), the rules permit "conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b).

information, as it "'relates to the individual's past, present, or future health or health care.'" *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 792 (N.D. Cal. 2022) (quoting *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates,* U.S. Dep't of Health and Human Services (Dec. 1, 2022)). The prevailing view is that the crime-tort exception is satisfied when a hospital uses tracking technologies to intercept patient communications for the purpose of disclosing information in violation of HIPAA.[7]

Tufts emphasizes that its website is a "public website," arguing that fact forecloses any inference that Tufts intercepted communications for the purpose of committing acts that violate HIPAA. MTD Mem. at 6-7. "Whether [protected health information] was provided through a public webpage or patient portal is 'immaterial.'" *I.T. v. Choicepoint LLC*, 2025 U.S. Dist. LEXIS 169202, at *23 (W.D. Wash. Aug. 29, 2025). Thus, disclosures of the content of patient communications violate HIPAA when they reveal patient status—such as when "a user is about to log in to a healthcare provider's website"—even when the interception occurs on a publicly accessible page. *Meta Pixel Healthcare*, 647 F. Supp. 3d at 793. The vast majority of courts are in accord.[8]

---

[7] *See, e.g., Vriezen v. Infinite Health Collaborative, P.A.*, 2025 U.S. Dist. LEXIS 211708, at *19 (D. Minn. Sep. 30, 2025) ("plaintiffs plausibly alleged the crime-tort exception based on HIPAA violations); *Wellstar*, 2025 U.S. Dist. LEXIS 209327, at *22 ("Plaintiffs allege that Defendant captured and transmitted their PII and PHI to third parties without their consent and in violation of Defendant's own privacy policies and HIPAA… Plaintiffs sufficiently allege that Defendant intercepted the communications for a criminal or tortious purpose"); *Brahm v. Hosp. Sisters Health Sys.*, 2024 U.S. Dist. LEXIS 114827, at *13-16 (W.D. Wis. June 28, 2024) (crime-tort exception met where "defendants intercepted patients' electronic communications for the purposes of making disclosures that violated HIPAA"); *Lugo v. Inova Health Care Servs.*, 2025 U.S. Dist. LEXIS 55590, at *16-22 (E.D. Va. Mar. 25, 2025) (following "[c]ourts around the country [that] have permitted the invocation of the ECPA's crime-tort exception when plaintiffs allege violations of HIPAA"); *R.S. v. Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338, at *13-14 (C.D. Cal. Jan. 13, 2025) ("intent to disclose [HIPAA protected] information" sufficient); *A.J. v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480, at *3-4 (N.D. Cal. Oct. 25, 2024) (sustaining claim based on purposeful disclosure of communications protected by HIPAA).

[8] *Kurowski v. Rush Sys. for Health*, 2024 U.S. Dist. LEXIS 126837, at *17-20 (N.D. Ill. July 18, 2024) (disclosures that reveal "status as a…patient" violated HIPAA); *Hartley v. Univ. of Chi. Med. Ctr.*, 2025 U.S. Dist. LEXIS 194466, at *7-15 (N.D. Ill. Oct. 1, 2025) ("act of logging into a healthcare provider's patient portal when combined with individual identifiers such as an IP address or a Facebook ID, can reveal patient status," and "patient status…constitutes individually identifiable health information," even in absence of allegations regarding the use of tracking technologies "within" a patient portal); *Allen v. Midwest Express Care, Inc.,* 2025 U.S. Dist. LEXIS 151237, at *4-8 (N.D. Ill. Aug. 6, 2025) (upholding ECPA claim, reasoning that patient status and information on health conditions and treatments are HIPAA-protected information, and

Indeed, Tufts's own authorities confirm that public webpages reflecting patient status reveal private health information. MTD Mem. at 6, 8 citing *Nienaber v. Oberlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1081-82 (W.D. Wash. 2024) ("As other courts within this Circuit have acknowledged, the transmission of information submitted to a private patient portal—such as a user clicking on the 'log in' button on that webpage—reveals patient status, which in and of itself is protected health information."); *K.L. v. Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *11 (D. Or. Nov. 14, 2024) (affirming same rule).

The SAC presents substantial allegations showing Tufts used tracking technologies to disclose to Google and Facebook and later exploit protected patient status. Tufts deployed tracking technologies on its patient portals, disclosing Plaintiff's patient status to Google and Facebook. ¶¶ 131-39. Tufts also placed tracking technologies on other pages that reveal patient status, including appointment request pages (¶¶ 110-15), bill payment page (¶¶ 123-26), medical records request page (¶¶ 127-30), and searchable doctor database (which Plaintiff used) (¶¶ 120-23). These allegations, together with Plaintiffs' allegations showing Tufts was on notice and knew full well of the privacy implications of the tracking technologies on pages designed for patients (¶¶ 41-43, 46-48, 52-59, 112, 114, 121-22, 125-26, 128-30), readily support the inference that Tufts's purpose in deploying tracking technologies was to disclose patients' status as Tufts patients, a criminal act under HIPAA.

In addition to patient status, Tufts configured its website to also disclose to Google and Facebook other sensitive information, including information about Plaintiff's doctors and her specific medical

interceptions of such information support the ECPA's crime-tort exception); *Lugo,* 2025 U.S. Dist. LEXIS 55590, at *16-22 (crime-tort exception applied where plaintiffs allege that their "status as medical patients" was revealed); *Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197, at *23-24 (W.D. Wash. Nov. 14, 2024) (Costco collected HIPAA-protected "information about when [they] click[ed] a 'Refill Prescription' button that prompts a "Sign In" page,' which 'relate[d] to' [their] individualized health conditions even though they d[id] not allege that their data were collected while they were logged into their patient portals")*; Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1124 (S.D. Cal. 2023) ("navigating to…a healthcare provider's patient portal differs from…general internet browsing…because it conveys a user's patient status"); *M.R. v. Salem Health Hosps. & Clinics*, 2024 U.S. Dist. LEXIS 155513, at *10-11, 16-17 (D. Or. Aug. 28, 2024) (interceptions disclosing "status as a patient" through "financial assistance form" violated HIPAA); *Kane v. Univ. of Rochester*, 2024 U.S. Dist. LEXIS 48515, at *5-7, 16 (W.D.N.Y. Mar. 19, 2024) (patient status captured, and crime-tort exception applies, where interceptions showed individuals had clicked "the 'Schedule an Appointment' button or click[ed] the physician's phone number to schedule an appointment").

conditions and treatments. ¶¶ 16-17, 100-09, 120-23. Disclosing such communications that reveal information about doctors and conditions violates HIPAA.[9] Such disclosures are particularly problematic here, given that Tufts intended to subsequently exploit the content of the intercepted communications to serve targeted advertisements to patients, including ads Tufts developed to target specific treatments and medical conditions.[10] ¶¶ 47-48, 56-57, 102-04, 106, 108-09, 121-22.

