**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

KAREN MCMANUS, on behalf of herself and all others similarly situated,

Plaintiff,

v.

TUFTS MEDICAL CENTER, INC.,

Defendant.

Case No.: 1:25-cv-10008-ADB

**Leave to File Granted on December 11, 2025**

**DEFENDANT TUFTS MEDICAL CENTER, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiff's ECPA Claim Should Be Dismissed ..... 2

1. Plaintiff Does Not Plausibly Allege That The Crime Tort Exception Applies ..... 2

a. Plaintiff Does Not Allege Disclosure of Her PHI ..... 3

b. Plaintiff Does Not Allege That Tufts MC Acted With An Intentional Purpose To Commit a Crime or Tort ..... 5

2. Plaintiff Fails To Allege That Tufts MC Intercepted The Contents Of Her Communications ..... 9

B. Plaintiff Fails To State A Claim Under The Massachusetts Right To Privacy Act ..... 10

C. Plaintiff's Breach Of Fiduciary Duty Claim Should Be Dismissed ..... 14

D. Plaintiff's Breach Of Confidence Claim Should Be Dismissed ..... 15

E. Plaintiff's Negligence Claim Should Be Dismissed ..... 15

F. Plaintiff's Breach Of Contract Claim Should Be Dismissed ..... 16

G. Plaintiff's Unjust Enrichment Claim Should Be Dismissed ..... 16

III. CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.J. v. LMND Med. Grp., Inc.*,
No. 23-CV-03288-RFL, 2024 WL 4579143 (N.D. Cal. Oct. 25, 2024)..........................15, 17

*Alberts v. Devine*,
95 Mass. 59 (Mass 1985) ....................................................................................14, 15

*Alves v. BJ's Wholesale Club*,
No. 22-2509-BLS1, 2023 WL 4456956 (Mass. Super. June 21, 2023)...............................12

*American Hospital Association v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ...........................................................................3

*Analog Techs., Inc. v. Analog Devices, Inc.*,
105 F.4th 13 (1st Cir. 2024)..........................................................................................9

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ...................................................13, 15, 17

*By-Prod Corp. v. Armen-Berry Co.*,
668 F.2d 956 (7th Cir. 1982) ..........................................................................................6

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)..........................................................................................6, 8

*Commonwealth v. McCue*,
67 Mass. App. Ct. 1113 (2006).......................................................................................12

*Commonwealth v. Welch*,
487 Mass. 425 (2021) .....................................................................................................12

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024)...........................................................................15

*Cousin v. Sharp Healthcare*,
681 F. Supp 3d. 1117 (S.D. Cal. 2023)...........................................................................13

*Desnick v. Am. Broad. Cos., Inc.*,
44 F.3d 1345 (7th Cir. 1995) .......................................................................................6, 7

*Doe v. Boston Medical Center Corp.*,
No. 2384CV00326-BLS-1, 2023 WL 7105628 (Mass. Super. Sep. 14, 2023) ......................11

*Doe v. Emerson Hospital*,
No. 2277CV01000, 2023 WL 8869624 (Mass Super. Nov. 22, 2023)..................11, 14, 16, 17

*Doe v. Post Acute Med., LLC*,
No. 1:24-CV-547, 2025 WL 511069 (M.D. Pa. Feb. 14, 2025) ............................................17

*Doe v. Tenet Healthcare Corporation*,
731 F. Supp. 3d 142 (D. Mass. 2024) ..................................................................11, 14, 15, 17

*In re High Fructose Corn Syrup Antitrust Litig.*,
216 F.3d 621 (7th Cir. 2000) ...........................................................................................6

*K.L. v. Legacy Health*,
No. 3:23-CV-1886-SI, 2024 WL 4794657 (D. Or. Nov. 14, 2024) ........................................4

*United States v. McHugh,*
57 F. Supp. 3d 95 (D. Mass. 2014) ....................................................................................8

*McManus v. Tufts Med. Ctr., Inc.*,
No. 25-CV-10008-ADB, 2025 WL 2778025 (D. Mass. Sept. 29, 2025) ................................2

*Med. Lab. Mang't Consultants v. Am. Broad. Cos., Inc.*,
30 F. Supp. 2d 1182 (D. Az. 1998)....................................................................................7

*Nienaber v. Overlake Hosp. Med. Ctr*.,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)..........................................................................17

*Okash v. Essentia Health*,
No. CV 23-482 (JRT/LIB), 2025 WL 642913 (D. Minn. Feb. 27, 2025) ................................4

*Polay v. McMahon*,
468 Mass 379 (2014) .......................................................................................................10

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ...........................................................................4, 13

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .........................................................................................4

*Stein v. Edward-Elmhurst Health*,
No. 23-CV-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ..............................................6

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) ..........................................................................................7