Even if information about doctors and particular conditions were not, on their own, sufficient to be HIPAA-protected, Tufts did not disclose such communications in isolation. Instead, Tufts disclosed that information together with Plaintiff's status as a Tufts patient and information confirming her identity. ¶¶ 16-17, 42-43, 53, 90-93, 96-98, 131-39. These allegations, considered together as they must be, palpably demonstrate a HIPAA violation and support the inference that such acts were Tufts's purpose in deploying tracking technologies.

d. Tufts Intercepted Communications for the Purpose of Committing Acts that are Tortious under Massachusetts Law.

In addition to committing acts that violate HIPAA, Plaintiff alleges additional torts to support her claim that Tufts intercepted communications for the purpose of committing a tortious act. Those torts include invasion of privacy (a tort codified by the MRPA), breach of fiduciary duty, and breach of confidence. ¶¶ 211, 219. Although the precise elements of those torts vary, the improper purpose Plaintiff alleges for each is the same—the intentional disclosure to third parties and subsequent commercial

[9] *Hartley*, 2025 U.S. Dist. LEXIS 194466, at *7-8 ("'find-a-physician'" pages and pages about "providers, conditions, and treatments" may include protected information); *Doe v. Deaconess Ill. Union Cnty. Hosp.. Inc.*, 2025 U.S. Dist. LEXIS 192058, at *27 (S.D. Ill. Sept. 29, 2025) (interceptions of "symptoms, providers, and services" disclosed of HIPAA-protected information); *I.T.*, 2025 U.S. Dist. LEXIS 169202, at *9 (public searches for physicians by particular specialty sufficient to allege information "'about a present medical condition and the provision of medical care covered by HIPAA'") (collecting authorities).

[10] Tufts's authorities on this point do not support the categorical rule it proposes that protected information can never be communicated on a publicly accessible webpage. *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024), does not hold that communications on a "public website" can never reveal PHI. Instead, *Becerra* focused narrowly on a particular combination of information disclosed, limited to an IP address and a page "addressing specific health conditions or healthcare providers." *Id.* at 789, 792, 794-5, 802-03. *Becerra* did not consider other types of pages—such as pages used to navigate to a patient portal, appointment request pages, and bill payment pages, that reflect an individual's status as a patient of a particular medical provider.

exploitation of intercepted patient communications, contrary to Tufts's own published policies and patients' reasonable expectations of privacy. ¶¶ 211, 226-28, 237-39, 256-59. These claims do not require proof of a HIPAA violation and are not even specific to the healthcare industry. Notably, as argued in Section III(B) *infra*, **every** Massachusetts court to have considered those claims in cases involving tracking technologies has affirmed them, even in cases not involving healthcare. Plaintiff's allegations that Tufts's purpose was to engage in actions that were tortious under Massachusetts law, independently of any HIPAA violation, satisfy the crime-tort exception for the ECPA's one-party consent rule.[11]

e. The Court Should Again Reject Tufts's Argument for a "Heightened" Intent Requirement.

Tufts argues that Plaintiff must allege "a specific intent that the Defendant knew its acts were in violation of HIPAA." MTD Mem. at 5 (quoting *Doe v. Genesis Health Sys.*, 2025 U.S. Dist. LEXIS 65328 (C.D. Ill. Mar. 18, 2025)). This standard is inconsistent with the standard the Court adopted in its MTD Decision, which held it is sufficient if Plaintiff alleges Tufts's "purpose was to engage in conduct made impermissible by relevant statutes," and endorsed the *Stein* standard, under which "[a] desire to commit a crime qua crime, or a tort qua tort, isn't necessary." *McManus,* 2025 U.S. Dist. LEXIS 191546, at *8 & n. 1; *see* also § III(A)(1)(a), *supra*.

This Court correctly rejected the minority view of the crime-tort exception, which imposes a heightened willfulness requirement. In *Kurowski*, the court rejected the argument that a defendant must have specific knowledge of illegality. 2024 U.S. Dist. LEXIS 126837, at *10-11. The court noted that the approach, requiring a specific knowledge of illegality, is the exception, not the rule, reserved for circumstances involving "criminal offenses based on highly technical areas of the law," such as tax law.

> The Court sees no persuasive reason to read a heightened willfulness requirement into the crime-or-tort exception…. [T]he "purpose" requirement [of the ECPA] applies to "any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." That sweeps in both sophisticated offenses and straightforward ones.

[11] *Meta Pixel Healthcare*, 647 F. Supp. 3d at 797 ("tort claims may lie against health care providers over their use of the Pixel," and "the crime-tort exception [may] appl[y]" based on such torts); *Jarrell v. Adena Health Sys.*, 2025 U.S. Dist. LEXIS 6169, at *6-13 (S.D. Ohio Jan. 13, 2015) (state law privacy claim satisfies crime-tort exception); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. , 2024) (same).

> Moreover, the Court sees no reason to presume that the *mens rea* requirements of the underlying torts or crimes do not already address concerns about separating innocent from criminal or tortious conduct.