*Thomas v. Pearl*,
998 F.2d 447 (7th Cir. 1993) ...........................................................................................6

*United States v. Vest*,
639 F. Supp. 3d 899 (D. Mass. 1986) ....................................................................................8

*Vita v. New England Baptist Hosp.*,
494 Mass. 824 (2024) ....................................................................................13, 15, 16, 17

*Willitts v. Engie N. Am. Inc.*,
No. 20-CV-11255-ADB, 2021 WL 2322833 (D. Mass. June 7, 2021) ..................................14

## I. INTRODUCTION

Plaintiff argues for this Court to adopt an expansive interpretation of the crime-tort exception that would eliminate the requirement that a party act with an intended purpose to commit a crime or tort at the time of the interception that is independent of the interception. Notably, the pleading standard for the crime-tort exception under the Electronic Communications Privacy Act ("ECPA") is presently subject of an appeal in the First Circuit. *See Goulart v. Cape Cod Healthcare, Inc.*, No. 25-1672 (1st Cir.). In that appeal, several amici briefs have been filed that support and agree with Tufts Medical Center ("Tufts MC") that Plaintiff's interpretation of the ECPA is "incompatible with the statute's text, its legislative history, and decades of prosecutorial practice under both ECPA and [HIPAA]" and "would retroactively criminalize the ordinary and widespread use of common internet advertising technologies and could lead to the bankruptcy of the healthcare system and any business who uses this ubiquitous technology." Ex. A at 2, Amicus Curiae of the Greater Boston Chamber of Commerce, *Goulart v. Cape Cod Healthcare, Inc.* No. 25-1672 (1st Cir. Jan. 14, 2026); Ex. B at 9, Amicus Curiae of The Chamber of Commerce of the United States of America ("Improper expansion of the Wiretap Act would circumvent HIPAA's carefully balanced regulatory framework, threatening covered entities and business associates with significant civil and even criminal penalties."); and Ex. C at 4, Amicus Curiae of the American Hospital Association, Hospital Association of Rhode Island, Maine Hospital Association, Massachusetts Health and Hospital Association, and New Hampshire Hospital Association ("Plaintiffs thus cannot satisfy the ECPA's crime-tort exception. To hold otherwise threatens to criminalize standard online tools used by nearly every industry, especially healthcare providers across the country, and the federal government, too."). Plaintiff's argument is contrary to the statutory text and decisions within this Circuit and would result in the crime-tort exception swallowing the one-party consent rule. It should be rejected and Plaintiff's ECPA claim should be

dismissed.

Plaintiff takes umbrage with Tufts MC's raising similar arguments as were made in the first motion to dismiss the amended complaint, which was granted without prejudice as to the ECPA claim. *McManus v. Tufts Med. Ctr., Inc.*, 2025 WL 2778025, at *3 (D. Mass. Sept. 29, 2025). However, the additional allegations in the Second Amended Complaint do not change the material substance of Plaintiff's claims and fail to cure the defects in the First Amended Complaint. Plaintiff's allegations concern actions taken on Tufts MC's *public* website and mere navigation *to* the patient portal. Still absent are any allegations that medical records, treatments, test results, doctor's notes, or substantive communications with her doctors or nurses have ever been disclosed by Tufts MC. The absence of these allegations are the crucial difference between the SAC and the facts of many of the cases relied upon by Plaintiff's Opposition. Plaintiff's arguments that her personal health information has been disclosed without her consent is not supported by the actual allegations in the SAC. The lack of such allegations are fatal to her ECPA, tort, and contract claims. Plaintiff's Second Amended Complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. Plaintiff's ECPA Claim Should Be Dismissed

#### 1. Plaintiff Does Not Plausibly Allege That The Crime Tort Exception Applies

Plaintiff does not dispute that unless the crime-tort exception applies, her ECPA claim against Tufts MC fails as a matter of law and must be dismissed. Plaintiff argues that her ECPA claim should survive because she added similar allegations that were added in the amended complaint underlying the *Williams v. TMC Health* decision that this Court cited when granting Tufts MC's motion to dismiss the Plaintiff's first amended complaint. Opp. at 6–8. The crime-tort exception, however, remains inapplicable to Plaintiff's ECPA claim for two primary reasons, each

of which require dismissal of her claim: (1) Plaintiff does not plausibly allege facts to support a finding that Tufts MC intercepted and disclosed Plaintiff's protected health information in violation of HIPAA; and (2) Plaintiff alleges no facts to support a finding that Tufts MC deployed the technologies with the primary purpose of committing a crime or tort.