*Id.* at *12-13. *Kurowski, Stein*, and the MTD Decision align with established principles of *mens rea* underlying criminal and tort law. Even for serious crimes, one need not act with a purpose to violate the law (hence the common saying, "ignorance of the law is no excuse"); rather, the relevant "purpose" is to commit the act that is proscribed by law. *E.g.*, Model Penal Code §§ 2.02(2)(a), 2.02(9).[12]

Notably, even if Plaintiff were required to allege Tufts's knowledge of or specific intent to violate HIPAA, Plaintiff has done so. Plaintiff alleges that Tufts was fully aware of its obligations under HIPAA, as reflected in its own public statements and promises not to disclose or use HIPAA-protected information without patient consent. ¶¶ 210-11. Tufts was also aware of the consequences of deploying the tracking technologies on its health-related website. Google and Facebook explicitly required it to obtain consent and warned it not to deploy tracking technologies on healthcare websites, regardless of consent. ¶¶ 41-48, 52-58. Notwithstanding these warnings, Tufts deployed the tracking technologies on its website without patient consent to intercept patient communications and use their contents for its marketing purposes, ¶¶ 5, 8, in violation of HIPAA, ¶¶ 153-156. These detailed allegations are more than sufficient to support the inference that Tufts acted with specific intent to violate HIPAA.

Along the same lines, this Court properly rejected (*McManus,* 2025 U.S. Dist. LEXIS 191546, at *8 & n.1) the argument that Tufts attempts to resuscitate—that its financial motive "contradicts" an assertion of a purpose of committing a criminal or tortious acts. MTD Mem. at 1, 3, 5. Tufts provides no sound reason for the Court to revisit its ruling. As the Court held in *Kurowski*, secretly deploying tracking technologies to improve "profit margins…does not mean [the defendant] didn't also 'consciously desire'

[12] Plaintiffs recognize several district courts have imposed a heightened requirement of an intent to violate the law (MTD Mem. at 8-10), including Judge Stearns in *Goulart v. Cape Cod Healthcare, Inc.*, 2025 U.S. Dist. LEXIS 119435 (D. Mass. June 24, 2025). MTD Mem. at 6. With utmost respect, Judge Stearns's status as a judge in this District confers upon that decision no greater persuasive force than the dozens of decisions that have found allegations similar to those here to be adequate. Judge Stearns's and the other decisions that apply a heightened intent requirement are incorrect. *Kurowski*'s and *Stein's* analyses are better-reasoned and aligned with the ECPA's plain terms.

to make unauthorized disclosures" of patient communications. 2024 U.S. Dist. LEXIS 126837, at *16. This is because "[m]any crimes and torts are motivated by a desire to make money, and it 'defies common sense that a clearly harmful act could escape liability as long as it was done for profit.'" *Id.* (quoting *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 28 (D. Minn. 2024)). Indeed, "[t]he existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime—it was to make money." *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025).[13] Accordingly, Tufts's argument that Plaintiff's allegations financial motives "contradict" criminal or tortious ones is wrong as a matter of law.

f. Plaintiff Alleges Criminal and Tortious Acts Separate from the Violation of the ECPA.

Tufts renews its argument that "the disclosure and interception by third parties through the third-party technology are a single act" and that the crime-tort exception requires that the criminal or tortious act be separate from the act of recording. MTD Mem. at 7-8. Tufts ignores the SAC's allegations, which explain how the disclosures were independent of the interceptions (¶ 71) and identify an additional act—the subsequent use of intercepted communications for marketing purposes, which supports criminal and tort liability and is plainly independent from the act of interception (¶¶ 4, 6-7, 160, 211-12). Plaintiff does not allege that Tufts's "interception itself violated HIPAA"; rather, as in *R.S.*, she asserts "the violation stems from [Tufts's] intentional *disclosure* of the collected Private Information, which constitutes a 'further impropriety' independent and separate from [Tufts's] *interception*." *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *16 (emphasis in original). The separate and independent requirement is met where the defendant "not

[13] S*ee also Deaconess*, 2025 U.S. Dist. LEXIS 192058, at *32 ("fact that Deaconess only sought to use the information for marketing purposes does not remove the case from the purview of the crime-tort exception."); *Cooper v. Mt. Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 383 (S.D.N.Y. 2024) ("Mount Sinai's broad theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong."); *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *18-19 ("Court joins those courts that have held a monetary purpose does not insulate a party from liability under the ECPA."); *In re BetterHelp, Inc. Data Disclosures Cases*, 2024 U.S. Dist. LEXIS 124321, at *15 (N.D. Cal. July 15, 2024) ("trying to make money" consistent with criminal purpose); *Castillo*, 2024 U.S. Dist. LEXIS 207197, at *18-19 (same); *R.C.,* 733 F. Supp. 3d at 901 ("[E]ven where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply").

only intercepted their communications … by using data tracking tools, but also transmitted the information to third parties such as Meta and Google." *Wellstar*, 2025 U.S. Dist. LEXIS 209327, at *20-21 (citing cases).[14] Such disclosures separately violate HIPAA **and** are torts distinct from the interception.[15] The SAC's allegations that Tufts disclosed Plaintiffs' communications, including private healthcare information, to Google and Facebook satisfy the separate-and-independent requirement.

Apart from the tortious and criminal disclosures (which are separate from the interception), Plaintiff additionally alleges (and bolsters her allegations in the SAC) that Tufts's intended **subsequent use** of intercepted communications for marketing purposes, including targeted advertising, is a separate act from interception. ¶¶ 3, 4, 7, 42, 46-48, 52-57, 102-04, 106, 108, 112, 114, 116, 119, 121, 125, 126, 128, 130, 136, 137, 139. Such allegations of subsequent commercial exploitation of intercepted communications independently support the crime-tort exception, apart from the earlier disclosure.[16]

14 *See also I.T.*, 2025 U.S. Dist. LEXIS 169202, at *22-23 ("Multiple courts have rejected this argument, concluding that an intent to disclose or use private information in violation of HIPAA is distinct from the interception of the private information."); *Deaconess Ill.*, 2025 U.S. Dist. LEXIS 192058, at *31 ("The disclosure, not the intercept itself, is the secondary act that supports the crime-tort exception."); *Hartley*, 2025 U.S. Dist. LEXIS 194466, at *25 (""[a] disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA""); *Juenger*, 2025 U.S. Dist. LEXIS 193628, at *25-26 ("disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA…. The disclosure, not the interception itself, is the secondary act that supports the crime-tort exception"); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849-50 (E. D. Cal. June 9, 2025) ("'intentional disclosure' of private information constituted a '"further impropriety" independent and separate from [the] interception' of private information"); *Stein*, 2025 U.S. Dist. LEXIS 31273, at *10-11 ("disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA."); *R.S.* 2025 U.S. Dist. LEXIS 6338, at *16 (intentional disclosure of the collected Private Information "constitutes a 'further impropriety' independent and separate from … interception"). The cases Tufts cites (MTD Mem. at 8) do not grapple with allegations of disclosure and subsequent use that Plaintiff presents here and represent the distinct minority view.