**a. Plaintiff Does Not Allege Disclosure of Her PHI**

Plaintiff's arguments that the crime tort exception should be applied to her ECPA claim is predicated on an argument that Tufts MC's use of the Meta Pixel and Google Analytics on its website resulted in her protected PHI being transmitted without her authorization in violation of HIPAA. Opp. at 2. Plaintiff's argument is not supported by her factual allegations concerning her actions on the Tufts MC website. Plaintiff argues that the fact her alleged actions relate to use of Tufts MC's public website is irrelevant because she is a patient of Tufts MC. But browsing of Tufts MC's public website as Plaintiff alleges she did, does not reveal an individual's PHI.

In *American Hospital Association v. Becerra*, the court explained that mere browsing activity on a public hospital website "*does not* and *cannot* identify an individual or the individual's PHI." 738 F. Supp. 3d 780, 802 (N.D. Tex. 2024). That is because the website operator has no way of knowing why any particular user visits a particular webpage, or clicks a particular button. *See id.* at 795 ("A user's intent in visiting [an unauthenticated public webpage] is unknowable."). For example, a user might visit a healthcare website to find information for a family member, a friend, or for a school research project. *See id.* at 801. Or a user could visit the website to find non-medical information, like whether parking is available at a hospital. *Id.* But whether or not the browsing relates to healthcare, it is not PHI if it takes place on a public website. *See id.* at 801–04 ("Without knowing information that's never received—i.e., the visitor's subjective motive—the resulting metadata could never identify that individual's PHI. Simply put, **Identity** (Person A) + **Query**

(Condition B) ≠ **IIHI** [or PHI] (Person A has Condition B).”). Plaintiff’s attempt to distinguish the *Becerra* decision by arguing that it focused on a particular combination of information disclosed, including an IP address and information about a user’s search on a health care websites public page “addressing specific health conditions or healthcare providers,” ignores that her allegations concerning her use of the public website relate to those same activities searching for information on the public website about “doctors (including their credentials and backgrounds)” and searching “for information on particular medical procedures.” SAC ¶ 16. The *Becerra* analysis is equally applicable to Plaintiff’s claims.

For these reasons, some federal courts have granted motions to dismiss similar claims when the plaintiff’s allegations relate to actions taken on a health care entity’s public website, but not actions taken within the patient portal, as is the case here. *See Okash v. Essentia Health*, 2025 WL 642913, at *4 (D. Minn. Feb. 27, 2025) (“no obvious crime or tort sufficiently independent from the initial interception” where plaintiff dropped claim that Pixel was providing information from within the patient portal); *see also K.L. v. Legacy Health*, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) (dismissing breach of confidence claims to the extent based on plaintiff’s searches on the public website for burn specialists and burn treatments finding they did not “constitute PHI”); *Smith v. Facebook, Inc.*, 745 F. App’x 8, 9 (9th Cir. 2018) (“Information available on publicly accessible websites stands in stark contract to the personally identifiable patient records and medical histories protected by these statutes—information that unequivocally provides a window into an individual’s personal medical history.”); *cf. R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 893 (C.D. Cal. 2024) (distinguishing between: (1) actions taken on a hospital’s public website to “research . . . doctors,” “look for providers,” and “search for medical specialists”—all of which is “general information that is accessible to the public at large” and does not “relate[ ] specifically

to" plaintiffs' health; and (2) transmissions that show a person purchasing a particular medication, which would reveal personal medical information). Plaintiff's argument that her patient status was revealed to Meta and Google is based on her allegation that when she navigated to the patient portal from the public website that action was transmitted to Meta and Google. SAC ¶¶ 134–39. Plaintiff does not allege that any actions she took within the secure patient portal were transmitted to any third-party.

Plaintiff also contends that Tufts placed tracking technologies on other pages on the public website that it argues reveal patient status, including appointment request pages (*id.* ¶¶ 110–15), bill payment page (*id.* ¶¶ 123–26), and a medical records request page (*id.* ¶¶ 127–30). Opp. at 10. The screenshots included within the SAC demonstrate that these pages merely provided information about how such actions could be taken within the secure patient portal, but were not in fact the pages where those actions could be taken. *Id.* Moreover, Plaintiff does not allege that she herself ever took any of those actions. Plaintiff's allegations related to her specific actions on the Tufts MC website are extremely sparse and appear in just three paragraphs of the 277-paragraph SAC, ¶¶ 16 and 139. But even if she did visit those pages on the Tufts MC public website, those actions do not reveal patient status, but rather concern at most an inference that may be drawn. As addressed further below, such indirect inferences do not support the heightened *mens rea* that exists for application of the crime tort exception.

#### b. Plaintiff Does Not Allege That Tufts MC Acted With An Intentional Purpose To Commit a Crime or Tort

Plaintiff argues that she need not allege facts that Tufts MC acted with an intentional purpose to commit a crime or tort to invoke the crime-tort exception. Opp. at 5–6. She contends that the mere fact that Tufts MC deployed and used third-party analytics on its public website, which she claims resulted in a purported HIPAA violation and an invasion of Plaintiff's privacy is

sufficient to invoke the crime-tort exception citing to this Court's reference in a footnote to *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025), in its decision granting Tufts MC's motion to dismiss Plaintiff's first amended complaint. *Id*. Tufts MC disagrees with Plaintiff's reading and interpretation of the Court's Order.