15 *Jarrell*, 2025 U.S. Dist. LEXIS 6169, at *8-9 (common law privacy claim "constitutes an independent tort…that…arises not from the mere *interception* of [communications] but from *disclosure* of that…material to third parties"); *Smith v. Rack Room Shoes, Inc.*, 2025 U.S. Dist. LEXIS 149750, at *13-14 (N.D. Cal. Aug. 4, 2025) (disclosure of personally identifiable information "in contradiction [to] the commitments it made in its privacy policy…plausibly constitute[s] a further invasion of privacy beyond the act of intercepting").

16 *Castillo*, 2024 U.S. Dist. LEXIS 207197, at *17 (crime-tort exception met where "Plaintiffs allege that Costco not only intercepted their data, but also used their data to generate targeted advertisements for financial gain"); *Lugo*, 2025 U.S. Dist. LEXIS 55590, at *24 (Plaintiff's allegations that hospital intercepted and disclosed patient's personal health information in violation of HIPAA to increase the success of hospital's INOVA's marketing are sufficient to invoke the crime-tort exception to the ECPA"); *Kurowski v. Rush Sys. for Health*, 2023 U.S. Dist. LEXIS 219895, at *6-9 (N.D. Ill. Dec. 11, 2023) (crime-tort exception satisfied after plaintiff

HIPAA prohibits not only the disclosure of protected communications but also "any **use**…of protected health information for marketing." 45 C.F.R. § 164.508(a)(3)(i) (emphasis added).[17] Indeed, HIPAA imposes additional penalties when a covered entity discloses the information with the intent to use it "'for commercial advantage [or] personal gain.'" *Wellstar*, 2025 U.S. Dist. LEXIS 209327, at *21-22. Similarly, as argued below in Section III(B)(2), *infra*, a fiduciary's commercial exploitation of information entrusted to it breaches its duty owed to the principal. Accordingly, even if the court adopts the minority position that a tortious **disclosure** is not separate from the interception, Plaintiff still pleads a separate act: the subsequent **commercial exploitation** of the intercepted communications.

g. Conclusion on the Crime-Tort Exception

For the reasons argued above, the SAC's allegations go far beyond those other courts have found sufficient. Given her detailed allegations supporting the inference that Tufts intercepted communications for the purpose of committing criminal and tortious acts, there is no reason this Court should depart from the pronounced recent trend of courts affirming ECPA claims. *See, e.g., Williams*, No. CV-23-00434 (D. Ariz. Aug. 19, 2025) (filed at Doc. No. 23-1) at 6-7 (sustaining ECPA claims after previously granting motion to dismiss ECPA claims without prejudice, after the plaintiff amended to add allegations on crime-tort exception like those here); *Jarrett*, No. 1:23-cv-01261 (S.D. Ind. Aug. 8, 2025) (filed at Doc.

---

amended to add allegations that intercepted "information was, in turn, used…to target her with particular advertising" based on intercepted communications); *Gay v. Garnet Health*, 2024 U.S. Dist. LEXIS 168515, at *8-10 (S.D.N.Y. Sept. 16, 2024) ("[t]he Complaint sufficiently alleges an independent action secondary to the interception," the "use[]" of "the content of [the] communications" for "targeted ads on Facebook keyed to…confidential health conditions") (collecting and analyzing authorities); *Mekhail*, 726 F. Supp. 3d at 928-29 (allegations regarding subsequent acts to "monetize" intercepted communications sufficient to support crime-tort exception); *Cooper*, 742 F. Supp. 3d at 383 (crime-tort exception met where hospital intercepted communications to later "profit commercially from exploiting Private Information, in violation of HIPAA"); *Smith v. Loyola Univ. Med. Ctr.*, 2024 U.S. Dist. LEXIS 119995, at *18 (N.D. Ill. July 9, 2024) (communications used for "targeted marketing campaigns").

[17] *Health Information Privacy*, U.S. Dept. of Health and Human Services (July 26, 2013), available at https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/marketing/index.html ("With limited exceptions, the [Privacy] Rule requires an individual's written authorization before a use or disclosure of his or her protected health information can be made for marketing . . . Simply put, a covered entity may not sell protected health information to a business associate or any other third party for that party's own purposes. Moreover, covered entities may not sell lists of patients or enrollees to third parties without obtaining authorization from each person on the list.").

No. 23-2) at 26 (sustaining ECPA claims based on HIPAA violation after having previously found inadequate allegations relating to HIPAA, and the plaintiff amended to add allegations like those here).

2. Plaintiff Alleges the Interception of the Contents of Her Communications

Tufts argues Plaintiff alleges no "content" of any intercepted communication, copying the same argument it made before, MTD Mem. at 9-10, while ignoring the SAC's allegations on this precise issue.

Tufts argues that Plaintiff alleges an interception only of "record information.,[18] and not "contents." MTD Mem. At 9. The ECPA's "contents" element does **not** require an interception to capture the entirety of the communication. Instead, it is sufficient if the interception captures "**any information concerning the substance, purport, or meaning**" of the underlying communication. 18 U.S.C. § 2510(8) (emphasis added). This flexible definition imposes liability even where only part of a communication's substance is revealed. The First Circuit has affirmed that "contents" includes partial information about a communication, emphasizing that the "federal wiretap statute[] broadly defines 'contents.'" *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 18 (1st Cir. 2003) (quoting *Nix v. O'Malley*, 160 F.3d 343, 346 n.3 (6th Cir. 1998) (the broad "contents" element encompasses "more than verbatim reproductions of conversations"))

Given the ECPA's liberal definition of "contents," courts addressing the same conduct sustain the sufficiency of Plaintiff's "contents" allegations in multiple respects. First, a communication that reveals an individual's status as a patient of a particular healthcare provider reveals "the substance" of an electronic communication.[19] Plaintiff added allegations in her SAC on precisely this issue, showing how Tufts deployed tracking technologies on its patient portals, revealing Plaintiff's status as a Tufts patient (¶¶ 17(i), 131-39, 204). Tufts disclosed patient status on several other pages: the appointment request

[18] It appears Tufts refers to "record information" as information used merely to route communications, similar to a phone number, in contrast to information about the substance of communication. MTD Mem. at 9 (citing *Google*, 806 F.3d at 136).