Respectfully, the *Stein* decision from the Northern District of Illinois, which held that to invoke the crime tort exception the only purpose that is required is to commit an act resulting in a crime or a tort, is contrary to decision within this Circuit and the Seventh Circuit precedent. *See* decision addressed in Tufts MC's Memorandum in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint ("Mem.") at 4–5*; see also By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 960 (7th Cir. 1982) ("We think it is the use of the interception ***with intent to harm*** rather than the fact of interception that is critical to liability, and there was no use of the interception here.") (emphasis added); *Thomas v. Pearl*, 998 F.2d 447, 451 (7th Cir. 1993) (interpreting exception, holding "[t]his means Thomas must show that Pearl either intended to break the law or commit a tort against him in order to prove a violation of the federal statute"); *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995) (refusing to apply the exception where "[t]he defendants did not order the camera-armed testers into the Desnick Eye Center *in order to commit a crime or a tort*") (emphasis added); *In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 624 (7th Cir. 2000) ("Some states prohibit a person from recording his telephonic or other conversations without the other person's consent, but Title III does not, *unless the person both is not acting under color of state law* ***and has a criminal or tortious purpose***.") (Posner, J.) (emphasis added).

As a textual matter, Plaintiff's proposed interpretation of the statutory text is also incorrect. As the Second Circuit held: "Congress chose the word 'purpose' for a reason." *Caro v. Weintraub*,

618 F.3d 94, 100 (2d Cir. 2010). "Therefore, the offender must have as her *objective* a tortious or criminal result." *Id.* (emphasis added) "Had Congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications *resulting in* a tortious or criminal act." *Id.* (emphasis in original). "But Congress limited the cause of action to instances where one party to the conversation *deliberately seeks to harm* the other participant through the information intercepted." *Id.* (emphasis added); *see also Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202-03 (9th Cir. 1999) (an interception has a criminal or tortious purpose only when it is "done for the purpose of facilitating some further impropriety, such as blackmail").

The focus of the tortious or criminal conduct exception analysis is on the purpose: was the defendant's alleged purpose in making the recording unlawful? If the purpose was lawful, then the exception does not apply, even if the defendant's actions in using the recording might ultimately turn out to violate some other law. *Desnick*, 44 F.3d at 1353; *Med. Lab. Mang't Consultants v. Am. Broad. Cos., Inc.*, 30 F. Supp. 2d 1182, 1205 (D. Az. 1998) ("Even if Defendants were found liable for fraud, the question is not whether they are ultimately liable for conduct found to be tortious, but whether, at the time the recording took place, they recorded the conversation with the *express intent of committing a tort*.") (emphasis added).

Here, Plaintiff's allegations remain that Tufts MC's primary motivation or determinative factor in deploying the Meta Pixel and Google Analytics was so Tufts MC could market its services to visitors to its website, including patients. SAC ¶ 227. Contrary to Plaintiff's argument, Tufts MC does not contend that having a financial motivation by itself negates the application of the crime-tort exception. Rather, it is the fact that the alleged primary motivation here—marketing, is not a criminal or tortious purpose. Mem. at 5–6; *see also Doe 1 v. Chestnut Health Sys., Inc.*, 2025

WL 1616635, at *12 (C.D. Ill. June 6, 2025) (no crime-tort exception where plaintiff alleged "contradictorily, that [defendant] shared the information with third parties 'for the purpose of creating targeted online advertisements and enhanced marketing services', not tortious or criminal conduct"). Although Plaintiff argues that Tufts MC's use of these technologies violated HIPAA, the SAC does not *plausibly* allege that Tufts MC had a primary motivation or purpose to violate HIPAA or because it "intended to harm" its patients and other visitors to its website, as opposed to that being an alleged by-product of using the technology. *See United States v. McHugh*, 57 F. Supp. 3d 95, 100 (D. Mass. 2014).

Marketing as a purpose is markedly different from the type of "insidious purpose" or "unlawful motive," for recording a communication that the crime-tort exception was designed to prohibit such as through blackmail, threats, or other public embarrassment. *See id.* ("[a]n impermissible purpose" has been "confined to situations where the recording party intended to harm the recorded party, either through blackmail, threats or public embarrassment."); *Caro*, 618 F.3d at 99–100; *see also United States v. Vest*, 639 F. Supp. 3d 899, 908 (D. Mass. 1986), *aff'd*, 813 F.2d 477 (1st Cir. 1987) (holding that the crime-tort exception applies when the recording is made to extort a police officer under threat of incrimination). In the case of blackmail, the intercepting party records the conversation with the intent to use the recorded communication to coerce the other party, under threat of public embarrassment, incrimination, *etc.* to meet certain demands, such as money, favors, and the like. By contrast, here, the Plaintiff's claim is that Tufts MC used the Meta Pixel and Google technologies on its public website so that it could advertise its health care services directly to visitors of its website, including patients—not that it intended to blackmail its patients, threaten them, or used the technologies with any other "insidious purpose" or "unlawful motive" to commit a crime or tort against its patients.