[19] *Meta Pixel Healthcare*, 647 F. Supp. 3d at 795-96 ("log-in buttons" count as "contents" because they reveal patient status); *M.G.*, 2024 U.S. Dist. LEXIS 166534, at *12 ("log-in buttons" revealing patient status are "contents"); *Castillo,* 2024 U.S. Dist. LEXIS 207197, at *15 (URLs revealing "patient status" are "contents").

page (¶¶ 110-16), searchable doctors database (¶¶ 117-22), bill payment page (¶¶ 123-27), and the medical records request page (¶¶ 127-30). These allegations are more than sufficient on the "content" element.

Second, Plaintiff details in the SAC how Tufts configured its website and the tracking technologies to intercept and disclose to Google and Facebook descriptive URLs,[20] which revealed the substance of patient communications, such as information about doctors, medical conditions, and treatments. (¶¶ 65, 101, 105, 107, 111, 113, 115, 118, 121-22, 124, 126, 128-29, 136-37). Although Tufts tries to create the misimpression that URLs can never disclose "contents," such a simplistic, "categorical assessment that [URLs] *never* 'concern[] the substance, purport, or meaning' of a communication misses the mark" because "[o]ften, a location identifier [i.e., a URL]…comprises part of a communication's substance," *In re Google Inc.*, 806 F.3d 125, 136 (3d Cir. 2015). Where descriptive URLs are used, "the categories of content and non-content [record information] overlap and are not mutually exclusive." *Doe v. Post Acute Med., LLC*, 2025 U.S. Dist. LEXIS 26667, at *13 (M.D. Pa. Feb. 14, 2025).[21] Plaintiff alleges in detail how Tufts configured its website to disclose descriptive URLs, webpage titles, and other metadata revealing information about Plaintiff's doctors, her specific medical conditions and treatments, and similar information. ¶¶ 16, 17(ii, iii), 65, 100-09 120-22, 204. These allegations indicate disclosure of "contents," particularly when combined with Plaintiff's identity and patient status.

[20] URLs are Uniform Resource Locators, which operate as addresses through which a website user can request and access a particular webpage. ¶ 65. Although URLs operate as addresses on the world wide web, they can **also** relay information about the substance of the webpage. For example, Tufts configured the URLs on its pages for specific medical conditions and procedures to reveal the name of the condition or procedure about which a patient requests information—such as https://www.tuftsmedicalcenter.org/patient-care-services/Departments-and-Services/**Obstetrics-and-Gynecology**/Overview. *Id.* URLs that reveal the substance of a website communication are called descriptive URLs. *Id.*

[21] *Castillo* 2024 U.S. Dist. LEXIS 207197, at *15 (URLs disclosing "underlying health conditions" count as "contents"); *M.G.*, 2024 U.S. Dist. LEXIS 166534, at *12 (same); *Meta Pixel Healthcare*, 647 F. Supp. 3d at 796 ("descriptive URLs" are "'contents'"); *R.C.*, 733 F. Supp. 3d at 902 (same); *Yoon v. Meta Platforms, Inc.*, 2024 U.S. Dist. LEXIS 234457, at *13-15 (N.D. Cal. Dec. 30, 2024) (same); *McCulley v. BannerHealth*, 2024 U.S. Dist. LEXIS 85232, at *10 (D. Ariz. May 10, 2024) (descriptive URLs that "include[] search terms for specific doctors and medical treatments… go[] beyond cursory identifying information and thus plausibly can be considered the 'contents' of a communication under the ECPA"); *Smith*, 2024 U.S. Dist. LEXIS 119995, at *15-16 (URLs that reveal "specific medical conditions and medical providers" are "contents" under ECPA).

B. *Plaintiff Adequately Alleges Her State Law Claims.*

In its MTD Decision, the Court never addressed the substance of Plaintiff's state law claims because it declined to exercise supplemental jurisdiction over them. *McManus*, 2025 U.S. Dist. LEXIS 191546, at *8. In *Vita v. New England Baptist Hosp.*, a case involving the same conduct as alleged here, the SJC observed that the Legislature provided various

> statutory and common-law causes of action to address allegedly false, misleading, or deceptive activity on the Internet, including statutory and common-law protections more directly applicable to misrepresentations or misuse of private medical information.

494 Mass. 824, 849-50 (2024) (citing claims for negligence, breach of implied contract, unjust enrichment, breach of fiduciary duty, and right to privacy under the MRPA). Tufts reprises its prior arguments on Plaintiffs' state law claims, ignoring Massachusetts case law and Plaintiff's well-pled allegations in the SAC. Massachusetts courts considering these state-law claims in the context of the use of tracking technologies are unanimous in affirming them. Tufts offers no reason for this Court to depart from such established authority.

1. <u>Plaintiff States a Claim under the MRPA</u>

The MRPA, M.G.L. c. 214 § 1B, codifies and broadens what, in most jurisdictions, is a common law tort of invasion of privacy. *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 409 Mass. 514, 519 (1991) (legislature "framed the statute in broad terms so that the courts can develop the law thereunder on a case-by-case basis"). This statutory tort includes claims for intrusion upon seclusion and disclosure of private facts,[22] torts well-known at common law that the Massachusetts Supreme Judicial Court ("SJC") has held are included within the MRPA's "broad" terms. *Polay v. McMahon*, 468 Mass. 379, 382-84 (2014).

[22] Tufts argues that "disclosure of private facts" requires a "public disclosure," based on out-of-state authorities. MTD Mem. at 10. The MRPA does not require public dissemination, as the MRPA "depart[s]…from the Restatement's concept of the tort" in this respect. *Bratt v. Int'l Bus. Machines Corp.*, 392 Mass. 508, 519 & n.15 (1984); *Tower v. Hirschhorn*, 397 Mass. 581, 586 (1986) ("success of [an MRPA claim] is not dependent on communication of the personal matters disclosed to the public at large."). In any event, other jurisdictions with more stringent standards affirm such claims for the same conduct. *Brahm,* 2024 U.S. Dist. LEXIS 114827, at *19-21 (affirming privacy claim based on secret use of tracking technologies); *Doe v. Medstar Health, Inc.*, 2020 Md. Cir. Ct. LEXIS 139, at *5 (Cir. Ct. Aug. 5, 2020) (same); *Lamarr v. Goshen Health Sys., Inc.*, 2024 Ind. Super. LEXIS 107, at *17-18 (Super. Ct. Oct. 3, 2024); *R.C.*, 733 F. Supp. 3d at 888-95.