The contrary decisions cited by Plaintiff are not grounded in the language of ECPA and cannot be reconciled with the First Circuit's interpretation of its provisions and requirement that the exception be narrowly construed. The decisions further fail to consider the canon that courts should avoid statutory interpretations that produce absurd results if an alternative interpretation "consistent with legislative purpose [is] available." *Analog Techs., Inc. v. Analog Devices, Inc.*, 105 F.4th 13, 19 (1st Cir. 2024) (citations omitted). Imposing ECPA liability where a defendant does not have the requisite purpose, or conflating purpose with the ultimate result, creates the absurd situation of obviating the crime-tort exception's intent requirement and making felons out of numerous not-for profit healthcare systems. *See also* Amici Briefs, attached as Exhibits A–C.

Plaintiff's argument also fails to address that utilizing alleged HIPAA violations as predicate for the crime-tort exception would undermine HIPAA's own enforcement scheme and is contrary to Congress' intent that HIPAA could not be enforced through a private cause of action. Mem. at 8-9.

Plaintiff's request that this Court ignore the heightened intent standard to invoke the crime-tort exception should be rejected and her ECPA claim dismissed.

#### 2. Plaintiff Fails To Allege That Tufts MC Intercepted The Contents Of Her Communications

Plaintiff argues that transmitted URLs that show patient status are sufficient to support the transmission of "content," under the ECPA. Opp. at 17–18. However, as addressed above, Plaintiff ignores that she does not allege that she ever visited those pages on the public website that she argues could reveal patient status. *See supra* II.A.1. To the extent, Plaintiff is relying on her argument that navigation to the patient portal reveals content of a communication, that activity reflects an action taken to go to a physical location on a website, and is not the substantive content of a communication protected by the ECPA. *See* Mem. at 9–10 and cases addressed therein.

### B. Plaintiff Fails To State A Claim Under The Massachusetts Right To Privacy Act

To sustain an invasion of privacy claim under the Massachusetts Right to Privacy Act ("MRPA"), Plaintiff must plausibly allege an invasion that is "both unreasonable and substantial or serious." *Polay v. McMahon*, 468 Mass 379, 382 (2014). While "[g]enerally, whether an intrusion qualifies as unreasonable, as well as either substantial or serious, presents a question of fact," that does not mean such a claim is never subject to dismissal for failure to allege sufficient facts to state such a claim. *Id.* at 383. Plaintiff attempts to torture the facts of inapposite cases for her preferred outcome, but Plaintiff's Second Amended Complaint allegations continue to relate only to Tufts MC's *public* website and mere navigation *to* the patent portal; without allegations of transmission of any particularly sensitive or personal information, her MRPA claim must be dismissed.

Plaintiff attempts to save her claim by asserting that "examples" were provided in the Second Amended Complaint. Opp. at 13 (citing SAC ¶¶ 16–18, 24, 100–09, 120–22, 131–39). The cited paragraphs of the complaint, however, contain no such examples of what Plaintiff specifically searched for or what purported information of hers was shared. Plaintiff claims only to have used the Tufts MC website to "(i) obtain information about Tufts Medical Center doctors (including their credentials and backgrounds); (ii) search for information on particular medical procedures; and (iii) obtain and review her medical records through the website's patient portal . . ." SAC ¶ 16. Category nos. 1 and 2 are conspicuously vague as alleged and do not even claim to be obtaining information related to *Plaintiff's* treating doctors or medical procedures, let alone concern the transmission of PHI or IIHI. Category no. 3 is irrelevant, since it concerns actions taken on Tufts MC's secure patient portal, and no allegations have been made that any analytics software operated *within* Tufts MC's patient portal. *Id.* ¶ 60 (alleging only that Tufts MC "injected hidden code into

the Tufts Medical Center Website"); *id.* ¶ 61 (same). Otherwise, Plaintiff pleads only that "Plaintiff visited specific pages on the Tufts Medical Center that were among the webpages on which Tufts Medical Center embedded code for various tracking technologies, including Meta Pixel, DoubleClick, Google Analytics, and LinkedIn Insight." *Id.* ¶ 17. Plaintiff's other cited paragraphs purporting to show "examples" of Plaintiff's activity describe the browsing of a hypothetical "user," *not* Plaintiff Karen McManus. *See* SAC ¶¶ 100–09, 120–22, 131–39.