Tufts's motion avoids the elephant in the room—or perhaps five elephants: the five judges who each independently affirmed MRPA claims for the same conduct Plaintiff alleges. Four Massachusetts Superior Court justices and one federal judge have concluded that the surreptitious use of tracking technologies states an MRPA claim.[23] **There is no contrary authority**.

Tufts's specific arguments on the MRPA each lack merit and ignore the SAC's allegations. First, Tufts copies its prior argument that the SAC is "devoid of any factual allegations regarding what information of the Plaintiff's was allegedly disclosed." MTD Mem. at 10. That argument was wrong before, but it is palpably wrong now, given SAC's allegations, which detail the specific pages Plaintiff visited and explain precisely how her communications were intercepted. ¶¶ 16-18, 24, 100-09, 120-22, 131-39.[24] The SAC includes new allegations explaining how Tufts intercepted, disclosed to Google and Facebook, and exploited for targeted advertising Plaintiff's status as a Tufts patient, including through interceptions made on the patient portal, ¶¶ 24, 130-39, together with information about Plaintiff's doctors and specific medical conditions, ¶¶ 100-09, 120-22.[25]

Plaintiff's allegations fit comfortably within the MRPA's scope. The SJC has confirmed that allegations of "electronic surveillance" state an MRPA claim. *Polay*, 468 Mass. at 382-84 (2014). Ignoring on-point Massachusetts authority, Tufts relies upon out-of-state cases construing the common law tort

---

[23] *Doe v. Emerson Hosp.*, 2023 Mass. Super. LEXIS 673, at *11-12 (Super. Ct. Nov. 22, 2023); *Doe v. Bos. Med. Ctr. Corp.*, 2023 Mass. Super. LEXIS 674, at *11-12 (Super. Ct. Sep. 14, 2023); *Alves v. BJ's Wholesale Club, Inc.*, 2023 Mass. Super. LEXIS 59, at *13-17 (Super. Ct. June 21, 2023); *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 151-52 (D. Mass. 2024); *Doe v. Partners Healthcare Sys.*, No. 1984CV01651-BLS1 (Mass. Super. Ct. Nov. 20, 2020) at 44 (Doc. 18-2); *see also Vita*, 494 Mass. at 849-50 (MRPA claim "cognizable").

[24] The allegations regarding the disclosure and commercial exploitation of the combination of highly sensitive patient communications **and** identifying information, distinguish this case from those Tufts cites that disclosed one or the other. MTD Mem. at 11 citing *Hammerling v. Google*, 615 F. Supp. 3d 1069, 1089-90 (N.D. Cal. 2022) (tracking of app usage of Android phones; no patient communications involved); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (similar for iPhones).

[25] Plaintiff does not include in the SAC the actual names of her doctors or medical conditions, but such information is not required. *Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1004 ("Plaintiffs do not need to plead the specific and presumably highly sensitive contents of the communications they say were intercepted in order to plausibly allege that interception occurred"); *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12 (rejecting argument that complaint "reveals little about the information that Plaintiff entered on its website") (citing *Bos. Med. Ctr.*, 2023 Mass. Super. LEXIS 674).

for intrusion upon seclusion. Tufts argues that "public browsing data" is beyond the MRPA's scope because it is not sufficiently "personal or intimate in nature." MTD Mem. at 10. But, per the SJC's decision in *Polay*, the MRPA is broader and applies even where "an individual's conduct is observable by the public" if the "electronic surveillance" is contrary to an individual's "reasonable expectation of privacy." *Id.* at 384. Every Massachusetts court to apply *Polay* to the same conduct as here has found that *Polay* supports a claim. *Bos. Med. Ctr.*, 2023 Mass. Super. LEXIS 674, at *11-12; *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12; *Alves*, 2023 Mass. Super. LEXIS 59, at *13-17.

Tufts also ignores an additional important fact—its promises to patients that they may visit the website "anonymously," that Tufts does "not collect any identifiable information," and that Tufts "will never sell or rent any identifiable information to third-party vendors." ¶¶ 29-35. These false promises support Plaintiff's invasion of privacy claim independent of the subject matter of the communication. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (affirming intrusion upon seclusion claim where "tracking" contradicted "privacy disclosures"); *Google*, 806 F.3d at 150-52 (reversing dismissal of intrusion upon seclusion claim where Google's practices contradicted its own disclosures).[26] Indeed, *Alves* affirmed such a claim against an ordinary retailer (BJ's Wholesale Club), underscoring that the MRPA applies broadly to secret interceptions of communications that are contrary to a company's privacy policy promises. 2023 Mass. Super. LEXIS 59, at *13-17.

2. <u>Plaintiff States a Claim for Breach of Fiduciary Duty</u>

Tufts argues that Plaintiff's communications with Tufts through its website do not sufficiently relate to any fiduciary duty Tufts owes to its patients. Tufts cites **<u>no</u>** factually pertinent authority on this

[26] *Wiley v. Universal Music Grp., Inc.*, 2025 U.S. Dist. LEXIS 261303, at *8-15 (N.D. Cal. Dec. 17, 2025) (affirming invasion of privacy claim because defendant made "promise[s] that users would not be tracked"; expressly distinguishing Tufts' authorities, *In re iPhone* and *Hammerling*, on this basis); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 864-65 (C.D. Cal. 2024) (allegations that tracking technologies implemented "surreptitiously" support finding of invasion of privacy); *Meta Pixel Healthcare*, 647 F. Supp. 3d at 799-800 (defendant's violation of own "policies…tend[s] to support" a "fairly strong" intrusion claim); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1076 (N.D. Cal. 2021) (intrusion claim appropriate where company's "privacy disclosures at the time allegedly failed to acknowledge [the] tracking …[and] suggest[ed] that users' information would not be tracked"); *Medstar*, 2020 Md. Cir. Ct. LEXIS 139, at *6 (affirming claim where tracking technologies contradicted "express promises of privacy to patients").