Plaintiff argues that because some other MRPA claims that involved website tracking technologies survived a motion to dismiss, her claim should survive. Opp. at 20 n.23. Plaintiff, however, ignores significant factual distinctions that exist in the pleading of those cases that renders them inapposite.

In *Doe v. Tenet Healthcare Corporation*, the plaintiff alleged that she used Tenet's website to "schedule appointments, search for information, and access the patient portal," and after taking those actions she received targeted online advertisements relating to her specific health conditions, including related to weight loss and diabetes. 731 F. Supp. 3d 142, 147–148, 151–152 (D. Mass. 2024). In permitting the MRPA claim to proceed, the court specifically found that the information alleged that the plaintiff had her "identity, patient status, request for medical treatment, health conditions and treatments, ***and*** appointment time and location [] constitutes information of a 'highly personal or intimate nature.'" *Id.* at 151–152 (emphasis added).

Similarly, in *Doe v. Boston Medical Center Corp.*, the plaintiff alleged that her logging into the patient portal and actions taken to make an appointment with a BMC urologist for a hernia repair were transmitted to Meta and Google. 2023 WL 7105628, at *2 (Mass. Super. Sep. 14, 2023). Likewise, in *Doe v. Emerson Hospital*, the plaintiff alleged that information about his specific treatment for a concussion and information about his appointments at Emerson were

transmitted to Meta. 2023 WL 8869624, at *1, *5 (Mass Super. Nov. 22, 2023).

Unlike the allegations in *Tenet*, *Boston Medical Center*, and *Emerson*, there are no sufficiently pled allegations that any information about the scheduling of her medical appointments, the nature of those medical appointments, including the particular medical conditions, was ever transmitted to any third-party. Indeed, Plaintiff does not allege anything with respect to what she contends was transmitted in connection with her use of the public website, let alone that the information involved was of a highly personal or intimate nature. Massachusetts courts have found no reasonable expectation of privacy in situations that are more sensitive than search of a public website. *See, e.g., Commonwealth v. Welch*, 487 Mass. 425, 433–34 (2021) (busy hospital emergency room was not a location where a suspect had a reasonable expectation of privacy); *Commonwealth v. McCue*, 67 Mass. App. Ct. 1113, at *1–2 (2006) (unpublished) (similar).

In *Alves v. BJ's Wholesale Club*, the plaintiff alleged that all of their actions taken on the BJ's website were recorded and shared with a third-party. 2023 WL 4456956 (Mass. Super. June 21, 2023), at *6–7. The court there specifically noted skepticism that the "allegations are sufficient to state a claim for invasion of privacy. Among other things, plaintiff has failed to allege clearly that BJ's was able to connect his identity to the data collected or that the data collected was particularly personal or sensitive." *Id.* The court, however, permitted the claim to proceed because it determined another claim was surviving the motion dismiss, and he could, therefore, address the viability of the MRPA claim later on a more developed record. *Id.*

Plaintiff also mischaracterizes the Supreme Judicial Court's ("SJC's") ruling in *Vita v. New England Baptist Hosp.* Opp. at 20 n.23 (string-citing *Vita* for the proposition that "MRPA claim 'cognizable'"). Significantly, the SJC did not evaluate or render any opinion as to whether the facts

as alleged by Vita were sufficient to state a viable MRPA claim. Rather, in *dicta*, it noted that "the Legislature has provided other statutory and common-law causes of action to address allegedly false, misleading, or deceptive activity on the Internet, including statutory and common-law protections more directly applicable to misrepresentations or misuse of *private medical information*," and cited to the *Tenet* decision where the plaintiff specifically alleged facts that her medical conditions, treatments and appointment times and locations were transmitted to Meta in support of its MRPA claim. *Vita v. New England Baptist Hosp.*, 494 Mass. 824, 849 (2024) (emphasis provided).

Here, given the lack of any allegations that Plaintiff's medical information was ever transmitted to Meta, Plaintiff's claim is more akin to the allegations in *B.K. v. Eisenhower Medical Center* and *Cousin v. Sharp Healthcare*, where the courts dismissed invasion of privacy claims since, at most information, about routine medical searches and inquiries on a public website were transmitted. *B.K.*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024); *Cousin*, 681 F. Supp 3d. 1117, 1123 (S.D. Cal. 2023) ("*Cousin I*"). In assessing the viability of a privacy claim, the nature of the actions taken on the website and the information allegedly disclosed are material. This issue was specifically addressed by the court in *R.C. v. Walgreen Co.*—a decision that Plaintiff relies upon in connection with her ECPA claim. The court distinguished transmissions concerning a person's use of a hospital's public website to "'research . . . doctors,' 'look for providers,' and 'search for medical specialists' – all of which is 'general information that is accessible to the public at large' and does not 'relate[] specifically to plaintiff's health" and is not sufficiently private to support a privacy claim from a transmission that reflected a person's purchase of a particular medication to treat a specific health condition, which plausibly conveys personal health information and supports a privacy claim. *R.C.*, 733 F. Supp. 3d at 892–93 (quoting and distinguishing *Cousin I*).