argument.[27] MTD Mem. at 11-13. All the factually apposite authority under Massachusetts law rejects Tufts's position. As the court held in *Tenet Healthcare*, a "fiduciary relationship exists between healthcare providers and patients," and therefore, a patient "states a viable claim of breach of fiduciary duty against her healthcare provider for disclosing her Private Information." 731 F. Supp. 3d at 151. Similarly, in *Emerson*, the court, rejected the argument that patient communications on a hospital's website are not sufficiently related to the fiduciary doctor/patient relationship. 2023 Mass. Super. LEXIS 673, at *5-7. Every other court to have considered a fiduciary duty claim under Massachusetts law, based on surreptitious use of tracking technologies, has sustained such a claim.[28]

Furthermore, despite Plaintiff's clear allegations in the SAC that the fiduciary claim arises not only from the disclosure of patient communications but also Tufts's subsequent commercial exploitation of those communications (¶ 239; *see also* ¶¶ 17, 102-04, 106, 108-09, 120-22, 131-39), Tufts disregards those allegations. Those allegations are significant: a fiduciary's commercial exploitation of information entrusted to it additionally breaches the fiduciary duty it owes to its principal, apart from any disclosure.[29]

Tufts's focus on whether Plaintiff's communications "contain IIHI" (MTD Mem. at 12)—as defined by HIPAA—ignores that Plaintiff's claim does not depend on a HIPAA violation. ¶¶ 234 ("include[ing] but [] not limited to her Private Information"), 236, 237, 239. As Judge Davis explained in

27 Its primary authority on this issue—*Korper v. Weinstein*, 57 Mass. App. Ct 433 (App. Ct. 2003) is distant from the facts here; the conduct giving rise to purported liability—a patient-physician affair—had no logical connection to the fiduciary relationship. That is not so here, given the detailed allegations regarding Plaintiff's communications with Tufts that reveal her status as a Tufts patient and information about her doctors and conditions. ¶¶ 16-17, 100-09, 120-22, 131-39, 234, 236-39.

28 *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *10-12 (sustaining breach of fiduciary duty claim under Massachusetts law).; *see also Vita*, 494 Mass. at 849-50 (fiduciary duty claim "cognizable" where "hospital website allegedly tracked and shared with third parties plaintiff's website browsing activities"). For cases affirming such claims under other states' law, *see Brahm*, 2024 U.S. Dist. LEXIS 114827, at *17-19 (fiduciary duty breached by eavesdropping through tracking technologies); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *22-24 (same); *Cooper*, 742 F. Supp. 3d. at 385-86 (same).

29 Restat. 3d of Agency, § 8.05 (fiduciary owes duty "not to use…confidential information of the principal for the [fiduciary's] own purposes"); *United States v. O'Hagan*, 521 U.S. 642, 652 (1997) ("[A] fiduciary's undisclosed, self-serving use of a principal's information" for the fiduciary's financial interests is a "breach of a duty of loyalty and confidentiality"); *SEC v. Willis*, 787 F. Supp. 58, 61-62 (S.D.N.Y. 1992) (when "patient…entrusts [a fiduciary] with information," fiduciary "becomes duty-bound not to appropriate the [information] for his own use").

rejecting a similar argument, "HIPAA is a bit of a red herring in this proceeding and in these arguments…. I'm not persuaded that HIPAA really has much of a role to play in the analysis that I have to undertake." *Partners Healthcare*, No. 1984CV01651-BLS1 (Mass. Super. Ct. Nov. 20, 2020) at 39 (filed at Doc. 18-2).

Finally, the only claim now before the Court is Plaintiff's claim, and Plaintiff was a Tufts patient. ¶¶ 16-17. Tufts's speculation that **other** visitors to the Tufts website were not patients is beside the point; as to Plaintiff, Tufts indisputably intercepted, disclosed, and commercially exploited Plaintiff's patient communications, including those on the patient portal. In any event, "Massachusetts... law…recognize[s] that an existence of a fiduciary duty is not confined to formalistic 'labels of 'parties.'" *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *10 (citing *Baker v. Wilmer Cutler Pickering Hale & Dorr LLP*, 91 Mass. App. Ct. 835, 845-46 (App. Ct. 2017)); *see also* ¶ 234 (clarifying fiduciary duty not limited to physician-patient relationship but arises also from Plaintiff reposing confidences with Tufts).

3. Plaintiff States a Claim for Breach of Confidence

Tufts's only argument on Plaintiff's claim for breach of confidence is that it is "unaware of any Massachusetts court" recognizing such a claim and that it duplicates Plaintiff's fiduciary duty claim. MTD Mem. at 17. Tufts's professed unawareness is curious, given Plaintiff identified in response to the last motion to dismiss the SJC's holding "a duty of confidentiality arises from the physician-patient relationship, and that a violation of that duty resulting in damages, gives rise to a cause of action sounding in tort[.]" *Alberts v. Devine*, 395 Mass. 59, 68-69 (1985). Moreover, the SJC did not say it was merely applying a claim for breach of fiduciary duty; it instead created a new cause of action. *Id.*[30]

4. Plaintiff States a Claim for Negligence

Plaintiffs also state a claim for negligence. Massachusetts courts have affirmed negligence claims on the same conduct Plaintiff alleges here.[31] Tufts's arguments (MTD Mem. at 13-15) also lack merit:

[30] *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *10-12 (affirming breach of confidence claim under Massachusetts law in addition to breach of fiduciary duty claim); *Cooper*, 742 F. Supp. 3d at 385-86 (rejecting argument that breach of confidence claim is necessarily duplicative of breach of fiduciary duty claims).

[31] *Vita*, 494 Mass. at 849-50 (negligence claim "cognizable" based on undisclosed use of tracking

***Duty.*** Plaintiff's negligence allegations properly draw upon statutes to inform the scope of duty (together with professional standards) (¶¶ 176-81, 245-47), not a "*per se*" duty. *Bennett v. Eagle Brook County Store, Inc.*, 408 Mass. 355, 358-59 (1990).[32]

***Breach.*** Even though Plaintiff **does** allege a HIPAA violation (§ III-A-1-c, *supra*), its negligence claim does not depend on one. ¶¶ 242-47. There is no basis to hold that the Massachusetts negligence law should be limited to HIPAA violations.