### C. Plaintiff's Breach Of Fiduciary Duty Claim Should Be Dismissed

Plaintiff's failure to allege sufficient factual allegations similarly dooms her breach of fiduciary duty. Plaintiff alleges nothing particular to herself in the context of her use of the Tufts MC website, and alleges no transmission that pertains to the disclosure of any of her personal health information. Plaintiff's arguments regarding her breach of fiduciary duty and confidence claims further ignore that the constraints of a physician-patient relationship are not boundless and the allegations here are limited to alleged actions that are taken by visitors to Tufts MC's public website without Tufts MC having any knowledge of who those users are. Plaintiff's allegations are limited to examples of hypothetical use of a hospital's public-facing website, which does not plausibly support a fiduciary relationship. Moreover, the relationship between Tufts MC and the users of its public website, including the Plaintiff, is common to all members of the public, and is the antithesis of a fiduciary relationship.

As addressed above, Plaintiff's reliance on the decisions in *Emerson* and *Tenet* are misplaced since the allegations in those matters were more robust and included the alleged transmission of the plaintiffs' specific treatments, appointment times and locations. See *Emerson Hospital*, 2023 WL 8869624, at *3 (allegations included transmission of information about plaintiff's treatment for his concussion at the Cantu Concussion Center); *Tenet Healthcare Corporation*, 731 F. Supp. 3d at 147–148, 151 (plaintiff alleged that her "identity, patient status, request for medical treatment, health conditions and treatments, and appointment time and location" were transmitted). Likewise, the fiduciary obligation addressed in *Alberts v. Devine*, addresses the obligation of a physician "to hold in trust confidential information." 95 Mass. 59, 69 (Mass 1985). However, Plaintiff has not alleged that any communications with any of her physicians were ever disclosed. *See Willitts v. Engie N. Am. Inc.*, 2021 WL 2322833, at *4 (D. Mass. June 7, 2021) (Burroughs, J.) (dismissing breach of confidentiality claim based on "no

disclosure by a physician"); *see also B.K.*, 721 F. Supp. 3d at 1069 ("Plaintiffs fail to sufficiently allege disclosure. As a result, Plaintiff's breach of confidence claim fails").

**D. Plaintiff's Breach Of Confidence Claim Should Be Dismissed**

Plaintiff's doubling-down that Massachusetts courts recognize breach of confidence claims is undercut by its reliance only on cases that establish no such thing. Opp. at 23 n.30. First, though *Cooper v. Mount Sinai Health Sys., Inc.* did decline to dismiss a breach of confidence claim, it did so under New York, not Massachusetts, state law. 742 F. Supp. 3d 369, 385 (S.D.N.Y. 2024). Indeed, Massachusetts is not mentioned once in the decision. Similarly, the court's decision to decline to dismiss a breach of confidence claim in *A.J. v. LMND Med. Grp., Inc.* is due to the fact that the claim was brought only on behalf of one New York plaintiff, not the Massachusetts plaintiffs in the case. 2024 WL 4579143, at *4 (N.D. Cal. Oct. 25, 2024). *See* Third Amended Complaint, *A.J. v. LMND Med. Grp., Inc.*, No. 23-CV-03288-RFL (N.D. Cal. Aug. 2, 2024), ECF No. 51 at 14, 52. Finally, neither Plaintiff's quotation from *Alberts v. Devine* nor the case itself actually establishes what Plaintiff claims, that the case "creates a new cause of action" for "claim[s] of breach of confidence." Opp. at 23. Finally, Plaintiff does not dispute that her breach of confidence claim is wholly duplicative of her breach of fiduciary duty claim. *Id.*

**E. Plaintiff's Negligence Claim Should Be Dismissed**

Plaintiff begins her rebuttal concerning the negligence claim by further misrepresenting the SJC's holding in *Vita*, which did not assess the viability of a negligence claim nor conclude that it would be "cognizable" based on undisclosed use of tracking technologies. Opp. at 23 n.31 (citing *Vita*, 494 Mass. at 849–50). Plaintiff's Opposition asserts that the purported duty she is relying upon for her negligence claim is rooted in "statutes" and "professional standards." Opp. at 24. However, she ignores that her complaint is devoid of any allegations that any of Plaintiff's personal health information has ever been transmitted to Meta or Google. As a result, her reliance on *Tenet*

(at 23 n.31) is misplaced because, in that matter and unlike here, the plaintiff had specifically alleged facts that her personal health information, including her particular health conditions, treatments, appointment time and location was transmitted to Meta, and she alleged that these disclosures caused the advertisements she received for diabetes and obesity. *Tenet*, 731 F. Supp. 3d at 147–148. Here, Plaintiff has failed to allege facts that she herself used Tufts MC's website in a manner that any transmitted browsing data could ever be considered the transmission of protected confidential health information. Given the absence of allegations that Plaintiff's private medical information was disclosed to Meta or Google and that she has been damaged, Plaintiff's negligence claim should be dismissed.