5. Plaintiff Sufficiently Alleges Damages.

Tufts argues **only** as to the claims for breach of fiduciary duty and negligence that Plaintiff fails to allege damages. MTD Mem. at 15-17. Tufts ignores the substantial additional allegations Plaintiff adds to her SAC, specifically on damages. ¶¶ 182-90. That Plaintiff has not yet quantified damages or presented expert testimony on value does not matter. *Lee v. Conagra Brands, Inc.,* 958 F.3d 70, 80-81 (1st Cir. 2020) (plausible, even if general, allegations of benefit-of-the-bargain damages at pleadings stage sufficient). Courts considering similar allegations have affirmed their sufficiency. *Emerson*, 2023 Mass. Super. LEXIS 673, *5 (allegations that "private medical information was disclosed to Facebook" and defendant "and Facebook monetized [plaintiff's] personal health information without compensating him" are sufficient at the pleading stage for the same Massachusetts claims as Plaintiff brings here).[33]

---

technologies); *Tenet Healthcare*, 731 F. Supp. 3d at 149 (affirming negligence claim for undisclosed use of tracking technologies under Massachusetts law); *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *9 (same).

[32] *Lamarr*, 2024 Ind. Super. LEXIS 107, at *11-12 (statutory duties under FTC Act and HIPAA can "inform" scope of duty at common law even without negligence *per se*); *Garcia v. Columbia Med. Ctr.*, 996 F. Supp. 617, 627 (E.D. Tex. 1998) (holding "ethical duties [relating to] the accepted standards of medical care which a reasonable health care provider would follow…[are] relevant to Plaintiffs' negligence and gross negligence claims."). Tufts's authorities are not to the contrary. *Roe No. 1 v. Children's Hosp. Med. Ctr.*, 469 Mass. 710 (2014), and *Juliano v. Simpson,* 461 Mass. 527 (2012), like *Bennett*, reflect a rule against *per se* liability but confirm statutes are "relevant" to defining the scope of duties that may be vindicated through a claim for negligence. *Spencer v. Roche*, 755 F. Supp. 2d 250 (D. Mass. 2010) involved an attempt to assert a claim directly under HIPAA, rather than using HIPAA as a source to inform a duty for a negligence claim.

[33] *In re Meta Pixel Healthcare Litig.*, 713 F. Supp. 3d 650, 655-56 (N.D. Cal. 2024) (allegation that "Meta unjustly profited from the data taken" is sufficient); *Meta Pixel Tax Filing*, 724 F. Supp. 3d at 1019-21 (allegations of "diminution in value," and "loss of the benefit of [the] bargain" are sufficient even if not quantified); *Gay*, 2024 U.S. Dist. LEXIS 168515, at *22-24 (affirming damages allegations similar to those here); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *7-8 (affirming damages allegations for secret use of tracking technologies based on property rights in personal data and corresponding value).

6. Plaintiff States a Claim for Breach of Contract.

Tufts's argument on breach of contract (MTD Mem. at 17-19) disregards Plaintiffs' well-pled allegations about Tufts's promises to patients (¶¶ 29-35, 263-64) and ignores the only Massachusetts authorities to have considered such claims based on the same conduct have affirmed them. *Emerson*, 2023 Mass. Super. LEXIS 673, at *8-9; *Tenet Healthcare*, 731 F. Supp. 3d at 149-50; *see also Vita*, 494 Mass. at 849-50 (implied contract claim "cognizable" based on undisclosed use of tracking technologies).[34]

7. Plaintiff States a Claim for Unjust Enrichment

Tufts's argument on unjust enrichment—that Plaintiff fails to allege reasonable expectations of the parties regarding compensation (MTD Mem. at 19-20)—ignores that Plaintiff makes precisely such allegations. ¶¶ 263-64. Notably, all decisions that have considered unjust enrichment claims under Massachusetts law arising from the same conduct have affirmed such claims, rejecting the exact argument made here. *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *13-14 (affirming unjust enrichment claim under Massachusetts law, rejecting the same argument); *Emerson*, 2023 Mass. Super. LEXIS 673, at *9-11 (rejecting the same argument); *Tenet Healthcare*, 731 F. Supp. 3d 142 150-51; *Vita*, 494 Mass. at 849-50 (unjust enrichment claim "cognizable" based on undisclosed use of tracking technologies).[35]

## IV. CONCLUSION

For the reasons set forth herein, the Court should deny Tufts's motion to dismiss.

---

[34] Other jurisdictions are in accord, particularly where a published privacy policy includes false promises of non-disclosure. *Lamarr*, 2024 Ind. Super. LEXIS 107, at *19-21 (affirming implied contract claim based in part on "failure [of hospital] to comply with [its] privacy policy"); *Doe v. Bon Secours Mercy Health*, 2021 Ohio Misc. LEXIS 3985, at *13-14 (Ct. Com. Pl. Nov. 22, 2021); *Elkin s v. Bartholomew Cnty. Pub. Hosp.*, 2024 Ind. Super. LEXIS 340, at *7-8 (Super. Ct. Dec. 16, 2024).

[35] Other states applying similar unjust enrichment cases are in accord. *Brahm*, 2024 U.S. Dist. LEXIS 114827, at *21-23; *Jarrell*, 2025 U.S. Dist. LEXIS 6169, at *21-22 (affirming claim based on allegations that intercepted communications "had cognizable value to Plaintiff, and [a healthcare provider] unjustly reaped that value by disclosing it, without authorization"); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *21-22 (same). A requirement that Plaintiff subjectively expected compensation at the time of her communications makes no sense given her allegations. "Plaintiff did not expect monetary compensation for their data *precisely because* they assumed that the data would not be shared with any third parties. This maintenance of data privacy was a part of the services that Plaintiffs allege that they paid [the provider] for and, a claim for unjust enrichment could appropriately be pursued under these allegations." *Elkins*, 2024 Ind. Super. LEXIS 340, at *10.

Dated: December 19, 2025

Respectfully submitted,

*/s/ Patrick J. Vallely*

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: December 19, 2025

*/s/ Patrick J. Vallely*
Patrick J. Vallely