### F. Plaintiff's Breach Of Contract Claim Should Be Dismissed

Plaintiff's Opposition ignores Tufts MC's argument that there has been a failure to allege consideration for any purported contract to safeguard her personal health information and as with her other claims ignores that she has not alleged that any of her personal health information has ever been transmitted to Meta or Google. Indeed, in *Emerson* the court acknowledged that there was no case law from the Commonwealth clearly on point and there are courts from other jurisdictions that have held that an implied contract is not viable. *Emerson*, 2023 WL 8869624, at *4. Plaintiff again misrepresents the SJC's holding in *Vita*, which did not assess the viability of a contract claim nor conclude that it would be "cognizable" based on undisclosed use of tracking technologies. Opp. at 25 (citing *Vita*, 494 Mass. at 849–50). Given the lack of Plaintiff's factual allegations and for the reasons addressed in Tufts MC's motion, her breach of contract claim should be dismissed for failure to state a claim.

### G. Plaintiff's Unjust Enrichment Claim Should Be Dismissed

Plaintiff's reliance on *Emerson*, *Tenet*, and *A.J.* in support of her unjust enrichment claim is similarly flawed. As addressed above, the court's decisions in *Emerson* and *Tenet* matters turned

on the specific detailed facts alleged that the plaintiff's personal health information was transmitted. *Emerson*, 2023 WL 8869624, at *1, *5; *Tenet*, 731 F. Supp. 3d at 150–51. Plaintiff makes no such allegations. Plaintiff further misrepresents the SJC's holding in *Vita*, which did not assess the viability of an unjust enrichment claim nor conclude that an unjust enrichment claim is "cognizable" based on undisclosed use of tracking technologies. *Vita*, 494 Mass. at 849–50. Further, based on the lack of factual allegations, there is no plausible basis to consider whether Plaintiff conferred any "benefit" to Tufts MC or whether there was any "value" associated with the purported benefit, which other courts have recognized in dismissing similar claims. *See Doe v. Post Acute Med., LLC*, 2025 WL 511069, at *9 (M.D. Pa. Feb. 14, 2025) (lack of specific facts regarding what information was disclosed, to whom, under what circumstances and whether the information was linked to Doe specifically required dismissal of unjust enrichment claim); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1093–94 (W.D. Wash. 2024) (dismissing unjust enrichment claim for lack of pleading "a concrete detriment for purposes of an unjust enrichment claim"); *B.K.*, 721 F. Supp. 3d at 1070 ("Without specific allegations about the underlying information that was allegedly disclosed, it is unclear to the Court how, if at all, Defendant was unjustly enriched"). Further, in *A.J.*, the court did not address Massachusetts law and instead focused on the claims made by the non-Massachusetts plaintiffs when deciding the unjust enrichment claim. *Compare A.J.*, 2024 WL 4579143, at *4 (not referencing Massachusetts law but discussing only "Plaintiffs A.J., H.G., and L.V."); *with A.J.*, No. 23-CV-03288-RFL (N.D. Cal. Aug. 2, 2024), ECF No. 51 at 12–14 (pleading that Plaintiffs A.J., H.G., and L.V. are residents of Alabama, North Carolina, and New York, respectively).

## III. CONCLUSION

For the foregoing reasons and those included in Tufts MC's motion, Tufts MC respectfully asks the Court to dismiss the Second Amended Complaint against it with prejudice.

Dated: January 16, 2026

Respectfully submitted,

*/s/ Elizabeth A. Scully*_________

Elizabeth A. Scully (admitted pro hac vice)
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
escully@bakerlaw.com
T: (202) 861-1500
F: (202) 861-1783

James H. Rollinson, Esq. (BBO #649407)
BAKER & HOSTETLER LLP
127 Public Street
Suite 2000
Cleveland, OH 44116
jrollinson@bakerlaw.com
T: (216) 621-0200
F: (216) 626-0740

Paul G. Karlsgodt (pro hac vice to be filed)
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202-2662
pkarlsgodt@bakerlaw.com
T: (303) 764-4013
F: (303) 861-7805

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that, January 16, 2026, copies of the foregoing were filed using the Court's CM/ECF service which will provide service copies to the Plaintiff's counsel of record.

*/s/ Elizabeth A. Scully*
*One of the attorneys for defendant*